LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation
AMY N. TIRRE, ESQ.  #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

E-Filed:   October 25, 2011

Counsel for Tri-State Livestock Credit Corporation

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE U LIVESTOCK, LLC,<br><br>Debtor. | Case No. BK-N-11-52345<br><br>Chapter 12<br><br>**MOTION TO PROHIBIT USE OF CASH COLLATERAL, OR IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION**<br><br>Hearing Date:  OST Requested<br>Hearing Time:  OST Requested<br>Est. Hearing: |

Secured Creditor Tri-State Livestock Credit Corporation, a California corporation ("Tri-State"), by and through its undersigned counsel, hereby moves this court for an order prohibiting Debtor Double U Livestock, LLC's use of Tri-State's cash collateral, or in the alternative, motion for adequate protection.  This motion is supported by the following Memorandum of Points and Authorities, the concurrently-filed supporting declaration of Robert Bergsten (the "Bergsten Declaration"), the concurrently-filed supporting declaration of Amy N. Tirre (the "Tirre Declaration"), all pleadings and papers of record, and any oral arguments of counsel at the hearing on this matter.

//

//

//

-1-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(M) and is a contested matter pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure.

### II. RELEVANT FACTS AND BACKGROUND

**A.  Loan and Documents**

On or about February 19, 2008, Debtor and Tri-State entered into a Renewal Promissory Note in the principal amount of $1,518,363.00 payable to Tri-State, executed by James A. West, Carleen J. West, Clayton J. West, Mary West, Wade S. West and Molly West, in their capacities as members of the Debtor as well as individually. A copy of the Renewal Promissory Note is attached to concurrently filed Bergsten Declaration as **Exhibit 1.**

The relationship of the debtor and Tri-State started in late 2002 and the first loan was made in early 2003. Bergsten Declaration at ¶4. At that time, Debtor was moving its operation from Oregon to Nevada and Tri-State was willing to provide an operating loan for operations that was secured by only personal property at the beginning, but would eventually be additionally secured by real and BLM leasehold property. *Id.* Tri-State's lien is in second position behind the Paris Trust on a part of the real property and in first position on another part of the real property. *Id.* The Renewal Promissory Note is the fifth renewal (sixth loan) to Debtor; the renewal loans were usually renewed in increasing amounts to advance funds to Debtor due to operating losses and a need for capital improvements to ostensibly be able to increase the future cash flow and success. As set forth below, there was cash flow improvement in 2008 through 2010, but not enough to adequately service the growing magnitude of the total debt. Tri-State's first loan to Debtor was evidenced by a note dated January 14, 2003 in the amount of $175,000.00. *Id.*

On February 19, 2008, a Loan Agreement was executed in favor of Tri-State executed by James A. West, Carleen J. West, Clayton J. West, Mary West, Wade S. West and Molly West, in their capacities as members of the Debtor as well as individually. A copy of the Loan Agreement is attached to the concurrently filed Bergsten Declaration as **Exhibit 2.**

Tri-State is secured by a Deed of Trust, Assignment of Rents, and Security Agreement dated February 26, 2007, recorded as Document No. 572088 on April 27, 2007, in the Elko County Recorder's Office, against Debtor's real property located in Elko County with APN 007-160-015. A true and correct copy of the Deed of Trust is attached to the Bergsten Declaration as Exhibit 3.

Tri-State is secured by a Deed of Trust, Assignment of Rents, and Security Agreement dated February 26, 2007, recorded as Document No. 337216 in Book No. 473 at Page No. 493 on April 27, 2007, in the White Pine County Recorder's Office, against Debtor's real property located in White Pine County with APNs 008-230-001 through -003 and APN 008-240-001. A true and correct copy of the Deed of Trust is attached to the Bergsten Declaration as **Exhibit 4.**

Tri-State is secured by a Deed of Trust, Assignment of Rents, and Security Agreement dated February 26, 2007, recorded as Document No. 0128841 in Book No. 231 at Page No. 0038 on April 27, 2007, in the Lincoln County Recorder's Office, against Debtor's real property located in Lincoln County with APN 010-220-02. A true and correct copy of the Deed of Trust is attached to the Bergsten Declaration as **Exhibit 5.**

The parties entered into a Security Agreement dated February 19, 2008, whereby Debtor granted to Tri-State a security interest in, inter alia, all Debtor's crops, farm products, equipment, inventory, accounts, documents, chattel paper, instruments, contracts, and general intangibles now owned or hereafter acquired; all livestock, interest in livestock or its born or unborn progeny, leasehold interests in livestock, and all livestock feed, now owned or hereafter acquired by the

-3-

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

Debtor, including but not limited to additions, replacements and increases; and all equipment, feed, hay, grain, fodder, ensilage, chemicals, fertilizers, medicines and supplies used in Debtor's farming or livestock operations now located or hereafter to be located on properties owned or leased by the Debtor; and all products of the above collateral and all proceeds from sale of said collateral or products ("Personal Property Collateral").  A true and correct copy of the Security Agreement is attached to the concurrently filed Bergsten Declaration as **Exhibit 6.**

Tri-State perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Nevada Secretary of State's Office on January 29, 2003 as Document No. 2003002936-3, a UCC-1 Continuation Statement as Document No. 2007036260-8 on November 2, 2007 and an Amendment as Document No. 200770370361-7 on November 8, 2007. A true and correct copy of the UCC-1 Financing Statement and the Amendment are attached to the concurrently filed Bergsten Declaration as **Exhibits 7 and 8,** respectively.

### B. Payment History and Background

Tri-State has a first-priority security interest in all of Debtor's personal property assets, including its livestock (sheep), hay, leases, AUM's, and equipment.  Tri-State has a second deed of trust against Debtor's real property.  Debtor has failed to make any payments to Tri-State in 2009 and 2010 despite the fact that the loan came due on January 6, 2009.  Bergsten Declaration at ¶13.

As of the petition date, July 21, 2011, the amount of Tri-State's claim was $1,960,169.08, which consists of $1,542,651.14 in principal, $397,648.94 in accrued interest and $19,869 in expenses. Bergsten Declaration at ¶14.  The interest rate is 7.75% per annum.  *Id.*  This 7.75% interest rate was adjustable and decreased from the note's initial interest rate of 9.25%.  Tri-State, while it could have, has never invoked the plus 2% default rate option or the current accrual rate could now be 9.75%.  Interest-only annual payments at 7.75% on the principal amount of

-4-

$1,542,651.14 would be in the amount of $119,555.46. Interest only payments at 7.75% on the principal plus accrued interest plus expenses as of the day of filing would be $154,350.00. *Id.*

Over the years that the loan from Tri-State was renewed, Debtor's payments never approximated even an interest-only payment. Bergsten Declaration at ¶15. According to Mr. Bergsten, Debtor made a payment of $22,986.39 in 2005, $447,848.18 in 2006, $79,957 in 2007, and $9,087.38 in 2008. *Id.* Tri-State received no payments in 2009 and 2010. *Id.*

In fact, on March 31, 2011, Tri-State advanced the payment due to the holder of the first deed of trust against the Debtor's real property, Peter and Rama Paris Family Trust, in the amount of $104,628 so that it would not go into default. Bergsten Declaration at ¶17.

### C. Post-Petition Use of Cash Collateral

On August 11, 2011, undersigned counsel sent a letter to Debtor's counsel notifying Debtor that Tri-State did not consent to the use of its cash collateral without a mutually-agreed upon stipulation and budget. Tirre Declaration at ¶2 and Exhibit 1 thereto. Over the past two and one-half months, the parties attempted to reach terms for a cash collateral stipulation but were unable to do so. Tirre Declaration at ¶8. On September 8, 2011, undersigned counsel sent a letter to Debtor's counsel authorizing the use of its cash collateral through October 2011 based upon a budget that was forwarded by Debtor's counsel on or about August 20, 2011. Tirre Declaration at ¶¶3-4 and Exhibits 2 and 3 thereto.

On October 6, 2011, Debtor deposited $228,684.99 into its checking account with Nevada Bank & Trust. Exhibit 6 to Tirre Declaration. It is undersigned counsel's understanding that these funds came from the sale of some lambs, which occurs on an annual basis. Debtor's counsel provided a budget for Tri-State's approval on or about October 9, 2011. A copy of Debtor's budget is attached to the Tirre Declaration as Exhibit 4. On October 17, 2011, undersigned counsel sent a letter to Debtor's counsel advising that Tri-State does not consent to the use of its

-5-

cash collateral as proposed in the budget. Tirre Declaration at ¶6 and Exhibit 5 thereto.

Debtor has no authority to use Tri-State's cash collateral on or after November 1, 2011 and therefore, seeks an order prohibiting Debtor's use of Tri-State's cash collateral.

### III. LEGAL ARGUMENT

Tri-State has a perfected security interest in inter alia, all Debtor's crops, farm products, equipment, inventory, accounts, documents, chattel paper, instruments, contracts, and general intangibles now owned or hereafter acquired; all livestock, interest in livestock or its born or unborn progeny, leasehold interests in livestock, and all livestock feed, now owned or hereafter acquired by the Debtor, including but not limited to additions, replacements and increases; and all equipment, feed, hay, grain, fodder, ensilage, chemicals, fertilizers, medicines and supplies used in Debtor's farming or livestock operations now located or hereafter to be located on properties owned or leased by the Debtor; and all products of the above collateral and all proceeds from sale of said collateral or products ("Personal Property Collateral").

Pursuant to Section 363(a), the term "cash collateral" means "cash" and "the proceeds, products, offspring, rents, or profits of property." To the extent that Debtor has sold lambs and/or hay and has received payment therefore, the sale proceeds constitute Tri-State's cash collateral.

This Court should prohibit the Debtor's use of Tri-State's cash collateral. Section 363(c)(2) of the Bankruptcy Code provides that the debtor may not use cash collateral unless: "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

Tri-State does not consent to the use of its cash collateral and Debtor has not filed a motion for authority to use Tri-State's cash collateral. The monies received from the sale of Tri-State's collateral, e.g., lambs and hay, constitute Tri-State's cash collateral. Tri-State only authorizes the following payments from its cash collateral in November and December 2011:

| NOVEMBER Expenses | Amount |
|---|---|
| Real Estate Taxes | $1,026 |

-6-

| | |
|---|---:|
| Hired Labor | $5,400 |
| Labor Groceries | $2,500 |
| Fuel | $3,000 |
| Repairs & Maintenance | Est. $2,000 |
| Supplies | $2,800 |
| Utilities | $400 |
| TOTAL: | $17,126 |

| DECEMBER Expenses | Amount |
|---|---:|
| BLM Fees | $4,050 |
| Wade West Wage | $1,500 |
| Hired Labor | $7,600 |
| Labor Groceries | $2,500 |
| Fuel | $3,000 |
| Repairs & Maintenance | Est. $1,500 |
| Supplies | $2,800 |
| Utilities | $2,900 |
| TOTAL: | $25,850 |

The foregoing payments are what Tri-State deems necessary to preserve its collateral. Debtor should not be permitted to make payments that support a going concern because its operation is not financially viable.

As set forth above, in January 2003, Tri-State made a loan to Debtor when Debtor moved its livestock operation from Oregon to Nevada. Debtor had financial problems from the inception and they are continuing. Bergsten Declaration at ¶11. Tri-State kept renewing the loan in increasing amounts with the expectation that Debtor's cash flow would improve in order to service

-7-

the debt. *Id.* Nine years later Debtor still does not have a sufficiently positive cash flow to service (even if re-amortized) Tri-State's debt and all of the approximate $3.2 million of secured debts that it has built-up over the nine year period of time. *Id.*

The 2010 cash flow available to service debt is $265,071, and even if Debtor has that same amount available to service debt for 15 years into the future (See Exhibit 9 to Bergsten Declaration), it is not sufficient to fund necessary replacement capital expenditure Estimated at $50,000 per year and make existing secured loan debt service payments of $350,000 for those 15 years. Bergsten Declaration at ¶12. Even if the 2010 cash flow was repeated for 15 years in a row without fail, it would be short about $135,000 per year of producing this adequate cash flow. *Id.* Over the 15 years suggested, cash flow to service debt would be a total of approximately $2 million short of that needed. Debtor's operation is not financially viable given the amount of debt now existing. *Id.*

As of October 21, 2011, Debtor had a balance of $207,300.01 in its bank account. Tri-State's consents to Debtor retaining $10,000 for on-going expenses for January 2012 forward, but requires that the balance of the cash after payment of November and December 2011 approved expenses (set forth above) be turned over to Tri-State. Tri-State estimates that the cash turned over to it should be in the amount of $154,324.

Further, Debtor should be required to provide the following:

- Monthly bank-account statements with all back-up documentation so that Tri-State's cash collateral is segregated and accounted for.

- All documents evidencing the expenses set forth in Debtor's October 9, 2011 budget.

- All documents showing the number or headage of ewes, rams and lambs sold in September 2011 and/or October 2011, including the weights and sale prices.

- All documents showing the number or headage of ewes, rams and lambs remaining in Debtor's possession as of October 6, 2011, after Debtor deposited $228,684.99 into its checking account with Nevada Bank & Trust.

- All documents showing the tonnage of harvested and unsold hay in Debtor's possession after October 6, 2011.

-8-

In the event this Court authorizes the Debtor's use of Tri-State's cash collateral over Tri-State's objection then Tri-State requests adequate protection pursuant to 11 U.S.C. § 361. Section 361 provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by- (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Debtor should pay Tri-State cash payments of $10,000 per month to protect Tri-State's interest in its cash collateral as long as Debtor is permitted to use Tri-State's cash collateral.

## IV.  CONCLUSION

WHEREFORE, Tri-State Livestock Credit respectfully requests the Court to enter an order on an emergency basis: (i) prohibiting the Debtor's use of Tri-State's cash collateral and requiring the Debtor to segregate and account for and turn over Tri-State's cash collateral; (ii) alternatively, providing Tri-State with adequate protection; and (iii) granting Tri-State any additional relief as the Court deems appropriate.

LAW OFFICES OF AMY N. TIRRE, APC

By: /s/ Amy N. Tirre
AMY N. TIRRE, ESQ.

Counsel for Tri-State Livestock Credit Corporation

-9-

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on October 25, 2011 I filed the **MOTION TO PROHIBIT USE OF CASH COLLATERAL, OR IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION** as indicated:

__x__   **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- M NELSON ENMARK    nenmark.trustee@gmail.com
- MICHAEL LEHNERS    michaellehners@yahoo.com
- KAARAN E. THOMAS    kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com
- JOHN WHITE    bankruptcy@whitelawchartered.com, john@whitelawchartered.com;jen@whitelawchartered.com

_____   **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Reno Carson Messenger Service to the persons at the addresses set forth below.

_____   **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 25 October 2011, with postage thereon fully prepaid in the ordinary course of business.

DATED this October 25, 2011.

　　　　　　　　　　　　　　　　　/s/ Andrea Black
　　　　　　　　　　　　　　　　An Employee of Law Offices of Amy N. Tirre

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

-10-