LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

44.    In addition, Debtor failed to disclose to Tri-State a loan from Mary and Clay West, also principals of the Debtor, to the Debtor.  This insider loan was not disclosed to Tri-State in a financial statement provided by Debtor to Tri-State in October 2007, a copy of which is attached hereto as **Exhibit 14**.  Debtor made interest payments under this insider loan to Mary and Clay West, while failing to make any payments to Tri-State.  In 2008, Debtor paid $10,639 to Mary and Clay West, while only paying $9,087 to Tri-State.  In 2009, Debtor paid $9,357 to Mary and Clay West while paying $0 to Tri-State.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on November 7, 2011 at Rancho Cordova, California.

ROBERT D. BERGSTEN

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

# CERTIFICATE OF SERVICE

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on November 7, 2011 I filed the **DECLARATION OF ROBERT BERGSTEN IN SUPPORT OF MOTION TO PROHIBIT USE OF CASH COLLATERAL, OR IN THE ALTERNATIVE, MOTION FOR ADEQUATE PROTECTION** as indicated:

__X__  **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- M NELSON ENMARK    nenmark.trustee@gmail.com
- MICHAEL LEHNERS    michaellehners@yahoo.com
- KAARAN E. THOMAS    kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com
- JOHN WHITE    bankruptcy@whitelawchartered.com, john@whitelawchartered.com;jen@whitelawchartered.com

_____  **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Reno Carson Messenger Service to the persons at the addresses set forth below.

_____  **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 7 November 2011, with postage thereon fully prepaid in the ordinary course of business.

DATED this November 7, 2011.

_____/s/ Andrea Black_____
An Employee of Law Offices of Amy N. Tirre

# EXHIBIT 1

# EXHIBIT 1

# RENEWAL PROMISSORY NOTE
### (VARIABLE INTEREST RATE)

**$1,518,363.00**

February 19, 2008

ON DEMAND, or if no demand is made, then on _____**January 6, 2009**_____, without grace, for value received, the undersigned jointly and severally promise(s) to pay to the order of TRI-STATE LIVESTOCK CREDIT CORPORATION, a California corporation ("Lender"), at its office at 2880 Sunrise Blvd., Suite 224, Rancho Cordova, CA 95742, the principal sum of ——**ONE MILLION FIVE HUNDRED EIGHTEEN THOUSAND THREE HUNDRED SIXTY THREE and NO/100** —— Dollars (**$1,518,363.00**) in lawful money of the United States of America, with interest thereon from the date hereof until paid, in like lawful money, at the initial rate of _9.25_ percent per annum, which interest shall be payable on demand, or if no demand is made, then on the date hereinabove set forth for the payment of the principal, and if not paid when due, the interest shall be added to the principal hereof and thereafter bear interest at the rate herein set forth. Provided, however, that the foregoing interest rate may be adjusted by Lender from time to time during the term of this Note. The interest rate hereunder may be adjusted at any time in accordance with Lender's variable interest rate policy then in effect as established by Lender. The interest rate applicable to this Note may, in accordance with Lender's variable interest rate policy, be adjusted based upon changes in Lender's Base Rate of interest as established by Lender from time to time, changes in the principal amount of this loan and/or changes in Lender's classification of this loan in Lender's sole and absolute discretion based upon factors including but not limited to loan size and quality. The Base Rate is that certain rate of interest established by Lender from time to time as its Base Rate of Interest applicable to producers of the same or similar goods or commodities produced by the undersigned. Lender may make other loans at, above, or below the Base Rate, and Lender may establish different Base Rates for borrowers engaged in the production of goods or commodities different than the undersigned. Changes in the interest rate hereunder shall be effective immediately, with or without notice to the undersigned.

This Note is executed, delivered and accepted, not in payment of, but for the purpose of renewing the unpaid balance of note(s) executed by the undersigned in favor of Lender and described as follows:

| Dated | Maturity Date | Amount | Dated | Maturity Date | Amount |
|---|---|---|---|---|---|
| 1-18-07 | 1-6-08 | $850,000.00 | | | |

and also to evidence advances made and to be made by Lender to or for the account of the undersigned (the "Loan").

The undersigned agree(s) that any chattel mortgage(s) and security instrument(s) securing said note(s) and the property covered thereby and all other collateral securing the original note described in said instruments and additional or future advances provided for therein, shall continue to secure this renewal Note. This Note, together with any chattel mortgage(s), any security agreement(s) securing it, loan agreement(s) and other instruments evidencing or relating to the Loan, are herein sometimes collectively referred to as the "Loan Documents".

At the option of Lender or its assigns, the entire indebtedness hereunder shall become immediately due and payable without notice or demand if (a) a default occurs in any payment of principal or interest when due hereunder; (b) any promise, covenant, or obligation of the undersigned contained within this Note or in any loan application or agreement or any instrument securing payment of this Note delivered to Lender in connection herewith is breached; (c) any default occurs under the terms or provisions of any other note executed by the undersigned in favor of Lender; (d) any warranty, representation or statement made or furnished to Lender by or on behalf of the undersigned is false or erroneous in any material respect; (e) Lender determines in good faith that it is insecure or that its security for the Note has been impaired; (f) a default occurs under any provision of the Loan Documents; or (g) any of the following occur; death, dissolution, termination of existence, insolvency, business failure, appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding under any bankruptcy or insolvency law of, by, or against the undersigned, or any of them, or any guarantor, endorser or surety for the undersigned. No waiver by Lender of any default hereunder shall be effective unless in writing, nor operate as a waiver of any other default or of the same default on a future occasion.

The makers and endorsers of this Note severally waive presentment for payment, demand, protest and notice of non-payment, and agree that extensions of time of payment hereof and of the security instrument securing the same may be given by the holder or holders to said makers and endorsers, or any one or more of them, without the knowledge or consent of the other or others, and that the liability of each and all of said parties to this Note and the lien of the security instrument shall remain and continue unimpaired and in full force and effect, the same as if no extensions had been made, and consent to the release of security or the acceptance of further security for this Note, including other types of security, all without in any way affecting the liability of the makers and endorsers of this Note.

Upon the occurrence of any default under the terms and conditions of the Loan Documents, this Note shall, automatically and without notice to the makers, bear interest on the unpaid principal amount hereof from time to time outstanding at the rate of two percent (2%) per annum above the rate which would otherwise be applicable as set forth in the first paragraph hereinabove until such default is cured. Such default interest shall be due and payable upon demand. In no event shall the undersigned be required to pay interest at a rate in excess of the maximum rate permitted by applicable law. If, by the terms of this Note, the undersigned is/are obligated to pay interest at a rate in excess of such maximum permissible rate, then the interest rate hereunder shall be deemed immediately reduced to such maximum rate and any prior interest payments in excess thereof shall be deemed to have been made in reduction of the principal balance.

The Lender may transfer this Note and deliver to the transferee(s) all or any part of the property then held by it as security hereunder, and the transferee(s) shall thereupon become vested with all the powers and rights herein given to the Lender with respect thereto; and the Lender shall thereafter be forever relieved and fully discharged from any liability or responsibility in the matter, but the Lender shall retain all rights and powers hereby given with respect to property not so transferred.

The principal amount of the indebtedness evidenced by this Note may, at the option of the undersigned, be prepaid in whole or in part, with accrued interest to the date of such prepayment on the amount prepaid, without penalty or premium.

The undersigned agree(s) to pay all costs, including without limitation, attorneys' fees, incurred by the holder hereof in enforcing payment whether or not suit is filed, including, without limitation, all costs, attorneys' fees and expenses incurred by the holder hereof in connection with any insolvency, bankruptcy, reorganization, arrangement or other similar proceedings involving the undersigned which in any way affect the exercise by the holder hereof of it rights and remedies hereunder. Any and all costs incurred by the holder hereof in any action undertaken to obtain relief from the stay of bankruptcy statutes are specifically included in those costs and expenses to be paid by the undersigned pursuant hereto.

Furthermore, the undersigned agree(s) that the Lender may, in it discretion, apply any amount(s), which may be paid to and/or received or held by it relative hereto at any time(s), to the payment or reduction, either in whole or in part, of the principal, interest, costs and/or fees (in such order as the Lender may elect) then owing on all or any of indebtedness due under this Note.

The right to plead any and all statutes of limitations as a defense to any action on this Note, or on any guaranty thereof, or to any agreement to pay the same, or to any demand secured by the chattel mortgage(s), or other security instrument(s), securing this Note is expressly waived by each and all said parties, said waiver to be effective for the maximum period of time permissible by law.

**This note evidences a straight, non-revolving loan.** If, without any obligation on the part of Lender to do so, Lender advances any sums to or for the benefit of the undersigned in excess of the original principal amount of this Note as stated above, any such additional advances shall be considered principal, shall bear interest from and after the date of disbursement by Lender, and shall be subject to the repayment and other terms of this Note applicable to the principal indebtedness evidenced hereby.

**This note is secured by personal property liens and as a future advance under the following deeds of trust recorded April 27, 2007 as file #337216 Official Records, White Pine County, State of Nevada; & as file #0128841 Official Records, Lincoln County, State of Nevada; & as file #572088 Official Records, Elko County, State of Nevada; and a deed of trust recorded January 23, 2008 as file #341511 Official Records, White Pine County, State of Nevada.**

### For signatures, see Attachment "A", attached hereto and made a part hereof.

*(Borrowers, Please Initial Lines Below)*

Double U Livestock, LLC
an Oregon Limited Liability Company

By: _James A. West_
    James A. West, member

X _James A. West_
James A. West

By: X _Carleen J. West_
    Carleen J. West, member

X _Carleen J. West_
Carleen J. West

By: X _Clayton J. West_
    Clayton J. West, member

X _Clayton J. West_
Clayton J. West

By: X _Mary S. West_
    Mary West, member

X _Mary S. West_
Mary West

By: X _Wade West_
    Wade S. West, member

X _Wade West_
Wade S. West

By: X _Molly West_
    Molly West, member

X _Molly West_
Molly West
(All As Individuals)

# EXHIBIT 2

# EXHIBIT 2

# LOAN AGREEMENT

## To **TRI-STATE LIVESTOCK CREDIT CORPORATION ("Tri-State")**
2880 Sunrise Blvd., Suite 224, Rancho Cordova, CA 95742

In consideration of each loan or advance thereto which you may make to the undersigned, it is agreed that the execution of each note by the undersigned shall be evidence of the acceptance of the loan by the undersigned, and in so accepting the loan the undersigned agree and acknowledge:

1.  To execute a promissory note and, if and when required, renewal notes and notes for additional advances, payable to your order in a form satisfactory to you for a sum equal to your tentative approval of the undersigned's loan application for the raising, breeding, fattening, purchase of livestock, and other purposes approved by you; and

2.  To accept advances in such amounts and at such times as in your opinion they should be made and to release you from advancing the full amount of any note, budget, or commitment when in your opinion further advances would not be justified or deemed necessary by the facts and conditions; and

3.  To pay interest on all sums due from the undersigned, regardless of when advanced, at the rate of interest determined by your Board of Directors from time to time, regardless of the interest rate specified in said note or notes; provided, however, that the rate of interest which undersigned agree to pay on each advance shall not at any time be less than the rate specified in the note under which such advance is made; and

4.  To the payment at your option, directly to the parties entitled thereto, of any and all amounts included in your tentative approval of the undersigned's loan application and budget, so long as any indebtedness from the undersigned to you remains outstanding; and

5.  To the withholding from loan proceeds of loan service fees and to reimburse you for any sums expended to obtain, determine, and maintain a first and paramount lien on the property offered to you as security; and

6.  To the issuance of any and all checks representing loan advances in the name of __**Double U Livestock, LLC**__ or the hereinafter named attorney-in-fact, and release you from further liability to undersigned; and

7.  To execute in your favor, if and whenever required by you and prior to the removal of the security or any part thereof from the premises of the undersigned, an assignment or assignments of proceeds of sale of any and all property mortgaged or pledged to you as loan security, it being expressly understood and agreed that all shipments of such property to marketing agencies or other purchasers are to be consigned or sold in the names of the undersigned and your corporation and all proceeds mailed direct to your corporation, that said assignments shall not be construed as payment to you and you shall be under no obligation to enforce collection of any assignment; that you may apply in any such manner as you may elect any and all sums actually received or collected by you upon the indebtedness of the undersigned; provided, however, nothing herein contained shall be deemed to waive the provisions of the security agreement for this loan or to be deemed a prior consent by you of any removal or sale of security; and

8.  To notify you immediately of the death or disability of any maker, co-maker, guarantor, or endorser of the note or notes of the undersigned, or of the transfer of all or any interest in any property or assets serving as security for the obligations owned by you to Tri-State; and

9.  That the undersigned _____**N/A**_____ be, and he is hereby appointed as, the attorney-in-fact for each of the undersigned and is hereby given full power and authority;

    a.  To receive any and all sums of money, or to draw drafts against any present or future loan commitments which you, at your option, may loan or advance under the provisions of said commitments; and
    b.  To execute any and all assignments of proceeds of sale required by you as provided in paragraph 7; and
    c.  To endorse and receive payments of any and all checks representing loan advances, and any refunds from overpayment of loans; and such endorsements shall be as binding on the undersigned as though made by each and all of them; and
    d.  To apply for extensions of time in the payment of any obligation hereunder whenever such becomes necessary.

    The foregoing power of attorney shall remain in full force and effect until notice of revocation in writing is given by all of the undersigned or a new loan agreement is executed by all of the undersigned.

10. Any undersigned who is a married woman and who joins in the execution of any obligation secured by a security agreement or other hypothecation of community property, real or personal, in your favor, hereby expressly agrees to the liability of her separate property for the repayment of such obligation but without creating a present or any lien or charge on such separate property; and

11. This agreement constitutes a continuing contract applying to any and all future, as well as existing, loans and transactions between undersigned and Tri-State, including all renewal notes, notes for additional advances, financing statements, security agreements and other security instruments hereafter executed, and the undersigned agree to comply with, pay, and/or fully perform each and every requirement, obligation, covenant and condition set forth in any notes, renewal notes, notes for additional advances, security agreements, deeds of trust, mortgages, loan agreements, loan approval letters and other documents evidencing or securing each loan or advance made to you by Tri-State.

12. California, and the laws of the State of California shall be controlling in all matters related to the enforcement, collection, and interpretation of the loan and the loan documents.

13. Tri-State has made no commitments, representations, assurances or promises regarding the extension or renewal of any loan or the provision of future financing to the undersigned. There are no terms, agreements, representations, promises or warranties regarding the loan(s) or the lending relationship between the undersigned and Tri-State except as expressly set forth in the written loan documents evidencing or securing the loan(s) or advance(s) made to you, which loan documents may include promissory notes, renewal promissory notes, security agreements, deeds of trust, mortgages, loan agreements, loan approval letters and other related documents.

14. The undersigned agrees to pay Tri-State's reasonable administrative costs and fees in connection with any loan payoff, loan modification, termination of financing, lien release or other reconveyance of security.

15. THIS IS A VARIABLE INTEREST RATE LOAN. The interest rate may be adjusted at any time in accordance with Lender's variable interest rate policy then in effect as established by Lender. The interest rate may, in accordance with Lender's variable interest rate policy, be adjusted based upon changes in Lender's Base Rate of interest as established by Lender from time to time, changes in the principal amount of this loan and/or changes in Lender's classification of this loan in Lender's sole and absolute discretion based upon factors including but not limited to loan size and quality. The Base Rate is that certain rate of interest established by Lender from time to time as its Base Rate of Interest applicable to producers of the same or similar goods or commodities produced by the undersigned. Lender may make other loans at, above, or below the Base Rate, and Lender may establish different Base Rates for borrowers engaged in the production of goods or commodities different than the undersigned. Changes in the interest rate shall be effective immediately, with or without notice to the undersigned.

16. Tri-State borrows from the Farm Credit System as an "Other Financial Institution". As such, Tri-State is subject to the Farm Credit Administration Regulations pertaining to Other Financial Institutions.

17. If the undersigned's loan is a Level Line of Credit, the following provisions apply:

    a. The undersigned agrees to execute a promissory note for the maximum amount that is anticipated will be outstanding at any one time during the period of the financing.

    b. Under said financing Tri-State is authorized to reinstate on the applicable note all principal sums repaid by the undersigned before the maturity date so long as there exists no event of default under said note and the other documents evidencing or securing this loan; provided, however, that the total amount outstanding at any one time shall not exceed the amount stated on said note.

    c. Advances and repayments shall be posted upon an appropriate account record of Tri-State, which record shall evidence the amount owing and unpaid on said note, and it is agreed that such record may be admitted into evidence in any dispute arising out of said note for the purpose of establishing the balance due.

    d. At the request and option of Tri-State, the undersigned agrees to substitute a negotiable demand note for the unpaid indebtedness owing at any time to Tri-State.

18. Prior to any funding or advances, and at such other times as Tri-State shall request, Tri-State shall receive satisfactory evidence that it has a first and prior lien on all of the undersigned's livestock, farm products and other collateral, now owned or hereafter acquired, including but not limited to that described in any Security Agreements.

19. During the term of the undersigned's loan(s), all livestock purchases by the undersigned shall be made by Bill of Sale Checks in form acceptable to Tri-State. If, for any reason, Bill of Sale checks cannot be used for livestock purchases, then a copy of each Bill of Sale for livestock purchased indicating number, type or kind, age, brand, location, weight, price and other relevant information shall be promptly forwarded to Tri-State. Within a reasonable period of time after delivery, all livestock acquired by the undersigned shall be identified with the undersigned's brand(s). The proceeds of all sales or other dispositions of livestock, farm products or other collateral for the undersigned's indebtedness to Tri-State shall be delivered to Tri-State to be applied in reduction of the indebtedness.

20. The undersigned shall, upon request, provide copies of all brand registrations, brand transfer approvals and other brand information to Tri-State at its office.

21. The undersigned shall cause to be delivered to Tri-State a copy of each annual federal income tax return promptly upon its preparation for filing.

22. **Borrower understands that advances will be made for <u>only Paris Ranch annual payment, irrigation improvement project expenses,</u> and the remaining amount for operating expenses.**

23. **Borrower understands that <u>all amounts paid by Farm Service Agency for irrigation improvements are to be assigned and paid to Tri-State.</u>**

24. **Borrower is permitted to retain cash proceeds from livestock and other income sales to pay for operating expenses.**

25. **Borrower understands that <u>all principal, plus accrued interest is due and payable upon the January 6, 2009 maturity date of the note.</u> Any extensions or renewals beyond that date are at the sole discretion of Tri-State.**

Dated: **February 19, 2008**

**For signatures, see Attachment "A", attached hereto and made a part hereof.**

*(Borrowers, Please Initial Lines Below)*

_____     _____

_____     JAW × W.W. × MW ×

_____     CJ × MW × CW ×

_____     _____

(All persons and parties that sign the note or security agreement or both MUST sign this Loan Agreement)



**Attachment "A"**
**to Loan Agreement**
**dated February 19, 2008 for Double U Livestock, LLC**

Double U Livestock, LLC
an Oregon Limited Liability Company

By: X _____
    James A. West, member

By: X _____
    Carleen J. West, member

By: X _____
    Clayton J. West, member

By: X _____
    Mary West, member

By: X _____
    Wade S. West, member

By: X _____
    Molly West, member

X _____
James A. West

X _____
Carleen J. West

X _____
Clayton J. West

X _____
Mary West

X _____
Wade S. West

X _____
Molly West
(All As Individuals)

# EXHIBIT 3

# EXHIBIT 3

**DOC #** **572088**

04/27/2007                                    03:45 PM

**Official Record**

Requested By
FIRST AMERICAN TITLE

Elko County — NV

Jerry D. Reynolds — Recorder

Page   1   of   32    Fee:   $45.00

Recorded By:    NR      RPTT:



*572088*

RECORDING REQUESTED BY AND
WHEN RECORDED, MAIL TO:

Tri-State Livestock Credit Corporation
2880 Sunrise Blvd., Suite 224
Rancho Cordova, CA 95742

007-160-05

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

# DEED OF TRUST, ASSIGNMENT OF RENTS
# AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT is made as of February 26, 2007, by and among **Double U Livestock, LLC, an Oregon Limited Liability Company, as** ("Trustor"), whose place of business is HC 33, Box 33660, Ely, Nevada, 89301, **Tri-State Livestock Credit Corporation, a California Corporation as** ("Trustee"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742; and **Tri-State Livestock Credit Corporation, a California Corporation** ("Beneficiary"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742.

1.    **Grant in Trust**. Trustor IRREVOCABLY GRANTS, CONVEYS AND ASSIGNS to said Trustee, in trust for the benefit of Beneficiary, with power of sale together with right of entry and possession, the property described below in Sections 1.1 through 1.7 inclusive (collectively, the "Property").

1.1    The real property situated in the County(s) of **White Pine, Elko and Lincoln**, State of Nevada, which are particularly described in Exhibit "A" attached hereto and by this reference incorporated herein (the "Real Property").

1.2    **Buildings, Fixtures, and Other Improvements**. All buildings, structures, equipment, fixtures (including, but not limited to, trees, vines and shrubs) and improvements of every kind and description now or hereafter constructed or placed on the Real Property; all standing timber and timber to be cut located on the Real Property; and all pumping plants, electrical generators, wind machines, and fencing and storage tanks, now or hereafter used in connection with the Property, all of which are hereby declared to be fixtures. Without limiting the generality of the foregoing, a description of some fixtures may also be included with the description of the Real Property set forth above or in an exhibit hereto.

1.3    **Leases and Other Rights**. All existing and future leases, subleases, licenses, permits, agreements, permits and concessions relating to the use or enjoyment of the Real Property, including all grazing rights, leases, permits and licenses; all oil, gas, and mineral

1


leases, permits and rights used with the Real Property; and all tenements, hereditaments, easements, rights-of-way and appurtenances to the Real Property.

      **1.4**    **Water Assets**. All right, title, and interest at any time of Trustor (or any of its bailees, agents, or instrumentalities), whether now existing or hereafter arising or acquired, whether direct or indirect, whether owned legally, of record, equitably or beneficially, whether constituting real or personal property (or subject to any other characterizations), whether created or authorized under existing or future laws or regulations, and however arising in, including without limitation, the water, water rights and other assets and items described below in Sections 1.4(a) through 1.4(i) inclusive, which shall collectively be called "Water Assets". References to "water" and "water rights" are used herein in the broadest and most comprehensive sense of the term(s). The term "water" includes water rights and rights to water or whatever rights to money, proceeds, property or other benefits are exchanged or received for or on account of any Water Assets or any conservation or other nonuse of water, including whatever rights are achieved by depositing one's share of any Water Assets in any water bank or with any water authority, or any other water reallocation rights. Without limiting the generality of the foregoing, a description of some Water Assets may also be included with the description of the Property set forth above or in an exhibit hereto. The Water Assets include, but are not limited to, the following:

      (a)    All water (including any water inventory in storage), water rights and entitlements, other rights to water and other rights to receive water or water rights of every kind or nature whatsoever including: (a) the groundwater on, under, pumped from or otherwise available to the Property, whether as the result of groundwater rights, contractual rights or otherwise; (b) Trustor's right to remove and extract any such groundwater including any permits, rights or licenses granted by any governmental authority or agency or any rights granted or created by any use, easement, covenant, agreement, or contract with any person or entity; (c) any rights to which the Property is entitled with respect to surface water, whether such right is appropriative, riparian, prescriptive, decreed or otherwise and whether or not pursuant to permit or other governmental authorization, or the right to store any such water; (d) any water, water right, water allocation, distribution right, delivery right, water storage right, or other water-related entitlement appurtenant or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any district, agency, or other governmental entity or within the boundaries of any private water company, mutual water company, or other non-governmental entity; (e) all water and existing and future water rights, however evidenced, to the use of water for irrigation, livestock and domestic purposes, including irrigation and watering equipment and systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property, all of which rights are or are hereby made appurtenant to the Property.

      (b)    All stock, interest or rights (including any water allocations, voting or decision rights) in any entity, together with any and all rights from any entity or other person to acquire, receive, exchange, sell, lease, or otherwise transfer any Water Assets, to store, deposit or otherwise create water credits in a water bank or similar or other arrangement for allocating water, to transport or deliver water, or otherwise to deal with any Water Asset.

      (c)    All licenses, permits, approvals, contracts, decrees, rights and interests to acquire or appropriate any Water Assets, water bank or other credits evidencing any right to Water Assets, to store, carry, transport or deliver Water Assets, to sell, lease, exchange,

2


or otherwise transfer any Water Asset, or to change the point for diversion of water, the location of any Water Asset, the place of use of any Water Asset, or the purpose of the use of any Water Asset.

      (d)    All rights, claims, causes of action, judgments, awards, and other judicial, arbiter or administrative relief in any way relating to any Water Asset

      (e)    All storage and treatment rights for any Water Asset, whether on or off the Property or other property of Trustor, together with all storage tanks, and other equipment used or usable in connection with such storage and any water bank deposit credits, deposit accounts or other rights arising on account of the storage or nonuse of any Water Asset.

      (f)    All rights to transport carry, allocate or otherwise deliver Water Assets by any means wherever located.

      (g)    All irrigation and watering equipment, including all pumps, pumping plants, storage tanks, pump motors, electrical generators (all of which are declared to be fixtures) and all systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Real Property.

      (h)    All guaranties, warranties, marketing, management or service contracts, indemnity agreements, and water right agreements, other water related contracts and water reallocation rights, all insurance policies regarding or relating to any Water Asset.

      (i)    All rents, issues, profits, proceeds and other accounts, instruments, chattel paper, contract rights, general intangibles, deposit accounts, and other rights to payment arising from or on account of any use, nonuse, sale, lease, transfer or other disposition of any Water Asset.

      **1.5**    **Personal Property**. All right, title and interest of Trustor in and to all tangible personal property (the "Personal Property") owned by Trustor and now or at any time hereafter located on or at the Property or used in connection therewith, including, but not limited to: all goods, machinery, tools, insurance proceeds, equipment (including fire sprinklers and alarm systems, office air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, window or structural cleaning rigs, maintenance, exclusion of vermin or insects, removal of dust, refuse or garbage, and all other equipment of every kind), lobby and all other indoor and outdoor furniture (including tables, chairs, planters, desks, sofas, shelves, lockers and cabinets), wall beds, wall safes, furnishings, appliances (including ice boxes, refrigerators, fans, heaters, stoves, water heaters and incinerators), inventory, rugs, carpets and other floor coverings, draperies and drapery rods and brackets, awnings, window shades, venetian blinds, curtains, lamps, chandeliers and other lighting fixtures and office maintenance and other supplies.

      **1.6**    **Insurance**. All of Borrower's interest in policies of, and proceeds resulting from, insurance relating to the Property or any of the above Collateral, and any and all riders, amendments, renewals, supplements or extensions hereof, and all proceeds thereof.

3


**1.7    Additions and Proceeds**. All additions, accretions, substitutions and replacements of any of the Property; all proceeds of the Property, including all proceeds of present and future insurance policies; and all condemnation awards or payments now or later made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any misrepresentation, damage or injury to, or defect in the property.

**2.    Assignment of Rents**. TRUSTOR ABSOLUTELY AND UNCONDITIONALLY ASSIGNS, transfers, conveys and sets over to Beneficiary all the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use, non-use, enjoyment, sale, transfer or other disposition of all or any portion thereof, including those set forth in Section 1.4(i) above, or from any lease, mineral lease, or agreement pertaining to the Property (collectively the "Rents"); whether now existing or hereafter arising and whether now due, past due or to become due; SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Trustor by Section 18 hereof. This assignment of the Rents shall be perfected automatically without appointment of a receiver or Beneficiary becoming a mortgagee in possession.

**3.    Obligations Secured**. Trustor makes the grant, conveyance, and assignment of the Property as described above for purposes of securing the following indebtedness and other obligations (collectively, "Indebtedness") in any order of priority that Beneficiary may choose:

(a)    payment of the indebtedness and performance of the obligations of Trustor evidenced by the following promissory note(s) (collectively "Note") and/ or the following continuing guaranty(s) (collectively "Guaranty"), and any other documents executed by Trustor in conjunction with the Note or Guaranty:

(i)    a Revolving Line of Credit Promissory Note  dated as of January 18, 2007, in the stated principal amount of $850,000.00,

(b)    the payment of such additional loans or advances, including advances under a revolving line of credit, with interest thereon, as hereafter may be made to or guaranteed by Trustor, or Trustor's successors or assigns, evidenced by a promissory note, guaranty, loan agreement or otherwise; PROVIDED, HOWEVER, that such additional loans or advances will be secured by this Deed of Trust only if the promissory note, guaranty, loan agreement or other document evidencing the obligations of Trustor relative to such loans or advances recites that it is to be secured by this Deed of Trust;

(c)    the payment and performance of the obligations set forth in any document evidencing an extension, renewal, modification, replacement, reamortization, conversion, or restatement of any Indebtedness secured by this Deed of Trust, including without limitation renewal and/or substitute notes, guaranties, and loan agreements.

(d)    the performance of every obligation and agreement of Trustor whether contained or incorporated by reference in this Deed of Trust, or contained in any loan agreement, loan document or guaranty executed by Trustor in favor of Beneficiary, with respect to any loan or advance secured by this Deed of Trust; and

4


(e)      the payment of all sums expended or advanced by Beneficiary under or pursuant to the terms of this Deed of Trust, together with interest thereon as herein provided.

The Notes referred to above are payable by Trustor and/or others to the Beneficiary at the times, in the manner and with interest as therein set forth. The Note and other documents evidencing the Indebtedness may contain variable or adjustable interest rate provisions and provisions evidencing revolving lines of credit.

The continuing validity and priority of this Deed of Trust as security for future loans or advances will not be impaired by the fact that at certain times hereafter there may be no outstanding loan or other indebtedness from Trustor to Beneficiary and/or no commitment to make loans or advances.

Notwithstanding the foregoing, this Deed of Trust does not secure any indebtedness or other obligation if the promissory note, guaranty, or any other document evidencing or pertaining to the indebtedness or obligation states that it is unsecured or not secured by real property.

**4.      Personal Property Security Agreement**. To the extent that any of the Property, (including without limitation any Water Assets or fixtures), is deemed to constitute, is adjudicated to be, or declared to be personal property, this Deed of Trust shall also be deemed to be a security agreement. Trustor does hereby create and grant to Beneficiary a security interest in all such personal property described herein and this Deed of Trust shall constitute a security agreement pursuant to the Nevada Uniform Commercial Code with respect to all such personal property; and further, grants to Beneficiary all of the rights and remedies of a secured party under the Nevada Uniform Commercial Code and other applicable state law, which rights are cumulative. For the purposes of treating this Deed of Trust as a security agreement, Trustor shall be deemed to be the "Debtor" and Beneficiary the "Secured Party."

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES TO EACH OF THE FOLLOWING:**

**5.      Use of Proceeds; Payment of Secured Obligations**. To use loan proceeds solely for the purposes set forth in the loan application(s) or as otherwise required by Beneficiary, and to pay when due the principal of, and the interest on, the Indebtedness evidenced by the Note and/or Guaranty, charges, fees, and all other sums as provided in any of the documents evidencing the Indebtedness secured hereby, together with any future advances secured by this Deed of Trust.

**6.      Condition of Property**. To keep the Property in good condition, working order and repair; to care for the Property in accordance with standards of good husbandry and to keep all trees, vines and crops on said land properly cultivated, irrigated, fertilized, sprayed, and fumigated; not to sell, transfer, assign, encumber or convey any water or water right from the Property, or to enter into an agreement for the nonuse of water, without the prior written consent of Beneficiary; not to remove, destroy or suffer the removal or destruction of any building, fence, canal, well or other improvements or fixtures thereon; not to remove, replace or alter any horticultural or viticultural tree, vine or shrub planted thereon without the prior written consent of


Beneficiary, except in the ordinary course of business; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting the Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general; to observe and perform all obligations of Truster under any lease of the Property.

       **7.**   **Insurance**. To provide, maintain and deliver to Beneficiary, fire, extended coverage, flood, comprehensive public liability, and all other types of insurance, in terms and amounts as may be required by law or Beneficiary, with loss payable endorsements (including lender loss payable endorsements) solely in favor of Beneficiary. In the event of loss, the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to reduce the Indebtedness or restore or repair the property damaged. Failure to obtain, maintain or deliver to Beneficiary the insurance required shall constitute an event of default under this Deed of Trust.

       At least thirty (30) days prior to the expiration of any such policy of insurance, Truster will deliver a policy renewing or extending such expiring insurance and written evidence demonstrating payment of the premium for such insurance. If any such policy and evidence of payment (or copies of same, if originals cannot be delivered to Beneficiary) are not so delivered to Beneficiary, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, Beneficiary may (but is not obligated to), at Trustor's expense, obtain insurance in such types, on such terms and in such amounts as Beneficiary in its sole discretion shall decide, through or from any insurance agency or company acceptable to it. Any insurance obtained by Beneficiary shall be for its sole benefit and to protect the security of this Deed of Trust. The expense and cost of such insurance shall, at Beneficiary's sole option, be payable on demand or added to the Indebtedness as provided herein. Neither Trustee nor Beneficiary shall be chargeable with or responsible for the procurement or maintenance of any such insurance, the collection of any proceeds from such insurance, or the insolvency of any insurance company or underwriter.

       **8.**   **Defense of Title**. To appear in and litigate any action or proceeding purporting to affect the security hereof, the title to the Property, or the rights or powers of Beneficiary or Trustee. Beneficiary or Trustee may appear in and litigate any such action or proceedings, including any bankruptcy, partition or condemnation proceeding, affecting the Property, or Beneficiary's interest therein, in which event Trustor agrees to pay all costs and expenses thereof, including attorney's fees and costs of securing evidence of title.

       **9.**   **Taxes, Liens and Assessments**. To pay, at least ten (10) days prior to delinquency, all taxes and assessments affecting the Property, including all assessments upon water company stock, or other Water Assets, and all rents, assessments and charges for water appurtenant to or used in connection with the Property; to pay when due all encumbrances, charges, and liens on the Property, or any part thereof, which at any time create, may create or appear to create a lien upon the Property. If requested by Beneficiary, Trustor shall cause to be furnished to Beneficiary a tax reporting service covering the Property of the type, duration and with a company satisfactory to Beneficiary.

**10.    Fees and Costs**.  In the event that Beneficiary or Trustee uses the services of attorneys, accountants, appraisers, consultants, or other professional or outside assistance, including the services of in-house counsel or any other attorney or professional who is an employee of Lender, the reasonable amount of fees, costs and expenses ("Expenses") incurred by Beneficiary or Trustee to use such persons in connection with any of the following shall be payable by Trustor on demand. Beneficiary or Trustee may, at its option, add the amount of such Expenses to any portion of the Indebtedness plus an appropriate amount of Beneficiary's stock or participation certificates required in connection with the loan (as required by federal law or regulation or Beneficiary's bylaws), and charge interest on such amount at the interest rate applicable to such portion of the Indebtedness. The Expenses include, but are not limited to, the fees, costs, and expenses arising from the following:

(a)    The preparation, modification or enforcement of this Deed of Trust, and any other agreement or document incident to the Indebtedness or to the Property;

(b)    Any litigation, dispute, proceeding, or action (whether or not dismissed, reduced to judgment, or otherwise resolved), and whether instituted by Beneficiary, Trustee or Trustor or any other person, relating to the Indebtedness, the Property or Trustor's affairs;

(c)    The furtherance of Beneficiary's or Trustee's interest in any bankruptcy, insolvency, or reorganization case or proceeding instituted by or against Trustor, including any steps to (1) modify or terminate the automatic stay, (ii) prohibit or condition Trustor's use of cash collateral, (iii) object to any disclosure statement or plan, (iv) propose or confirm a plan, and (v) prosecute or defend adversary proceedings or contested matters, and take or defend examinations or discovery, whether or not related to any adversary proceeding or contested matter and whether or not dismissed, reduced to judgment, or otherwise resolved;

(d)    The inspection, verification, protection, collection, processing, sale, liquidation, or disposition of the Property; and

(e)    Any of the type of Expenses referred to in (a) through (e) above incurred by Beneficiary or Trustee in connection with any guaranty of the Indebtedness.

The Expenses described herein and elsewhere in this Deed of Trust shall be in addition to those set forth in any Security Instrument or any other written agreement between Beneficiary and Trustor.

**11.    Beneficiary May Act for Trustor**.  Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Truster and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the Property, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and litigate any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee, including any bankruptcy proceeding affecting the Property; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; pay such fees, charges, rents or other payments accruing under the grazing permits

7


described in Section 14 below; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefore, including attorney's, accountant's, and appraisal fees, environmental fees and costs of securing evidence of title, and all amounts so expended shall be obligations of Truster secured by this Deed of Trust. Nothing contained herein shall prohibit Beneficiary from entering the Property, at a reasonable time and upon reasonable notice to Trustee, without incurring or assuming any obligations or liabilities whatsoever, for the sole purpose of inspecting the Property.

### 12. **Environmental Compliance Matters**.

      **12.1** **Definitions**. For the purposes of this Section 12, the following terms shall be defined as follows:

      (a) "Hazardous Material" means any radioactive, hazardous, or toxic substance, material, waste or similar term, the presence of which on the Property, or the discharge or emission of which from the Property, is prohibited by Governmental Requirements (hereafter defined) or which require special handling in collection, storage, treatment, or disposal by any Governmental Requirements. The term "Hazardous Material" includes, but is not limited to, any material, substance, waste or similar term which is:

      (i) Defined as a hazardous material under the laws of the State of Nevada, as amended from time to time;

      (ii) Defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. Section 1317) as amended from time to time;

      (iii) Defined as a hazardous waste under Section 1004 of the Federal Resource Conservation and Recovery Act (42 U.S.C. Section 6901 et seq.), as amended from time to time;

      (iv) Defined as a hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601 et seq.), as amended from time to time;

      (v) Defined as a radioactive, hazardous, or toxic substance, waste, material or similar term in any rules and regulations, as amended from time to time, which are adopted by any administrative agency; including, but not limited to the Environmental Protection Agency, the Occupational Safety and Health Administration, and any such similar state or local agency having jurisdiction over the Property, whether or not such rules and regulations have the force of law;

      (vi) Determined to contain asbestos or polychlorinated biphenyls;

      (vii) Defined as a radioactive, hazardous, or toxic waste, substance, material or similar term in any other statute, regulation, rule or law presently in effect, or enacted or adopted at any time after the date of this Deed of Trust, by local authorities, the State of Nevada, and/or the federal government; or


(viii)    Subject to regulation under the Toxic Substances Control Act (TSCA) 15 U.S.C., Section 2061 et seq.

(b)    "Governmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, orders, and decrees of the United States, the State of Nevada, and all local or governmental or regulatory authorities exercising jurisdiction over Trustor or the Property.

(c)    The "Termination Date" shall be the date on which the Indebtedness secured by this Deed of Trust shall be paid and satisfied in full; except that if the Indebtedness secured by this Deed of Trust shall be paid and satisfied by foreclosure, sale under the power of sale herein contained, deed in lieu of foreclosure or sale by power of sale, or by any other means by which title to the Property, or any part thereof, becomes vested in the Beneficiary under this Deed of Trust, Beneficiary, or any transferee, assignee, subsidiary, or other successor in interest to Beneficiary, then the Termination Date shall be the later of (i) the date on which this Deed of Trust is paid and satisfied in full, or (ii) the date on which Trustor and Trustor's employees, agents, and officers have fully and finally relinquished, surrendered, and delivered up the ownership, use, occupancy, and possession of all portions of the Property.

(d)    "Hazardous Material Contamination" shall mean the contamination (whether presently existing or hereafter occurring) of the Property, or the contamination of the buildings, facilities, soil, ground water, air or other elements on, or of, any other property as a result of Hazardous Material at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

**12.2    No Hazardous Material**.    To the best of Trustor's knowledge, Trustor warrants and represents that, as of the date hereof, there is no Hazardous Material on or in the Property, or being released or discharged therefrom (the term "Property" expressly including for the purposes of this Section 12.2, all buildings and other improvements located thereon, all Personal Property, the soil and the ground water thereof, including the streams crossing or abutting the Property and the aquifer underlying the Property), whether such Hazardous Material be located or placed on or within the Property by spill, release, discharge, disposal, storage, or otherwise.

To the best of Trustor's knowledge after due and diligent inquiry that except for Hazardous Materials used in the normal and ordinary operation of the Property and consistent with all applicable local, state and federal statutes and regulations: (i) no part of the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material, nor is any part of the Property affected by any Hazardous Material Contamination; (ii) no property adjoining the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material; and (iii) no property adjoining the Property is affected by Hazardous Material Contamination.

Trustor covenants and agrees that from the date hereof through the Termination Date, Trustor and Trustor's agents, contractors, authorized representatives and employees (collectively "Trustor's Agents") shall not engage in any of the following prohibited activities, and

9

 
Trustor shall use its best and diligent efforts to see that Trustor's invitees and tenants, and such tenants' employees, agents, and invitees shall not:

(a)     Cause or permit any releases or discharges of Hazardous Material from the Property; or

(b)     Cause or permit any manufacturing, holding, handling, retaining, transporting, spilling, leaking, or dumping of Hazardous Material in or on any portion of the Property; or,

(c)     Otherwise place, keep, or maintain, or allow to be placed, kept, or maintained, any Hazardous Material on any portion of the Property.

**12.3     Compliance With Law**.  From the date hereof through the Termination Date, Trustor shall comply, and cause Trustor's Agents and the Property to comply, with all laws, ordinances, rules, and regulations of all authorities having jurisdiction over the Trustor, Trustor's Agents, the Property, or the use of the Property, and pertaining to any Hazardous Material (herein called "Hazardous Material Laws").

**12.4     Removal of Hazardous Material and Freedom From Liens**.  If Hazardous Material is discovered on the Property, Trustor shall pay immediately when due the cost of removal of any Hazardous Material from the Property in compliance with all Governmental Requirements, and keep the entire Property free of any lien imposed pursuant to any laws, regulations, or orders of any governmental or regulatory authority having to do with the removal of Hazardous Material

Within thirty (30) days after demand by Beneficiary, Trustor shall obtain and deliver to Beneficiary a bond, letter of credit, or similar financial assurance for the benefit of Beneficiary evidencing, to Beneficiary's satisfaction, that the necessary funds are available to pay the cost of removing, treating, and disposing of all Hazardous Material or Hazardous Material Contamination on the Property and discharging any assessments or liens which may be established on the Property as a result thereof.

**12.5     Hazardous Material Reports**.  To the best of Trustor's knowledge, no report, analysis, study, or other document asserting that Hazardous Material Contamination exists on the Property or identifying any Hazardous Material as being located upon or released or discharged from the Property has been issued.  Trustor shall:

(a)     Give notice to Beneficiary immediately upon Trustor's acquiring knowledge of the presence of any Hazardous Material on the Property or of any Hazardous Material Contamination thereon, with a full description thereof;

(b)     Immediately advise Beneficiary in writing of any notice received by Trustor or Trustor's Agents alleging that the Property contains Hazardous Material or Hazardous Material Contamination or that a violation or potential violation of any Hazardous Material Laws by Trustor, Trustor's Agents, or the Property exists (whether such notices are received from the Environmental Protection Agency, the Occupational Safety and Health Agency, or any other federal, state or local governmental agency or regional office thereof);


(c)     Immediately advise Beneficiary in writing of any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened with respect to the Property or any property adjoining the Property pursuant to any Hazardous Material Laws;

(d)     Immediately advise Beneficiary in writing of all claims made or threatened by any third party against Trustor, Trustor's Agents, or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Material or Hazardous Material Contamination pertaining to the Property; and

(e)     Immediately advise Beneficiary in writing upon Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property which does, or could, cause the Property, or any part thereof, to contain Hazardous Material or Hazardous Material Contamination or otherwise be in violation of any Hazardous Material Laws, or cause the Property to be subject to any restrictions on the ownership, occupancy, transferability or use thereof under any Hazardous Material Laws.

**12.6    Other Property of Trustor**.  Trustor covenants, warrants, and represents that there is no property owned or used by Trustor which contains Hazardous Material or Hazardous Material Contamination, emits or discharges Hazardous Material, or otherwise violates any Hazardous Material laws, such that a charge or lien as a result thereof could be placed upon the Property, or any liability therefor could be imposed upon Trustor.

**12.7    Remedial Action, Beneficiary's Consent**.  Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Material or Hazardous Material Contamination upon or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any violation or alleged violation of any Hazardous Material Laws, which remedial action, settlement, consent or compromise might, in Beneficiary's judgment, impair the value of Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Material or Hazardous Material Contamination on or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action.  In such event, Trustor shall notify Beneficiary as soon as practicable of any action so taken.  Beneficiary shall not withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

**12.8    Beneficiary's Corrective Action**.  In addition to the other remedies provided to Beneficiary elsewhere in the Loan Documents, Beneficiary shall have the right, but not the obligation to cause all Hazardous Material or Hazardous Material Contamination found on or in the Property to be removed therefrom, and in such event, the cost of the removal, including all expenses, charges, and fees incurred by Beneficiary in connection therewith, including attorneys, engineers, and consultants fees, shall be secured by this Deed of Trust,

11


shall be payable by Trustor on demand and shall bear interest at the Default Rate provided in the Note from the date advanced until paid. Trustor shall give to Beneficiary and its agents and employees access to the Property for such purposes; and Trustor hereby grants to Beneficiary, its agents and employees, full right and authority to remove any such Hazardous Material or Hazardous Material Contamination from the Property.

     **12.9**   **Environmental Audit**.  Beneficiary, at any time and from time to time during the term of the Loan, if it has reasonable cause to suspect that any provision of this Section 12 is not being complied with, may notify Trustor in writing that it desires a site assessment or environmental audit (such assessment or audit being herein called the "Audit") of the Property to be made, and at any time thereafter cause such site assessment or environmental audit to be made of the Property at Trustor's sole expense.  Such Audit(s) shall be performed in a manner reasonably calculated to confirm and verify compliance with the provisions of this Section 12.  Such results shall be kept confidential by both Trustor and Beneficiary unless either party is legally compelled or required to disclose such results, or disclosure is reasonably required in order to pursue rights or remedies provided herein or at law.

     If Trustor fails to pay for the Audit as provided for herein within fifteen (15) days of receipt of billing therefor, Beneficiary may, at its election, declare a default hereunder, and, with or without declaring such default, add the cost thereof to the indebtedness secured by this Deed of Trust, in which case interest shall accrue at the Default Rate on such amount from the 16th day after billing until paid by Trustor.

     Trustor covenants to reasonably cooperate with the persons conducting the Audit (the "Auditors") to allow entry and reasonable access to all portions of the Property for the purpose of the Audit, to supply the Auditors with all available historical and operational information regarding the Property as may reasonably be requested by the Auditors, and to make available for meetings with the Auditors appropriate personnel having knowledge of matters relevant to the Audit.  Trustor covenants to comply, at its sole cost and expense, with all recommendation for additional testing and studies to detect the presence of Hazardous Material or Hazardous Material Contamination, or to otherwise confirm and verify Trustor's compliance with the provisions of this Section 12 to the extent required by Beneficiary.

     **12.10**  **Indemnity and Hold Harmless**.  Trustor shall be solely responsible for, and hereby agrees to indemnify and hold Beneficiary (including the respective successors, assigns, employees, agents, officers and directors of Beneficiary) harmless from, any and all actions, loss, liability, damage, cost or expense occasioned by, resulting from, or consequent to any Hazardous Material or Hazardous Material Contamination on the Property; any releases or discharges of Hazardous Material from the Property; any manufacturing, maintaining, holding, handling, transporting, spilling, leaking or dumping of Hazardous Material on or at the Property, any other violation of Hazardous Material Laws; any claim or assertion that any such Hazardous Material or Hazardous Material Contamination is so located on the Property or that any such activities or violations have been, or are being, engaged in on the Property; or any other failure or alleged failure of Trustor, Trustor's Agents, or the Property to comply with the provisions of this Section 12, notwithstanding any and all attempts by Trustor to exercise due diligence in ascertaining whether or not any of the events outlined above effect the Property.  Such loss, liability, damage, cost, or expense hereby indemnified against shall include, without limitation:

(a)    All foreseeable consequential damages;

(b)    The costs of any required or necessary repair, cleanup or detoxification of the Property, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans;

(c)    Damage to any natural resources; and,

(d)    All reasonable costs and expenses incurred by Beneficiary in connection with clauses (a), (b) and (c), including but not limited to reasonable attorneys' and consultants' fees.

All costs and expenses incurred by Beneficiary for which Trustor is responsible, or for which Trustor has indemnified Beneficiary shall be paid by Trustor to Beneficiary within fifteen (15) days of demand therefore. Upon Trustor's failure to make such payment within said fifteen (15) day period, the full amount thereof shall be added to the indebtedness secured by this Deed of Trust and shall accrue interest from the sixteenth (16th) day after demand until paid at the Default Rate; and, at Beneficiary's election, such failure shall constitute a default hereunder.

Beneficiary shall have the right, but not the obligation, to join and participate in (as parties if they so elect), any legal or administrative proceeding or actions initiated in connection with any allegation that Trustor, Trustor's Agents, or the Property violate, or have violated, any provision of this Section 12, and to have their reasonable attorneys' and consultants' fees in connection therewith paid by Trustor upon demand.

The aforesaid indemnification and hold harmless agreement shall benefit Beneficiary from the date hereof and shall not be terminated on the Termination Date, but shall continue thereafter notwithstanding payment, release or discharge of this Deed of Trust or the indebtedness secured hereby; and, without limiting the generality of the foregoing such obligations shall continue for the benefit of Beneficiary, and their successors and assigns, during and following any possession of the Property thereby or any ownership of the Property by Beneficiary or their successors and assigns, whether arising by foreclosure or sale under the power of sale contained herein, transfer by deed in lieu of any such sale, or otherwise; such indemnification and hold harmless agreement to continue forever. In the event that this Deed of Trust or any other Loan Document contains a provision pursuant to which Trustor is relieved of personal liability for such indebtedness, such release of personal liability shall not include a release from Trustor's liabilities and obligations under this Section 12.

**12.11  Trustor's Failure to Comply**. In addition to any other right or remedy contained in this Deed of Trust, or in any other Loan Document, if Trustor shall fail to comply with any term, provision, or requirement of this Section 12, and if such failure to comply shall not be corrected within the lesser of the following time periods (the "Correction Period"):

(a)    Fifteen (15) days after notice thereof from Beneficiary; or

(b)    The time period specified by any governmental or regulatory body for corrective action with respect to such failure to comply; then such failure to comply shall, at Beneficiary's election and without further notice, constitute a default under this Deed of Trust.


Provided, however, if Trustor's failure to comply shall be of such nature that it cannot reasonably be corrected within the Correction Period, and if Trustor shall, within said Correction Period, commence during such failure to comply, and thereafter diligently prosecute such corrective action to completion, and provided the governmental or regulatory body having jurisdiction with respect to such failure shall not object, then Trustor shall have a reasonable additional period beyond said Correction Period in which to cure such failure to comply.

**12.12 Survival**. NOTWITHSTANDING ANY OTHER PROVISION OF THIS DEED OF TRUST, THE NOTE OR ANY LOAN DOCUMENTS, TRUSTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND INDEMNITIES CONTAINED IN THIS SECTION 12 SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING WITHOUT LIMITATION THE PAYOFF OF THE PROMISSORY NOTE SECURED HEREBY, THE RECONVEYANCE OR FORECLOSURE OF THIS DEED OF TRUST, THE ACCEPTANCE BY TRUSTEE OF A DEED IN LIEU OF FORECLOSURE, OR ANY TRANSFER OR ABANDONMENT OF THE PROPERTY.

**13. Grazing Rights**. If any portion of the Property described in this Deed of Trust is used by Trustor as the basis for obtaining grazing permits or other grazing rights issued by any governmental agency, including without limitation the Forest Service, U.S. Department of Agriculture or the Bureau of Land Management, U.S. Department of Interior, Trustor covenants and agrees as follows:

(a) Said grazing permits or other rights are in good standing and have not been modified, reduced or limited in any other respect, except as fully disclosed in writing to Beneficiary;

(b) Trustor will perform all obligations imposed as a requirement of exercise of said grazing permits or other rights and will comply with all laws, rules and regulations applicable thereto;

(c) Trustor will take such timely action as may be required to cause the renewal or reissuance of said grazing permits or other rights from time to time as they expire during the term thereof. Trustor agrees and acknowledges that the failure to renew or cause the reissuance of any said permits for any reason, whether the result of an act or omission of Truster or for reasons beyond Trustor's control, is an event of default hereunder and Beneficiary shall have the right to exercise the rights set forth in this Deed of Trust; and

(d) Trustor agrees to pay all fees, charges, rents or other payments accruing under said permits or any renewals thereof prior to delinquency. In the event Trustor fails to pay any such payment, the amount unpaid shall become a part of the Indebtedness and shall be immediately due and payable.

**14. Water Transfers**. Trustor represents that Trustor is not in the business of transferring water and, therefore, any sale or transfer of any water or water rights is not a transfer of goods in the ordinary course of business. Trustor further agrees that in no event will any water or water rights be goods identified to a contract. Truster hereby acknowledges that the availability of the water and the other Water Assets to the Property was a significant factor in Beneficiary's decision to extend credit to Trustor and any other persons obligated on the

14

 
Indebtedness, and that any severance of water or water rights or any other Water Asset from the Property would materially harm the Property.

**15.** **Financial Information**. At Beneficiary's request, Trustor shall provide to Beneficiary financial Information in a form acceptable to Beneficiary, including, when so required, a current balance sheet and profit and loss statement. In the case of multiple Trustors, financial information must be provided for each Trustor or otherwise as requested by Beneficiary. Financial information shall be provided at such times during the term of this Deed of Trust as Beneficiary may request.

**16.** **Condemnation Awards**. Any award of damages in connection with any taking or condemnation or injury to the Property by reason of public use, or for damages resulting from private trespass or injury to the Property, is absolutely and unconditionally assigned and shall be paid to Beneficiary, under the terms and conditions of this Deed of Trust pertaining to Rents. Upon receipt of such money, Beneficiary may apply the same on the Indebtedness. Trustor agrees to execute such further documents as may be required to effect the assignments herein made as Beneficiary or Trustee may require.

**17.** **Trustee Actions**. At any time, without affecting the liability of any person for the payment of the Indebtedness, and without otherwise affecting the security hereof, Trustee may: (a) consent to or join in the making of any map or plat of the Property; (b) grant any easement or create any restriction thereof; (c) subordinate this Deed of Trust; (d) extend or modify the term of the loan or loans secured hereby; and (e) reconvey without warranty, all or any part of the Property. Trustor agrees to pay reasonable Trustee's fees for any of the foregoing services.

**18.** **Collection of Rents**. Prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant, or agreement of Trustor contained herein, Trustor may, as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, collect and receive the Rents as they come due and payable; the Rents are to be applied by Trustor to the payment of the principal and interest and all other sums due or payable on any promissory note or guaranty secured by this Deed of Trust and to the payment of all other amounts payable under this Deed of Trust and, thereafter, so long as aforesaid has occurred, the balance shall be distributed to the account of Trustor. However, Beneficiary shall have the right before or after the occurrence of any default to notify any account debtor to pay all amounts owing with respect to Rents directly to Beneficiary. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any Indebtedness, and in such order as Beneficiary may determine; also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the Property; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate: also prepare for harvest, remove, and sell any crops that may be growing upon the Property, and apply the proceeds thereof upon the Indebtedness.

15


**19.** **Trustee's Exercise of Remedies is No Cure of Default.** The entering upon and taking possession of the Property, the collection of such Rents, or the proceeds of fire and other insurance policies, or compensation or awards for any taking of or damage to the Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**20.** **Remedies Upon Default.**

      **20.1** **Events of Default.** Any of the following events shall be deemed a "default," an "event of default," or "Event of Default" hereunder, as those terms are used herein and in the other documents evidencing this loan:

      (a) Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, and such failure continues for more than five (5) days from the date payment is due; or

      (b) Trustor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, or shall make any general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

      (c) A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Trustor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the first date of entry thereof; or any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, shall be appointed without the consent or acquiescence of Trustor and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

      (d) A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein and such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed within sixty (60) days after entry or levy; or

      (e) There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in any of the Loan Instruments or any part thereof, not referred to in this Section 20.1.

16


(f)      There has occurred a violation of any condition, covenant or restriction recorded against or affecting the Property.

(g)      There has occurred a sale or transfer of the Property or any other interest in violation of the terms set forth in Section 24 of this Deed of Trust.

(h)      The dissolution of Trustor or any of its partners.

(i)      Any Hazardous Materials become present in or on the Property other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(j)      If at any time there is a discharge, deposit, injection, dumping, spilling, leaking, incineration or placing of any Hazardous Materials into or on the Property, other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(k)      If at any time, the use, generation, treatment, storage or disposal of any Hazardous Materials into or on the Property is in violation of the Superfund and Hazardous Waste Laws.

(l)      If at any time, Trustor or any Guarantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement in favor of Beneficiary or any other creditor or person that may materially affect any of Trustor's property or Trustor's or Guarantor's ability to repay the Note or perform their respective obligations under the Note or any of the loan documents.

**20.2      Acceleration Upon Default, Additional Remedies**.  In the event of default or an event of default under this Deed of Trust, Beneficiary may declare all indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind.  Thereafter Beneficiary may:

(a)      Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and applying the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan

17

 
Instruments or by law upon occurrence of any event of default; including the right to exercise the power of sale;

      (b)    Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants hereof;

      (c)    Exercise any or all of the remedies available to a secured party under the Nevada Uniform Commercial Code, including, but not limited to:

      (i)    Either personally or by means of a court appointed receiver, take possession of all or any of the Personal Property and exclude therefrom Trustor and all others claiming under Trustor, and thereafter hold, store, use, operate, manage, maintain and control, make repairs, replacements, alterations, additions and improvements to and exercise all rights and powers of Trustor in respect to the Personal Property in the exercise of any rights under any of the documents evidencing this loan, Trustor promises and agrees to promptly turn over and deliver complete possession thereof to Beneficiary.

      (ii)    Without notice to or demand upon Trustor, make such payments and do such acts as Beneficiary may deem necessary to protect its security interest in the Personal Property, including without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

      (iii)    Require Trustor to assemble the Personal Property or any portion thereof, at a place designated by Beneficiary and reasonably convenient to both parties, and promptly to deliver such Personal Property to Beneficiary, or an agent or representative designated by it. Beneficiary, and its agents and representatives shall have the right to enter upon any of all of Trustor's premises and property to exercise Beneficiary's rights hereunder;

      (iv)    Sell, lease or otherwise dispose of the Personal Property at public sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as Beneficiary may determine. Beneficiary may be a purchaser at any such sale.

Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof. Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust.

      (d)    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

      **20.3**    **Foreclosure By Power of Sale**. If Beneficiary elects to exercise the power of sale granted to Trustee hereunder, Beneficiary shall cause to be given, upon such

18


election, such notice of default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Property, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Property consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at is option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property so sold, but without any covenants or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.

Except as otherwise required by law, Beneficiary may apply the proceeds of any foreclosure hereunder to payment of the following: (i) the expense of such foreclosure, (ii) the cost of any search or other evidence of title procured in connection therewith, including the premium for any Trustee's Sale Guaranty, and the real property transfer tax on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest at the lesser rate of the maximum interest rate permissible under Nevada law or eighteen percent (18%) per annum, (iv) all other sums secured hereby and (v) the remainder, if any, to the person or persons legally entitled.

Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof. In lieu of paying cash for the Property, Beneficiary may make settlement for the purchase price by crediting the Secured Obligations, or any portion thereof, against the sales price of the Property.

Trustor agrees to pay any deficiency arising from any cause after application of the proceeds of the sale held in accordance with applicable law and the provisions hereof.

Covenants 1, 3, 4 (interest at the Note Rate), 5, 6, 7 (reasonable counsel fees), 8 and 9 of NRS 107.030 are hereby adopted by reference and made a part hereof to the extent not inconsistent with any other provisions contained herein.

In accordance with Section 40.512 of the Nevada Revised Statutes ("NRS"), Beneficiary may waive its lien against the Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of deficiency, including, without limitation, seeking an attachment order under NRS Chapter 31. No such waiver shall be final or binding on Beneficiary unless and until a final money judgment is obtained against Trustor. As between Beneficiary and Trustor, for purpose of NRS 40.505, Trustor shall have the burden or proving that the release or threatened release was not knowingly or negligently caused or contributed to, or knowingly or willfully permitted or acquiesced to by Trustor or any related party (or any

19


affiliate or agent of Trustor or any related party) and that Trustor made written disclosure of the release to Beneficiary or that Beneficiary otherwise obtained actual knowledge thereof Trustor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Deed of Trust. For the purposes of any action brought under this Section, Trustor hereby waives the defense of laches and any applicable statute of limitations.

      **20.4**  **Appointment of Receiver**. If a default or an event of default described in Section 20.1 of this Deed of Trust shall have occurred and be continuing, Beneficiary as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 20.2(a) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

      **20.5**  **Remedies Not Exclusive**. Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Instrument or other agreement or any laws now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Instruments to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

      **20.6**  **Request for Notice**. Trustor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

     **21.**  **Non-Waiver**. The failure on the part of the Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right, and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent defaults. Subsequent acceptance of any payment by the holder hereof shall not be deemed a waiver of any default by Trustor, or of Beneficiary's rights hereunder as the result of any sale, agreement to sell,

20

 
conveyance, or alienation, regardless of holder's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

**22.** **Successors and Assigns**. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of any note secured hereby; or, if the note has been pledged, the pledgee thereof. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**23.** **Substitute Trustee**. Beneficiary may, from time to time or at any time, substitute a Trustee or Trustees to execute the trust hereby created, and when any such substitution has been filed for record in the office of the Recorder of the county in which the Property herein described is situated, it shall be conclusive evidence of the appointment of such Trustee ,or Trustees, and such new Trustee or Trustees shall succeed to all of the powers and duties of the Trustee or Trustees named herein.

**24.** **Due on Sale or Transfer**.

**24.1** In the event the herein-described Property, (including, but not limited to, any existing or subsequently acquired or created Water Asset), or any part thereof, or any interest therein, is transferred or agreed to be transferred, without Beneficiary's prior written consent, all Indebtedness, irrespective of the maturity dates, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. As used herein, "transferred" means sold, conveyed, alienated, exchanged, transferred by gift, further encumbered, pledged, hypothecated, made subject to an option to purchase, or otherwise disposed of, directly or indirectly, or in trust, voluntarily or involuntarily, by Truster or by operation of law or otherwise. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent transfer or subsequent agreement to transfer.

**24.2** If Trustor is an entity other than a natural person (such as a corporation or other organization), then all Indebtedness, irrespective of the maturity date, at the option of Beneficiary, and without demand or notice, shall become immediately due and payable if: (a) a beneficial interest in Truster is transferred; (b) there is a withdrawal or removal of a general partner of a partnership or a manager of a limited liability company; (c) these is a transfer in the aggregate of more than 25% of the voting stock of Trustor if Trustor is a corporation, or there is a transfer in the aggregate of more than 25% of the partnership interests or membership interests if Truster is a partnership, limited liability company or similar entity; or (d) Trustor is dissolved or its existence as a legal entity is terminated.

**25.** **Severability**. In the event any one or more of the provisions contained in this Deed of Trust or in any promissory note, guaranty, or other document secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust or said promissory note or guaranty, but this Deed of Trust and said promissory notes or guaranties shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.




**26.**    **Notices to Trustor**. The undersigned Trustor agrees that he/she is entitled only to those notices required by applicable law and requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth in the initial paragraph of this Deed of Trust.

**27.**    **Exhibits**.   All exhibits to this Deed of Trust are considered to be incorporated into and made a part of this Deed of Trust.

**28.**    **Joint and Several Liability and Legal Entity Warranty and Certification**. If Trustor consists of more than one person, each will be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust. If Trustor is a legal entity, Truster (and any person signing this Deed of Trust in a representative capacity on behalf of Trustor) represents, warrants and certifies that Trustor is duly constituted under applicable laws and in good standing; that Trustor has the power, authority, and appropriate authorization to execute this Deed of Trust and enter into the transactions described herein and that, when executed, this Deed of Trust, and any document executed by Trustor in connection herewith, shall be valid and legally binding on Trustor. If Trustor is a trust, each trustee executing this Deed of Trust on behalf of the trust also represents, warrants and certifies that this Deed of Trust and any document executed in connection herewith is being executed by all the currently acting trustees of the trust and that the trust has not been revoked, modified, or amended in any manner which would cause any of the foregoing to be incorrect.

**29.**    **Non-Merger**.  No merger will occur as a result of Beneficiary acquiring any other estate in or any other lien on the Property, unless Beneficiary consents to a merger in writing.

**30.**    **Miscellaneous**.

**30.1**    **Captions**.  As used herein, the word "including" means "including without limitation" and/or "including but not limited to". The captions used in this Deed of Trust are for convenience only and do not define or limit any terms or provisions. No listing of any specific collateral, items, instances or other matters in any way limits the scope or generality of any language of this Deed of Trust.

**30.2**    **Acceptance by Trustee**.  Trustee accepts this Trust when the Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**30.3**    **Captions**.  The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust.

**30.4**    **Invalidity of Certain Provisions**.  If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partial secured portion of the debt shall be completely paid prior tot he payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust.   If any provision of the Loan Instruments shall be deemed void or

22


unenforceable, it shall not affect the validity of the remaining provisions thereof which shall be considered.

  **30.5** **Subrogation**. To the extent that proceeds of the Note or advances under this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds or advances have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released.

  **30.6** **No Merger**. If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Trust Estate shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates. In addition, upon the foreclosure of the lien created by this Deed of Trust on the Trust Estate pursuant to the provisions hereof, any leases or subleases then existing and created by Trustor shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect. No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice thereof to such tenant or subtenant.

  **30.7** **Waiver**. The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this instrument conferred upon them, or either of them, upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice. Consent by Beneficiary to any transaction or action or Trustor which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiver of the rights to require such consent or approval to future or successive transactions or actions.

  **30.8** **Modifications in Writing**. This Deed of Trust may not be changed, terminated, or modified orally or in any other manner than by an instrument in writing signed by the party against whom enforcement is sought.

  **30.9** **Beneficiary's Right to Enter, Inspect and Cure**. Beneficiary is authorized, by itself, its contractors, agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.


**30.10 <u>Counterparts</u>**. This Deed of Trust may be executed in counterparts, all of which executed counterparts shall together constitute a single document. Signature pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

TRUSTOR:

Double U Livestock, LLC
an Oregon Limited Liability Company

By: _____
    James A. West, member

By: _____
    Carleen J. West, member

By: _____
    Clayton J. West, member

By: _____
    Mary West, member

By: _____
    Wade S. West, member

By: _____
    Molly West, member

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *JAMES A. WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *CARLEEN J. WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *CLAYTON J. WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

25

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 572088

STATE OF NEVADA )
)ss.
COUNTY OF _WHITE PINE_ )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by
_MARY S. WEST_, as _MEMBER_ of
_DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF _WHITE PINE_ )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by
_WADE S. WEST_, as _MEMBER_ of
_DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF _WHITE PINE_ )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by
_MOLLY WEST_, as _MEMBER_ of
_DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-106810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____


# EXHIBIT "A"

## Legal Description

PARCEL 1:

Township 21 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: SE1/4NE1/4
Section 2: S1/2NE1/4; Lot 2
Section 11: NW1/4NW1/4
Section 12: SE1/4SW1/4
Section 13: E1/2NW1/4; W1/2SW1/4
Section 14: N1/2NW1/4; NE1/4SW1/4
Section 21: SW1/4SW1/4
Section 22: NW1/4NW1/4
Section 23: SE1/4SE1/4
Section 26: SW1/4SE1/4
Section 29: SE1/4NE1/4
Section 32: NW1/4SE1/4

Township 22 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 13: SE1/4NW1/4; NW1/4SE1/4

Section 14: W1/2NE1/4; E1/2SE1/4; NW1/4SE1/4
Section 23: E1/2NE1/4
Section 24: SW1/4NW1/4; W1/2SW1/4
Section 25: SE1/4SW1/4; W1/2W1/2
Section 26: NE1/4SE1/4; SW1/4NE1/4
Section 36: E1/2NW1/4; NE1/4SW1/4; SW1/4SW1/4; SW1/4NE1/4; SE1/4

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: Lot 3
Section 2: Lots 1, 2, 3, 5, 6, and 12; SE1/4SE1/4
Section 3: Lot 9; NW1/4SE1/4
Section 5: Lot 6
Section 7: SE1/4SW1/4; S1/2SE1/4
Section 8: SW1/4SW1/4
Section 11: S1/2NE1/4
Section 12: SW1/4NW1/4; N1/2SW1/4
Section 13: SW1/4SW1/4
Section 14: NW1/4NE1/4; SE1/4NE1/4; E1/2SE1/4
Section 17: W1/2NW1/4
Section 18: NE1/4; E1/2NW1/4
Section 24: SE1/4NE1/4
Section 25: W1/2NW1/4
Section 26: N1/2NE1/4

26


Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 21: NW1/4NE1/4
Section 22: N1/2NW1/4; SE1/4NW1/4; NW1/4NE1/4
Section 24 SW1/4SE1/4
Section 25: NW1/4NE1/4
Section 29: SE1/4NE1/4; N1/2SE1/4; SW1/4SE1/4; E1/2SW1/4
Section 32: NE1/4NW1/4; NW1/4NE1/4
Section 36: S1/2SE1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 26 North, Range 62 East, M.D.B.&M. (Elko County)

Section 15: S1/2SW1/4; SW1/4SE1/4
Section 16: SW1/4NW1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203 of Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 27 North, Range 62 East, M.D.B.&M. (Elko County)

Section 1: SW1/4SE1/4; S1/2SW1/4
Section 2: S1/2SE1/4; S1/2SW1/4; NE1/4SW1/4
Section 12: NE1/4NW1/4
Section 28: W1/2SE1/4
Section 33: SE1/4SW1/4

Township 28 North, Range 62 East, M.D.B.&M. (Elko County)

Section 3: S1/2SW1/4
Section 10: NW1/4NW1/4

Township 26 North, Range 63 East, M.D.B.&M.

Section 5: SE1/4SE1/4 (Elko County
Section 28: NE1/4NW1/4 (White Pine County)
Section 31: S1/2SW1/4 (White Pine County)

27


Township 27 North, Range 63 East, M.D.B.&M. (Elko County)

Section 4: SW1/4SE1/4
Section 5: SE1/4NE1/4
Section 7: SW1/4SE1/4
Section 17: SW1/4NW1/4

Township 27 North, Range 67 East, M.D.B.&M.

Section 29: NW1/4SE1/4

Township 26 North, Range 66 East, M.D.B.&M.

Section 12: SW1/4SE1/4

PARCEL 2:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NE1/4SE1/4
Section 22: SE1/4NE1/4; NE1/4NW1/4; E1/2SE1/4
section 23: W1/2SW1/4

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 22: S1/2NE1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

PARCEL 3:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NW1/4SW1/4SE1/4; NE1/4SE1/4SW1/4; SE1/4NE1/4SW1/4

2 8


PARCEL 4;

Township 26 North, Range 62 East, M.D.B.&M.

Section 21: NW1/4; S1/2NE1/4; NE1/4NE1/4 (White Pine County)
Section 22: SW1/4NW1/4 (White Pine County)
Section 33: SW1/4; SE1/4NW1/4; SW1/4NE1/4; W1/2SE1/4; (White Pine County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion
of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma
Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records,
White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko
County, Nevada.

Township 25 North, Range 62 East, M.D.B.&M.

Section 22: NE1/4NE1/4 (White Pine County)
Section 23: SW1/4SE1/4; NE1/4SE1/4; W1/2NW1/4; SE1/4NW1/4; E1/2SW1/4 (White Pine
County)

Township 23 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 5: Lot 4 of NW1/4
Section 6: Lot 2 of NE1/4

Township 24 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 31: N1/2SW1/4

Township 26 North, Range 63 East, M.D.B.&M.

Section 34: W1/2SE1/4 (White Pine County)

PARCEL 5:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 15: SE1/4SW1/4; S1/2SE1/4
Section 22: NW1/4NE1/4

29


PARCEL 6:

Township 26 North, Range 62 East, M.D.B.&M.

Section 16: E1/2SW1/4; S1/2SE1/4; W1/2SW1/4 (Elko County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

PARCEL 7:

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 32: SE1/4NE1/4; E1/2SE1/4
Section 33: SW1/4NW1/4

PARCEL 8:

Township 24 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NE1/4

Township 25 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NW1/4

PARCEL 9:

The Southeast Quarter (SE1/4) of the Southeast Quarter (SE1/4) of Section 3, Township 3 South, Range 57 East, M.D.B.&M. in Lincoln County, Nevada.

APN_____

APN_____

APN___-____

Deed of Trust, Assignment of Rents And Security Agreement

## Title of Document

### Affirmation Statement

__X__ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does not contain** the social security number of any person or persons. (Per NRS 239B.030)

_____ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does contain** the social security number of a person or persons as required by law: _____
        (State specific law)

Judy Vee Vertullo
Signature                          Title
Administrative Assistant & Documentation Manager

_____

Signature

2-27-07
_____

Date

## Grantees address and mail tax statement:

Double U Livestock, LLC
_____

27820 North Cherry Creek Road
_____

Ely, NV  89301
_____

**EXHIBIT 4**

**EXHIBIT 4**

APN OOS-230-001
OOS-230-002
APN OOS-230-003
APN OOS-240-001

**BOOK413PAGE493**
$45.00 FILE 337216
FILED FOR RECORD
AT THE REQUEST OF
FIRST AMERICAN TITLE
2007 APR 27 PM 3:46
RECORDS IN BOOK 413 PAGES 493-524
MARTHA RIVERA SINGELAR
WHITE PINE COUNTY RECORDER

337216

Deed of Trust, Assignment of Rents And Security Agreement

**Title of Document**

**Affirmation Statement**

_X_ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does not contain** the social security number of any person or persons. (Per NRS 239B.030)

_____ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does contain** the social security number of a person or persons as required by law: _____
(State specific law)

Judy Vee Vertullo
Signature                          Title
Administrative Assistant & Documentation Manager

_____

Signature

2-27-07

Date

**Grantees address and mail tax statement:**

Double U Livestock, LLC

27820 North Cherry Creek Road

Ely, NV  89301



RECEIVED
JUN - 8 2007
Tristate Livestock Credit Corp.



RECORDING REQUESTED BY AND
WHEN RECORDED, MAIL TO:

Tri-State Livestock Credit Corporation
2880 Sunrise Blvd., Suite 224
Rancho Cordova, CA  95742

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

# DEED OF TRUST, ASSIGNMENT OF RENTS
# AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT is made as of February 26, 2007, by and among **Double U Livestock, LLC, an Oregon Limited Liability Company, as** ("Trustor"), whose place of business is HC 33, Box 33660, Ely, Nevada, 89301, **Tri-State Livestock Credit Corporation, a California Corporation as** ("Trustee"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742; and **Tri-State Livestock Credit Corporation, a California Corporation** ("Beneficiary"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742.

    **1.**     **Grant in Trust**. Trustor IRREVOCABLY GRANTS, CONVEYS AND ASSIGNS to said Trustee, in trust for the benefit of Beneficiary, with power of sale together with right of entry and possession, the property described below in Sections 1.1 through 1.7 inclusive (collectively, the "Property").

    **1.1**     The real property situated in the County(s) of **White Pine, Elko and Lincoln**, State of Nevada, which are particularly described in Exhibit "A" attached hereto and by this reference incorporated herein (the "Real Property").

    **1.2**     **Buildings, Fixtures, and Other Improvements**. All buildings, structures, equipment, fixtures (including, but not limited to, trees, vines and shrubs) and improvements of every kind and description now or hereafter constructed or placed on the Real Property; all standing timber and timber to be cut located on the Real Property; and all pumping plants, electrical generators, wind machines, and fencing and storage tanks, now or hereafter used in connection with the Property, all of which are hereby declared to be fixtures. Without limiting the generality of the foregoing, a description of some fixtures may also be included with the description of the Real Property set forth above or in an exhibit hereto.

    **1.3**     **Leases and Other Rights**. All existing and future leases, subleases, licenses, permits, agreements, permits and concessions relating to the use or enjoyment of the Real Property, including all grazing rights, leases, permits and licenses; all oil, gas, and mineral

1



leases, permits and rights used with the Real Property; and all tenements, hereditaments, easements, rights-of-way and appurtenances to the Real Property.

        **1.4**    **Water Assets**. All right, title, and interest at any time of Trustor (or any of its bailees, agents, or instrumentalities), whether now existing or hereafter arising or acquired, whether direct or indirect, whether owned legally, of record, equitably or beneficially, whether constituting real or personal property (or subject to any other characterizations), whether created or authorized under existing or future laws or regulations, and however arising in, including without limitation, the water, water rights and other assets and items described below in Sections 1.4(a) through 1.4(i) inclusive, which shall collectively be called "Water Assets". References to "water" and "water rights" are used herein in the broadest and most comprehensive sense of the term(s). The term "water" includes water rights and rights to water or whatever rights to money, proceeds, property or other benefits are exchanged or received for or on account of any Water Assets or any conservation or other nonuse of water, including whatever rights are achieved by depositing one's share of any Water Assets in any water bank or with any water authority, or any other water reallocation rights. Without limiting the generality of the foregoing, a description of some Water Assets may also be included with the description of the Property set forth above or in an exhibit hereto. The Water Assets include, but are not limited to, the following:

        (a)    All water (including any water inventory in storage), water rights and entitlements, other rights to water and other rights to receive water or water rights of every kind or nature whatsoever including: (a) the groundwater on, under, pumped from or otherwise available to the Property, whether as the result of groundwater rights, contractual rights or otherwise; (b) Trustor's right to remove and extract any such groundwater including any permits, rights or licenses granted by any governmental authority or agency or any rights granted or created by any use, easement, covenant, agreement, or contract with any person or entity; (c) any rights to which the Property is entitled with respect to surface water, whether such right is appropriative, riparian, prescriptive, decreed or otherwise and whether or not pursuant to permit or other governmental authorization, or the right to store any such water; (d) any water, water right, water allocation, distribution right, delivery right, water storage right, or other water-related entitlement appurtenant or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any district, agency, or other governmental entity or within the boundaries of any private water company, mutual water company, or other non-governmental entity; (e) all water and existing and future water rights, however evidenced, to the use of water for irrigation, livestock and domestic purposes, including irrigation and watering equipment and systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property, all of which rights are or are hereby made appurtenant to the Property.

        (b)    All stock, interest or rights (including any water allocations, voting or decision rights) in any entity, together with any and all rights from any entity or other person to acquire, receive, exchange, sell, lease, or otherwise transfer any Water Assets, to store, deposit or otherwise create water credits in a water bank or similar or other arrangement for allocating water, to transport or deliver water, or otherwise to deal with any Water Asset.

        (c)    All licenses, permits, approvals, contracts, decrees, rights and interests to acquire or appropriate any Water Assets, water bank or other credits evidencing any right to Water Assets, to store, carry, transport or deliver Water Assets, to sell, lease, exchange,



or otherwise transfer any Water Asset, or to change the point for diversion of water, the location of any Water Asset, the place of use of any Water Asset, or the purpose of the use of any Water Asset.

(d)     All rights, claims, causes of action, judgments, awards, and other judicial, arbiter or administrative relief in any way relating to any Water Asset

(e)     All storage and treatment rights for any Water Asset, whether on or off the Property or other property of Trustor, together with all storage tanks, and other equipment used or usable in connection with such storage and any water bank deposit credits, deposit accounts or other rights arising on account of the storage or nonuse of any Water Asset.

(f)     All rights to transport carry, allocate or otherwise deliver Water Assets by any means wherever located.

(g)     All irrigation and watering equipment, including all pumps, pumping plants, storage tanks, pump motors, electrical generators (all of which are declared to be fixtures) and all systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Real Property.

(h)     All guaranties, warranties, marketing, management or service contracts, indemnity agreements, and water right agreements, other water related contracts and water reallocation rights, all insurance policies regarding or relating to any Water Asset.

(i)     All rents, issues, profits, proceeds and other accounts, instruments, chattel paper, contract rights, general intangibles, deposit accounts, and other rights to payment arising from or on account of any use, nonuse, sale, lease, transfer or other disposition of any Water Asset.

**1.5     Personal Property**. All right, title and interest of Trustor in and to all tangible personal property (the "Personal Property") owned by Trustor and now or at any time hereafter located on or at the Property or used in connection therewith, including, but not limited to:  all goods, machinery, tools, insurance proceeds, equipment (including fire sprinklers and alarm systems, office air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, window or structural cleaning rigs, maintenance, exclusion of vermin or insects, removal of dust, refuse or garbage, and all other equipment of every kind), lobby and all other indoor and outdoor furniture (including tables, chairs, planters, desks, sofas, shelves, lockers and cabinets), wall beds, wall safes, furnishings, appliances (including ice boxes, refrigerators, fans, heaters, stoves, water heaters and incinerators), inventory, rugs, carpets and other floor coverings, draperies and drapery rods and brackets, awnings, window shades, venetian blinds, curtains, lamps, chandeliers and other lighting fixtures and office maintenance and other supplies.

**1.6     Insurance**.   All of Borrower's interest in policies of, and proceeds resulting from, insurance relating to the Property or any of the above Collateral, and any and all riders, amendments, renewals, supplements or extensions hereof, and all proceeds thereof.

3



**1.7** **Additions and Proceeds**. All additions, accretions, substitutions and replacements of any of the Property; all proceeds of the Property, including all proceeds of present and future insurance policies; and all condemnation awards or payments now or later made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any misrepresentation, damage or injury to, or defect in the property.

**2.** **Assignment of Rents**. TRUSTOR ABSOLUTELY AND UNCONDITIONALLY ASSIGNS, transfers, conveys and sets over to Beneficiary all the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use, non-use, enjoyment, sale, transfer or other disposition of all or any portion thereof, including those set forth in Section 1.4(i) above, or from any lease, mineral lease, or agreement pertaining to the Property (collectively the "Rents"); whether now existing or hereafter arising and whether now due, past due or to become due; SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Trustor by Section 18 hereof. This assignment of the Rents shall be perfected automatically without appointment of a receiver or Beneficiary becoming a mortgagee in possession.

**3.** **Obligations Secured**. Trustor makes the grant, conveyance, and assignment of the Property as described above for purposes of securing the following indebtedness and other obligations (collectively, "Indebtedness") in any order of priority that Beneficiary may choose:

(a) payment of the indebtedness and performance of the obligations of Trustor evidenced by the following promissory note(s) (collectively "Note") and/ or the following continuing guaranty(s) (collectively "Guaranty"), and any other documents executed by Trustor in conjunction with the Note or Guaranty:

(i) a Revolving Line of Credit Promissory Note dated as of January 18, 2007, in the stated principal amount of $850,000.00,

(b) the payment of such additional loans or advances, including advances under a revolving line of credit, with interest thereon, as hereafter may be made to or guaranteed by Trustor, or Trustor's successors or assigns, evidenced by a promissory note, guaranty, loan agreement or otherwise; PROVIDED, HOWEVER, that such additional loans or advances will be secured by this Deed of Trust only if the promissory note, guaranty, loan agreement or other document evidencing the obligations of Trustor relative to such loans or advances recites that it is to be secured by this Deed of Trust;

(c) the payment and performance of the obligations set forth in any document evidencing an extension, renewal, modification, replacement, reamortization, conversion, or restatement of any Indebtedness secured by this Deed of Trust, including without limitation renewal and/or substitute notes, guaranties, and loan agreements.

(d) the performance of every obligation and agreement of Trustor whether contained or incorporated by reference in this Deed of Trust, or contained in any loan agreement, loan document or guaranty executed by Trustor in favor of Beneficiary, with respect to any loan or advance secured by this Deed of Trust; and



(e)     the payment of all sums expended or advanced by Beneficiary under or pursuant to the terms of this Deed of Trust, together with interest thereon as herein provided.

The Notes referred to above are payable by Trustor and/or others to the Beneficiary at the times, in the manner and with interest as therein set forth. The Note and other documents evidencing the Indebtedness may contain variable or adjustable interest rate provisions and provisions evidencing revolving lines of credit.

The continuing validity and priority of this Deed of Trust as security for future loans or advances will not be impaired by the fact that at certain times hereafter there may be no outstanding loan or other indebtedness from Trustor to Beneficiary and/or no commitment to make loans or advances.

Notwithstanding the foregoing, this Deed of Trust does not secure any indebtedness or other obligation if the promissory note, guaranty, or any other document evidencing or pertaining to the indebtedness or obligation states that it is unsecured or not secured by real property.

**4.**     **Personal Property Security Agreement**. To the extent that any of the Property, (including without limitation any Water Assets or fixtures), is deemed to constitute, is adjudicated to be, or declared to be personal property, this Deed of Trust shall also be deemed to be a security agreement. Trustor does hereby create and grant to Beneficiary a security interest in all such personal property described herein and this Deed of Trust shall constitute a security agreement pursuant to the Nevada Uniform Commercial Code with respect to all such personal property; and further, grants to Beneficiary all of the rights and remedies of a secured party under the Nevada Uniform Commercial Code and other applicable state law, which rights are cumulative. For the purposes of treating this Deed of Trust as a security agreement, Trustor shall be deemed to be the "Debtor" and Beneficiary the "Secured Party."

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES TO EACH OF THE FOLLOWING:**

**5.**     **Use of Proceeds; Payment of Secured Obligations**. To use loan proceeds solely for the purposes set forth in the loan application(s) or as otherwise required by Beneficiary, and to pay when due the principal of, and the interest on, the Indebtedness evidenced by the Note and/or Guaranty, charges, fees, and all other sums as provided in any of the documents evidencing the Indebtedness secured hereby, together with any future advances secured by this Deed of Trust.

**6.**     **Condition of Property**. To keep the Property in good condition, working order and repair; to care for the Property in accordance with standards of good husbandry and to keep all trees, vines and crops on said land properly cultivated, irrigated, fertilized, sprayed, and fumigated; not to sell, transfer, assign, encumber or convey any water or water right from the Property, or to enter into an agreement for the nonuse of water, without the prior written consent of Beneficiary; not to remove, destroy or suffer the removal or destruction of any building, fence, canal, well or other improvements or fixtures thereon; not to remove, replace or alter any horticultural or viticultural tree, vine or shrub planted thereon without the prior written consent of



Beneficiary, except in the ordinary course of business; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting the Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general; to observe and perform all obligations of Trustor under any lease of the Property.

       7.    **Insurance**. To provide, maintain and deliver to Beneficiary, fire, extended coverage, flood, comprehensive public liability, and all other types of insurance, in terms and amounts as may be required by law or Beneficiary, with loss payable endorsements (including lender loss payable endorsements) solely in favor of Beneficiary. In the event of loss, the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to reduce the Indebtedness or restore or repair the property damaged. Failure to obtain, maintain or deliver to Beneficiary the insurance required shall constitute an event of default under this Deed of Trust.

       At least thirty (30) days prior to the expiration of any such policy of insurance, Trustor will deliver a policy renewing or extending such expiring insurance and written evidence demonstrating payment of the premium for such insurance. If any such policy and evidence of payment (or copies of same, if originals cannot be delivered to Beneficiary) are not so delivered to Beneficiary, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, Beneficiary may (but is not obligated to), at Trustor's expense, obtain insurance in such types, on such terms and in such amounts as Beneficiary in its sole discretion shall decide, through or from any insurance agency or company acceptable to it. Any insurance obtained by Beneficiary shall be for its sole benefit and to protect the security of this Deed of Trust. The expense and cost of such insurance shall, at Beneficiary's sole option, be payable on demand or added to the Indebtedness as provided herein. Neither Trustee nor Beneficiary shall be chargeable with or responsible for the procurement or maintenance of any such insurance, the collection of any proceeds from such insurance, or the insolvency of any insurance company or underwriter.

       8.    **Defense of Title**. To appear in and litigate any action or proceeding purporting to affect the security hereof, the title to the Property, or the rights or powers of Beneficiary or Trustee. Beneficiary or Trustee may appear in and litigate any such action or proceedings, including any bankruptcy, partition or condemnation proceeding, affecting the Property, or Beneficiary's interest therein, in which event Trustor agrees to pay all costs and expenses thereof, including attorney's fees and costs of securing evidence of title.

       9.    **Taxes, Liens and Assessments**. To pay, at least ten (10) days prior to delinquency, all taxes and assessments affecting the Property, including all assessments upon water company stock, or other Water Assets, and all rents, assessments and charges for water appurtenant to or used in connection with the Property; to pay when due all encumbrances, charges, and liens on the Property, or any part thereof, which at any time create, may create or appear to create a lien upon the Property. If requested by Beneficiary, Trustor shall cause to be furnished to Beneficiary a tax reporting service covering the Property of the type, duration and with a company satisfactory to Beneficiary.



**10. Fees and Costs**. In the event that Beneficiary or Trustee uses the services of attorneys, accountants, appraisers, consultants, or other professional or outside assistance, including the services of in-house counsel or any other attorney or professional who is an employee of Lender, the reasonable amount of fees, costs and expenses ("Expenses") incurred by Beneficiary or Trustee to use such persons in connection with any of the following shall be payable by Trustor on demand. Beneficiary or Trustee may, at its option, add the amount of such Expenses to any portion of the Indebtedness plus an appropriate amount of Beneficiary's stock or participation certificates required in connection with the loan (as required by federal law or regulation or Beneficiary's bylaws), and charge interest on such amount at the interest rate applicable to such portion of the Indebtedness. The Expenses include, but are not limited to, the fees, costs, and expenses arising from the following:

(a) The preparation, modification or enforcement of this Deed of Trust, and any other agreement or document incident to the Indebtedness or to the Property;

(b) Any litigation, dispute, proceeding, or action (whether or not dismissed, reduced to judgment, or otherwise resolved), and whether instituted by Beneficiary, Trustee or Trustor or any other person, relating to the Indebtedness, the Property or Trustor's affairs;

(c) The furtherance of Beneficiary's or Trustee's interest in any bankruptcy, insolvency, or reorganization case or proceeding instituted by or against Trustor, including any steps to (1) modify or terminate the automatic stay, (ii) prohibit or condition Trustor's use of cash collateral, (iii) object to any disclosure statement or plan, (iv) propose or confirm a plan, and (v) prosecute or defend adversary proceedings or contested matters, and take or defend examinations or discovery, whether or not related to any adversary proceeding or contested matter and whether or not dismissed, reduced to judgment, or otherwise resolved;

(d) The inspection, verification, protection, collection, processing, sale, liquidation, or disposition of the Property; and

(e) Any of the type of Expenses referred to in (a) through (e) above incurred by Beneficiary or Trustee in connection with any guaranty of the Indebtedness.

The Expenses described herein and elsewhere in this Deed of Trust shall be in addition to those set forth in any Security Instrument or any other written agreement between Beneficiary and Trustor.

**11. Beneficiary May Act for Trustor**. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Truster and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the Property, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and litigate any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee, including any bankruptcy proceeding affecting the Property; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; pay such fees, charges, rents or other payments accruing under the grazing permits

7



described in Section 14 below; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefore, including attorney's, accountant's, and appraisal fees, environmental fees and costs of securing evidence of title, and all amounts so expended shall be obligations of Truster secured by this Deed of Trust. Nothing contained herein shall prohibit Beneficiary from entering the Property, at a reasonable time and upon reasonable notice to Trustee, without incurring or assuming any obligations or liabilities whatsoever, for the sole purpose of inspecting the Property.

## 12. <u>Environmental Compliance Matters</u>.

12.1    <u>Definitions</u>.  For the purposes of this Section 12, the following terms shall be defined as follows:

(a)    "Hazardous Material" means any radioactive, hazardous, or toxic substance, material, waste or similar term, the presence of which on the Property, or the discharge or emission of which from the Property, is prohibited by Governmental Requirements (hereafter defined) or which require special handling in collection, storage, treatment, or disposal by any Governmental Requirements.  The term "Hazardous Material" includes, but is not limited to, any material, substance, waste or similar term which is:

(i)    Defined as a hazardous material under the laws of the State of Nevada, as amended from time to time;

(ii)    Defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. Section 1317) as amended from time to time;

(iii)    Defined as a hazardous waste under Section 1004 of the Federal Resource Conservation and Recovery Act (42 U.S.C. Section 6901 et seq.), as amended from time to time;

(iv)    Defined as a hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601 et seq.), as amended from time to time;

(v)    Defined as a radioactive, hazardous, or toxic substance, waste, material or similar term in any rules and regulations, as amended from time to time, which are adopted by any administrative agency; including, but not limited to the Environmental Protection Agency, the Occupational Safety and Health Administration, and any such similar state or local agency having jurisdiction over the Property, whether or not such rules and regulations have the force of law;

(vi)    Determined   to   contain   asbestos   or   polychlorinated biphenyls;

(vii)    Defined as a radioactive, hazardous, or toxic waste, substance, material or similar term in any other statute, regulation, rule or law presently in effect, or enacted or adopted at any time after the date of this Deed of Trust, by local authorities, the State of Nevada, and/or the federal government; or

8



(viii)    Subject to regulation under the Toxic Substances Control Act (TSCA) 15 U.S.C., Section 2061 et seq.

(b)    "Governmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, orders, and decrees of the United States, the State of Nevada, and all local or governmental or regulatory authorities exercising jurisdiction over Trustor or the Property.

(c)    The "Termination Date" shall be the date on which the Indebtedness secured by this Deed of Trust shall be paid and satisfied in full; except that if the Indebtedness secured by this Deed of Trust shall be paid and satisfied by foreclosure, sale under the power of sale herein contained, deed in lieu of foreclosure or sale by power of sale, or by any other means by which title to the Property, or any part thereof, becomes vested in the Beneficiary under this Deed of Trust, Beneficiary, or any transferee, assignee, subsidiary, or other successor in interest to Beneficiary, then the Termination Date shall be the later of (i) the date on which this Deed of Trust is paid and satisfied in full, or (ii) the date on which Trustor and Trustor's employees, agents, and officers have fully and finally relinquished, surrendered, and delivered up the ownership, use, occupancy, and possession of all portions of the Property.

(d)    "Hazardous Material Contamination" shall mean the contamination (whether presently existing or hereafter occurring) of the Property, or the contamination of the buildings, facilities, soil, ground water, air or other elements on, or of, any other property as a result of Hazardous Material at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

**12.2    No Hazardous Material.**  To the best of Trustor's knowledge, Trustor warrants and represents that, as of the date hereof, there is no Hazardous Material on or in the Property, or being released or discharged therefrom (the term "Property" expressly including for the purposes of this Section 12.2, all buildings and other improvements located thereon, all Personal Property, the soil and the ground water thereof, including the streams crossing or abutting the Property and the aquifer underlying the Property), whether such Hazardous Material be located or placed on or within the Property by spill, release, discharge, disposal, storage, or otherwise.

To the best of Trustor's knowledge after due and diligent inquiry that except for Hazardous Materials used in the normal and ordinary operation of the Property and consistent with all applicable local, state and federal statutes and regulations: (i) no part of the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material, nor is any part of the Property affected by any Hazardous Material Contamination; (ii) no property adjoining the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material; and (iii) no property adjoining the Property is affected by Hazardous Material Contamination.

Trustor covenants and agrees that from the date hereof through the Termination Date, Trustor and Trustor's agents, contractors, authorized representatives and employees (collectively "Trustor's Agents") shall not engage in any of the following prohibited activities, and

9



Trustor shall use its best and diligent efforts to see that Trustor's invitees and tenants, and such tenants' employees, agents, and invitees shall not:

      (a)    Cause or permit any releases or discharges of Hazardous Material from the Property; or

      (b)    Cause or permit any manufacturing, holding, handling, retaining, transporting, spilling, leaking, or dumping of Hazardous Material in or on any portion of the Property; or,

      (c)    Otherwise place, keep, or maintain, or allow to be placed, kept, or maintained, any Hazardous Material on any portion of the Property.

**12.3**   **Compliance With Law**.  From the date hereof through the Termination Date, Trustor shall comply, and cause Trustor's Agents and the Property to comply, with all laws, ordinances, rules, and regulations of all authorities having jurisdiction over the Trustor, Trustor's Agents, the Property, or the use of the Property, and pertaining to any Hazardous Material (herein called "Hazardous Material Laws").

**12.4**   **Removal of Hazardous Material and Freedom From Liens**.  If Hazardous Material is discovered on the Property, Trustor shall pay immediately when due the cost of removal of any Hazardous Material from the Property in compliance with all Governmental Requirements, and keep the entire Property free of any lien imposed pursuant to any laws, regulations, or orders of any governmental or regulatory authority having to do with the removal of Hazardous Material

Within thirty (30) days after demand by Beneficiary, Trustor shall obtain and deliver to Beneficiary a bond, letter of credit, or similar financial assurance for the benefit of Beneficiary evidencing, to Beneficiary's satisfaction, that the necessary funds are available to pay the cost of removing, treating, and disposing of all Hazardous Material or Hazardous Material Contamination on the Property and discharging any assessments or liens which may be established on the Property as a result thereof.

**12.5**   **Hazardous Material Reports**.  To the best of Trustor's knowledge, no report, analysis, study, or other document asserting that Hazardous Material Contamination exists on the Property or identifying any Hazardous Material as being located upon or released or discharged from the Property has been issued. Trustor shall:

      (a)    Give notice to Beneficiary immediately upon Trustor's acquiring knowledge of the presence of any Hazardous Material on the Property or of any Hazardous Material Contamination thereon, with a full description thereof;

      (b)    Immediately advise Beneficiary in writing of any notice received by Trustor or Trustor's Agents alleging that the Property contains Hazardous Material or Hazardous Material Contamination or that a violation or potential violation of any Hazardous Material Laws by Trustor, Trustor's Agents, or the Property exists (whether such notices are received from the Environmental Protection Agency, the Occupational Safety and Health Agency, or any other federal, state or local governmental agency or regional office thereof);



        (c)      Immediately advise Beneficiary in writing of any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened with respect to the Property or any property adjoining the Property pursuant to any Hazardous Material Laws;

        (d)      Immediately advise Beneficiary in writing of all claims made or threatened by any third party against Trustor, Trustor's Agents, or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Material or Hazardous Material Contamination pertaining to the Property; and

        (e)      Immediately advise Beneficiary in writing upon Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property which does, or could, cause the Property, or any part thereof, to contain Hazardous Material or Hazardous Material Contamination or otherwise be in violation of any Hazardous Material Laws, or cause the Property to be subject to any restrictions on the ownership, occupancy, transferability or use thereof under any Hazardous Material Laws.

        **12.6**    **Other Property of Trustor**. Trustor covenants, warrants, and represents that there is no property owned or used by Trustor which contains Hazardous Material or Hazardous Material Contamination, emits or discharges Hazardous Material, or otherwise violates any Hazardous Material laws, such that a charge or lien as a result thereof could be placed upon the Property, or any liability therefor could be imposed upon Trustor.

        **12.7**    **Remedial Action, Beneficiary's Consent**. Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Material or Hazardous Material Contamination upon or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any violation or alleged violation of any Hazardous Material Laws, which remedial action, settlement, consent or compromise might, in Beneficiary's judgment, impair the value of Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Material or Hazardous Material Contamination on or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action. In such event, Trustor shall notify Beneficiary as soon as practicable of any action so taken. Beneficiary shall not withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

        **12.8**    **Beneficiary's Corrective Action**. In addition to the other remedies provided to Beneficiary elsewhere in the Loan Documents, Beneficiary shall have the right, but not the obligation to cause all Hazardous Material or Hazardous Material Contamination found on or in the Property to be removed therefrom, and in such event, the cost of the removal, including all expenses, charges, and fees incurred by Beneficiary in connection therewith, including attorneys, engineers, and consultants fees, shall be secured by this Deed of Trust,



shall be payable by Trustor on demand and shall bear interest at the Default Rate provided in the Note from the date advanced until paid. Trustor shall give to Beneficiary and its agents and employees access to the Property for such purposes; and Trustor hereby grants to Beneficiary, its agents and employees, full right and authority to remove any such Hazardous Material or Hazardous Material Contamination from the Property.

        **12.9    Environmental Audit**. Beneficiary, at any time and from time to time during the term of the Loan, if it has reasonable cause to suspect that any provision of this Section 12 is not being complied with, may notify Trustor in writing that it desires a site assessment or environmental audit (such assessment or audit being herein called the "Audit") of the Property to be made, and at any time thereafter cause such site assessment or environmental audit to be made of the Property at Trustor's sole expense. Such Audit(s) shall be performed in a manner reasonably calculated to confirm and verify compliance with the provisions of this Section 12. Such results shall be kept confidential by both Trustor and Beneficiary unless either party is legally compelled or required to disclose such results, or disclosure is reasonably required in order to pursue rights or remedies provided herein or at law.

        If Trustor fails to pay for the Audit as provided for herein within fifteen (15) days of receipt of billing therefor, Beneficiary may, at its election, declare a default hereunder, and, with or without declaring such default, add the cost thereof to the indebtedness secured by this Deed of Trust, in which case interest shall accrue at the Default Rate on such amount from the 16th day after billing until paid by Trustor.

        Trustor covenants to reasonably cooperate with the persons conducting the Audit (the "Auditors") to allow entry and reasonable access to all portions of the Property for the purpose of the Audit, to supply the Auditors with all available historical and operational information regarding the Property as may reasonably be requested by the Auditors, and to make available for meetings with the Auditors appropriate personnel having knowledge of matters relevant to the Audit. Trustor covenants to comply, at its sole cost and expense, with all recommendation for additional testing and studies to detect the presence of Hazardous Material or Hazardous Material Contamination, or to otherwise confirm and verify Trustor's compliance with the provisions of this Section 12 to the extent required by Beneficiary.

        **12.10  Indemnity and Hold Harmless**. Trustor shall be solely responsible for, and hereby agrees to indemnify and hold Beneficiary (including the respective successors, assigns, employees, agents, officers and directors of Beneficiary) harmless from, any and all actions, loss, liability, damage, cost or expense occasioned by, resulting from, or consequent to any Hazardous Material or Hazardous Material Contamination on the Property; any releases or discharges of Hazardous Material from the Property; any manufacturing, maintaining, holding, handling, transporting, spilling, leaking or dumping of Hazardous Material on or at the Property, any other violation of Hazardous Material Laws; any claim or assertion that any such Hazardous Material or Hazardous Material Contamination is so located on the Property or that any such activities or violations have been, or are being, engaged in on the Property; or any other failure or alleged failure of Trustor, Trustor's Agents, or the Property to comply with the provisions of this Section 12, notwithstanding any and all attempts by Trustor to exercise due diligence in ascertaining whether or not any of the events outlined above effect the Property. Such loss, liability, damage, cost, or expense hereby indemnified against shall include, without limitation:



(a)     All foreseeable consequential damages;

(b)     The costs of any required or necessary repair, cleanup or detoxification of the Property, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans;

(c)     Damage to any natural resources; and,

(d)     All reasonable costs and expenses incurred by Beneficiary in connection with clauses (a), (b) and (c), including but not limited to reasonable attorneys' and consultants' fees.

All costs and expenses incurred by Beneficiary for which Trustor is responsible, or for which Trustor has indemnified Beneficiary shall be paid by Trustor to Beneficiary within fifteen (15) days of demand therefore. Upon Trustor's failure to make such payment within said fifteen (15) day period, the full amount thereof shall be added to the indebtedness secured by this Deed of Trust and shall accrue interest from the sixteenth (16th) day after demand until paid at the Default Rate; and, at Beneficiary's election, such failure shall constitute a default hereunder.

Beneficiary shall have the right, but not the obligation, to join and participate in (as parties if they so elect), any legal or administrative proceeding or actions initiated in connection with any allegation that Trustor, Trustor's Agents, or the Property violate, or have violated, any provision of this Section 12, and to have their reasonable attorneys' and consultants' fees in connection therewith paid by Trustor upon demand.

The aforesaid indemnification and hold harmless agreement shall benefit Beneficiary from the date hereof and shall not be terminated on the Termination Date, but shall continue thereafter notwithstanding payment, release or discharge of this Deed of Trust or the indebtedness secured hereby; and, without limiting the generality of the foregoing such obligations shall continue for the benefit of Beneficiary, and their successors and assigns, during and following any possession of the Property thereby or any ownership of the Property by Beneficiary or their successors and assigns, whether arising by foreclosure or sale under the power of sale contained herein, transfer by deed in lieu of any such sale, or otherwise; such indemnification and hold harmless agreement to continue forever. In the event that this Deed of Trust or any other Loan Document contains a provision pursuant to which Trustor is relieved of personal liability for such indebtedness, such release of personal liability shall not include a release from Trustor's liabilities and obligations under this Section 12.

**12.11  Trustor's Failure to Comply**. In addition to any other right or remedy contained in this Deed of Trust, or in any other Loan Document, if Trustor shall fail to comply with any term, provision, or requirement of this Section 12, and if such failure to comply shall not be corrected within the lesser of the following time periods (the "Correction Period"):

(a)     Fifteen (15) days after notice thereof from Beneficiary; or

(b)     The time period specified by any governmental or regulatory body for corrective action with respect to such failure to comply; then such failure to comply shall, at Beneficiary's election and without further notice, constitute a default under this Deed of Trust.



Provided, however, if Trustor's failure to comply shall be of such nature that it cannot reasonably be corrected within the Correction Period, and if Trustor shall, within said Correction Period, commence during such failure to comply, and thereafter diligently prosecute such corrective action to completion, and provided the governmental or regulatory body having jurisdiction with respect to such failure shall not object, then Trustor shall have a reasonable additional period beyond said Correction Period in which to cure such failure to comply.

**12.12 Survival**. NOTWITHSTANDING ANY OTHER PROVISION OF THIS DEED OF TRUST, THE NOTE OR ANY LOAN DOCUMENTS, TRUSTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND INDEMNITIES CONTAINED IN THIS SECTION 12 SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING WITHOUT LIMITATION THE PAYOFF OF THE PROMISSORY NOTE SECURED HEREBY, THE RECONVEYANCE OR FORECLOSURE OF THIS DEED OF TRUST, THE ACCEPTANCE BY TRUSTEE OF A DEED IN LIEU OF FORECLOSURE, OR ANY TRANSFER OR ABANDONMENT OF THE PROPERTY.

**13.** **Grazing Rights**. If any portion of the Property described in this Deed of Trust is used by Trustor as the basis for obtaining grazing permits or other grazing rights issued by any governmental agency, including without limitation the Forest Service, U.S. Department of Agriculture or the Bureau of Land Management, U.S. Department of Interior, Trustor covenants and agrees as follows:

(a)    Said grazing permits or other rights are in good standing and have not been modified, reduced or limited in any other respect, except as fully disclosed in writing to Beneficiary;

(b)    Trustor will perform all obligations imposed as a requirement of exercise of said grazing permits or other rights and will comply with all laws, rules and regulations applicable thereto;

(c)    Trustor will take such timely action as may be required to cause the renewal or reissuance of said grazing permits or other rights from time to time as they expire during the term thereof.  Trustor agrees and acknowledges that the failure to renew or cause the reissuance of any said permits for any reason, whether the result of an act or omission of Trustor or for reasons beyond Trustor's control, is an event of default hereunder and Beneficiary shall have the right to exercise the rights set forth in this Deed of Trust; and

(d)    Trustor agrees to pay all fees, charges, rents or other payments accruing under said permits or any renewals thereof prior to delinquency. In the event Trustor fails to pay any such payment, the amount unpaid shall become a part of the Indebtedness and shall be immediately due and payable.

**14.** **Water Transfers**. Trustor represents that Trustor is not in the business of transferring water and, therefore, any sale or transfer of any water or water rights is not a transfer of goods in the ordinary course of business. Trustor further agrees that in no event will any water or water rights be goods identified to a contract. Trustor hereby acknowledges that the availability of the water and the other Water Assets to the Property was a significant factor in Beneficiary's decision to extend credit to Trustor and any other persons obligated on the

14



Indebtedness, and that any severance of water or water rights or any other Water Asset from the Property would materially harm the Property.

**15. Financial Information**. At Beneficiary's request, Trustor shall provide to Beneficiary financial information in a form acceptable to Beneficiary, including, when so required, a current balance sheet and profit and loss statement. In the case of multiple Trustors, financial information must be provided for each Trustor or otherwise as requested by Beneficiary. Financial information shall be provided at such times during the term of this Deed of Trust as Beneficiary may request.

**16. Condemnation Awards**. Any award of damages in connection with any taking or condemnation or injury to the Property by reason of public use, or for damages resulting from private trespass or injury to the Property, is absolutely and unconditionally assigned and shall be paid to Beneficiary, under the terms and conditions of this Deed of Trust pertaining to Rents. Upon receipt of such money, Beneficiary may apply the same on the Indebtedness. Trustor agrees to execute such further documents as may be required to effect the assignments herein made as Beneficiary or Trustee may require.

**17. Trustee Actions**. At any time, without affecting the liability of any person for the payment of the Indebtedness, and without otherwise affecting the security hereof, Trustee may: (a) consent to or join in the making of any map or plat of the Property; (b) grant any easement or create any restriction thereof; (c) subordinate this Deed of Trust; (d) extend or modify the term of the loan or loans secured hereby; and (e) reconvey without warranty, all or any part of the Property. Trustor agrees to pay reasonable Trustee's fees for any of the foregoing services.

**18. Collection of Rents**. Prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant, or agreement of Trustor contained herein, Trustor may, as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, collect and receive the Rents as they come due and payable; the Rents are to be applied by Trustor to the payment of the principal and interest and all other sums due or payable on any promissory note or guaranty secured by this Deed of Trust and to the payment of all other amounts payable under this Deed of Trust and, thereafter, so long as aforesaid has occurred, the balance shall be distributed to the account of Trustor. However, Beneficiary shall have the right before or after the occurrence of any default to notify any account debtor to pay all amounts owing with respect to Rents directly to Beneficiary. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any Indebtedness, and in such order as Beneficiary may determine; also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the Property; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate: also prepare for harvest, remove, and sell any crops that may be growing upon the Property, and apply the proceeds thereof upon the Indebtedness.



**19.** **Trustee's Exercise of Remedies is No Cure of Default**. The entering upon and taking possession of the Property, the collection of such Rents, or the proceeds of fire and other insurance policies, or compensation or awards for any taking of or damage to the Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**20.** **Remedies Upon Default**.

   **20.1** **Events of Default**. Any of the following events shall be deemed a "default," an "event of default," or "Event of Default" hereunder, as those terms are used herein and in the other documents evidencing this loan:

   (a) Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, and such failure continues for more than five (5) days from the date payment is due; or

   (b) Trustor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, or shall make any general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

   (c) A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Trustor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the first date of entry thereof; or any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, shall be appointed without the consent or acquiescence of Trustor and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

   (d) A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein and such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed within sixty (60) days after entry or levy; or

   (e) There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in any of the Loan Instruments or any part thereof, not referred to in this Section 20.1.

16

(f)     There has occurred a violation of any condition, covenant or restriction recorded against or affecting the Property.

(g)     There has occurred a sale or transfer of the Property or any other interest in violation of the terms set forth in Section 24 of this Deed of Trust.

(h)     The dissolution of Trustor or any of its partners.

(i)     Any Hazardous Materials become present in or on the Property other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(j)     If at any time there is a discharge, deposit, injection, dumping, spilling, leaking, incineration or placing of any Hazardous Materials into or on the Property, other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(k)     If at any time, the use, generation, treatment, storage or disposal of any Hazardous Materials into or on the Property is in violation of the Superfund and Hazardous Waste Laws.

(l)     If at any time, Trustor or any Guarantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement in favor of Beneficiary or any other creditor or person that may materially affect any of Trustor's property or Trustor's or Guarantor's ability to repay the Note or perform their respective obligations under the Note or any of the loan documents.

**20.2     Acceleration Upon Default, Additional Remedies**.   In the event of default or an event of default under this Deed of Trust, Beneficiary may declare all indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind.  Thereafter Beneficiary may:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and applying the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan



Instruments or by law upon occurrence of any event of default; including the right to exercise the power of sale;

  (b) Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants hereof;

  (c) Exercise any or all of the remedies available to a secured party under the Nevada Uniform Commercial Code, including, but not limited to:

  (i) Either personally or by means of a court appointed receiver, take possession of all or any of the Personal Property and exclude therefrom Trustor and all others claiming under Trustor, and thereafter hold, store, use, operate, manage, maintain and control, make repairs, replacements, alterations, additions and improvements to and exercise all rights and powers of Trustor in respect to the Personal Property in the exercise of any rights under any of the documents evidencing this loan, Trustor promises and agrees to promptly turn over and deliver complete possession thereof to Beneficiary.

  (ii) Without notice to or demand upon Trustor, make such payments and do such acts as Beneficiary may deem necessary to protect its security interest in the Personal Property, including without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

  (iii) Require Trustor to assemble the Personal Property or any portion thereof, at a place designated by Beneficiary and reasonably convenient to both parties, and promptly to deliver such Personal Property to Beneficiary, or an agent or representative designated by it. Beneficiary, and its agents and representatives shall have the right to enter upon any of all of Trustor's premises and property to exercise Beneficiary's rights hereunder;

  (iv) Sell, lease or otherwise dispose of the Personal Property at public sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as Beneficiary may determine. Beneficiary may be a purchaser at any such sale.

  Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof. Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust.

  (d) Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

  **20.3** **Foreclosure By Power of Sale**. If Beneficiary elects to exercise the power of sale granted to Trustee hereunder, Beneficiary shall cause to be given, upon such


election, such notice of default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Property, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Property consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at is option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property so sold, but without any covenants or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.

Except as otherwise required by law, Beneficiary may apply the proceeds of any foreclosure hereunder to payment of the following: (i) the expense of such foreclosure, (ii) the cost of any search or other evidence of title procured in connection therewith, including the premium for any Trustee's Sale Guaranty, and the real property transfer tax on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest at the lesser rate of the maximum interest rate permissible under Nevada law or eighteen percent (18%) per annum, (iv) all other sums secured hereby and (v) the remainder, if any, to the person or persons legally entitled.

Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof. In lieu of paying cash for the Property, Beneficiary may make settlement for the purchase price by crediting the Secured Obligations, or any portion thereof, against the sales price of the Property.

Trustor agrees to pay any deficiency arising from any cause after application of the proceeds of the sale held in accordance with applicable law and the provisions hereof.

Covenants 1, 3, 4 (interest at the Note Rate), 5, 6, 7 (reasonable counsel fees), 8 and 9 of NRS 107.030 are hereby adopted by reference and made a part hereof to the extent not inconsistent with any other provisions contained herein.

In accordance with Section 40.512 of the Nevada Revised Statutes ("NRS"), Beneficiary may waive its lien against the Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of deficiency, including, without limitation, seeking an attachment order under NRS Chapter 31. No such waiver shall be final or binding on Beneficiary unless and until a final money judgment is obtained against Trustor. As between Beneficiary and Trustor, for purpose of NRS 40.505, Trustor shall have the burden or proving that the release or threatened release was not knowingly or negligently caused or contributed to, or knowingly or willfully permitted or acquiesced to by Trustor or any related party (or any

19



affiliate or agent of Trustor or any related party) and that Trustor made written disclosure of the release to Beneficiary or that Beneficiary otherwise obtained actual knowledge thereof Trustor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Deed of Trust. For the purposes of any action brought under this Section, Trustor hereby waives the defense of laches and any applicable statute of limitations.

**20.4    Appointment of Receiver**. If a default or an event of default described in Section 20.1 of this Deed of Trust shall have occurred and be continuing, Beneficiary as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 20.2(a) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

**20.5    Remedies Not Exclusive**. Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Instrument or other agreement or any laws now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Instruments to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

**20.6    Request for Notice**. Trustor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

**21.    Non-Waiver**. The failure on the part of the Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right, and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent defaults. Subsequent acceptance of any payment by the holder hereof shall not be deemed a waiver of any default by Trustor, or of Beneficiary's rights hereunder as the result of any sale, agreement to sell,



conveyance, or alienation, regardless of holder's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

**22.** **Successors and Assigns**. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of any note secured hereby; or, if the note has been pledged, the pledgee thereof. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**23.** **Substitute Trustee**. Beneficiary may, from time to time or at any time, substitute a Trustee or Trustees to execute the trust hereby created, and when any such substitution has been filed for record in the office of the Recorder of the county in which the Property herein described is situated, it shall be conclusive evidence of the appointment of such Trustee ,or Trustees, and such new Trustee or Trustees shall succeed to all of the powers and duties of the Trustee or Trustees named herein.

**24.** **Due on Sale or Transfer**.

**24.1**  In the event the herein-described Property, (including, but not limited to, any existing or subsequently acquired or created Water Asset), or any part thereof, or any interest therein, is transferred or agreed to be transferred, without Beneficiary's prior written consent, all Indebtedness, irrespective of the maturity dates, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. As used herein, "transferred" means sold, conveyed, alienated, exchanged, transferred by gift, further encumbered, pledged, hypothecated, made subject to an option to purchase, or otherwise disposed of, directly or indirectly, or in trust, voluntarily or involuntarily, by Truster or by operation of law or otherwise. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent transfer or subsequent agreement to transfer.

**24.2**  If Trustor is an entity other than a natural person (such as a corporation or other organization), then all Indebtedness, irrespective of the maturity date, at the option of Beneficiary, and without demand or notice, shall become immediately due and payable if: (a) a beneficial interest in Truster is transferred; (b) there is a withdrawal or removal of a general partner of a partnership or a manager of a limited liability company; (c) these is a transfer in the aggregate of more than 25% of the voting stock of Trustor if Trustor is a corporation, or there is a transfer in the aggregate of more than 25% of the partnership interests or membership interests if Truster is a partnership, limited liability company or similar entity; or (d) Trustor is dissolved or its existence as a legal entity is terminated.

**25.** **Severability**. In the event any one or more of the provisions contained in this Deed of Trust or in any promissory note, guaranty, or other document secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust or said promissory note or guaranty, but this Deed of Trust and said promissory notes or guaranties shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.



**26.** **Notices to Trustor**. The undersigned Trustor agrees that he/she is entitled only to those notices required by applicable law and requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth in the initial paragraph of this Deed of Trust.

**27.** **Exhibits**. All exhibits to this Deed of Trust are considered to be incorporated into and made a part of this Deed of Trust.

**28.** **Joint and Several Liability and Legal Entity Warranty and Certification**. If Trustor consists of more than one person, each will be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust. If Trustor is a legal entity, Truster (and any person signing this Deed of Trust in a representative capacity on behalf of Trustor) represents, warrants and certifies that Trustor is duly constituted under applicable laws and in good standing; that Trustor has the power, authority, and appropriate authorization to execute this Deed of Trust and enter into the transactions described herein and that, when executed, this Deed of Trust, and any document executed by Trustor in connection herewith, shall be valid and legally binding on Trustor. If Trustor is a trust, each trustee executing this Deed of Trust on behalf of the trust also represents, warrants and certifies that this Deed of Trust and any document executed in connection herewith is being executed by all the currently acting trustees of the trust and that the trust has not been revoked, modified, or amended in any manner which would cause any of the foregoing to be incorrect.

**29.** **Non-Merger**. No merger will occur as a result of Beneficiary acquiring any other estate in or any other lien on the Property, unless Beneficiary consents to a merger in writing.

**30.** **Miscellaneous**.

**30.1** **Captions**. As used herein, the word "including" means "including without limitation" and/or "including but not limited to". The captions used in this Deed of Trust are for convenience only and do not define or limit any terms or provisions. No listing of any specific collateral, items, instances or other matters in any way limits the scope or generality of any language of this Deed of Trust.

**30.2** **Acceptance by Trustee**. Trustee accepts this Trust when the Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**30.3** **Captions**. The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust.

**30.4** **Invalidity of Certain Provisions**. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partial secured portion of the debt shall be completely paid prior tot he payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust. If any provision of the Loan Instruments shall be deemed void or

22



unenforceable, it shall not affect the validity of the remaining provisions thereof which shall be considered.

**30.5    Subrogation**. To the extent that proceeds of the Note or advances under this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds or advances have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released.

**30.6    No Merger**. If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Trust Estate shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates. In addition, upon the foreclosure of the lien created by this Deed of Trust on the Trust Estate pursuant to the provisions hereof, any leases or subleases then existing and created by Trustor shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect. No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice thereof to such tenant or subtenant.

**30.7    Waiver**. The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this instrument conferred upon them, or either of them, upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice. Consent by Beneficiary to any transaction or action or Trustor which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiver of the rights to require such consent or approval to future or successive transactions or actions.

**30.8    Modifications in Writing**. This Deed of Trust may not be changed, terminated, or modified orally or in any other manner than by an instrument in writing signed by the party against whom enforcement is sought.

**30.9    Beneficiary's Right to Enter, Inspect and Cure**. Beneficiary is authorized, by itself, its contractors, agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.



**30.10  Counterparts**.  This Deed of Trust may be executed in counterparts, all of which executed counterparts shall together constitute a single document.  Signature pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

TRUSTOR:

Double U Livestock, LLC
an Oregon Limited Liability Company

By: X _____
James A. West, member

By: X _____
Carleen J. West, member

By: X _____
Clayton J. West, member

By: X _____
Mary West, member

By: X _____
Wade S. West, member

By: X _____
Molly West, member

24

STATE OF NEVADA )
                              )ss.
COUNTY OF _WHITE PINE_ )

    This instrument was acknowledged before me on _22 APRIL_ , 20 _07_ by
_JAMES A. WEST_ , as _MEMBER_ of
_DOUBLE U LIVESTOCK_ , a _LLC_ .

> JON L. MULLER
> Notary Public - State of Nevada
> Appointment Recorded in White Pine County
> No 05-106810-17 Expires September 25, 2010

Notary Public

My Commission Expires: _____

STATE OF NEVADA )
                              )ss.
COUNTY OF _WHITE PINE_ )

    This instrument was acknowledged before me on _22 APRIL_ , 20 _07_ by
_CARLEEN J. WEST_ , as _MEMBER_ of
_DOUBLE U LIVESTOCK_ , a _LLC_ .

> JON L. MULLER
> Notary Public - State of Nevada
> Appointment Recorded in White Pine County
> No 05-106810-17 Expires September 25, 2010

Notary Public

My Commission Expires: _____

STATE OF NEVADA )
                              )ss.
COUNTY OF _WHITE PINE_ )

    This instrument was acknowledged before me on _22 APRIL_ , 20 _07_ by
_CLAYTON T. WEST_ , as _MEMBER_ of
_DOUBLE U LIVESTOCK_ , a _LLC_ .

> JON L. MULLER
> Notary Public - State of Nevada
> Appointment Recorded in White Pine County
> No 05-106810-17 Expires September 25, 2010

Notary Public

My Commission Expires: _____

25

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by
*MARY S. WEST*, as *MEMBER* of
*DOUBLE W LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by
*WADE S. WEST*, as *MEMBER* of
*DOUBLE W LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by
*MOLLY WEST*, as *MEMBER* of
*DOUBLE W LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

25 *B*

## EXHIBIT "A"

### Legal Description

PARCEL 1:

Township 21 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: SE1/4NE1/4
Section 2: S1/2NE1/4; Lot 2
Section 11: NW1/4NW1/4
Section 12: SE1/4SW1/4
Section 13: E1/2NW1/4; W1/2SW1/4
Section 14: N1/2NW1/4; NE1/4SW1/4
Section 21: SW1/4SW1/4
Section 22: NW1/4NW1/4
Section 23: SE1/4SE1/4
Section 26: SW1/4SE1/4
Section 29: SE1/4NE1/4
Section 32: NW1/4SE1/4


Township 22 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 13: SE1/4NW1/4; NW1/4SE1/4
Section 14: W1/2NE1/4; E1/2SE1/4; NW1/4SE1/4
Section 23: E1/2NE1/4
Section 24: SW1/4NW1/4; W1/2SW1/4
Section 25: SE1/4SW1/4; W1/2W1/2
Section 26: NE1/4SE1/4; SW1/4NE1/4
Section 36: E1/2NW1/4; NE1/4SW1/4; SW1/4SW1/4; SW1/4NE1/4; SE1/4


Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: Lot 3
Section 2: Lots 1, 2, 3, 5, 6, and 12; SE1/4SE1/4
Section 3: Lot 9; NW1/4SE1/4
Section 5: Lot 6
Section 7: SE1/4SW1/4; S1/2SE1/4
Section 8: SW1/4SW1/4
Section 11: S1/2NE1/4
Section 12: SW1/4NW1/4; N1/2SW1/4
Section 13: SW1/4SW1/4
Section 14: NW1/4NE1/4; SE1/4NE1/4; E1/2SE1/4
Section 17: W1/2NW1/4
Section 18: NE1/4; E1/2NW1/4
Section 24: SE1/4NE1/4
Section 25: W1/2NW1/4
Section 26: N1/2NE1/4

26



Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 21: NW1/4NE1/4
Section 22: N1/2NW1/4; SE1/4NW1/4; NW1/4NE1/4
Section 24 SW1/4SE1/4
Section 25: NW1/4NE1/4
Section 29: SE1/4NE1/4; N1/2SE1/4; SW1/4SE1/4; E1/2SW1/4
Section 32: NE1/4NW1/4; NW1/4NE1/4
Section 36: S1/2SE1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 26 North, Range 62 East, M.D.B.&M. (Elko County)

Section 15: S1/2SW1/4; SW1/4SE1/4
Section 16: SW1/4NW1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203 of Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 27 North, Range 62 East, M.D.B.&M. (Elko County)

Section 1: SW1/4SE1/4; S1/2SW1/4
Section 2: S1/2SE1/4; S1/2SW1/4; NE1/4SW1/4
Section 12: NE1/4NW1/4
Section 28: W1/2SE1/4
Section 33: SE1/4SW1/4

Township 28 North, Range 62 East, M.D.B.&M. (Elko County)

Section 3: S1/2SW1/4
Section 10: NW1/4NW1/4

Township 26 North, Range 63 East, M.D.B.&M.

Section 5: SE1/4SE1/4 (Elko County
Section 28: NE1/4NW1/4 (White Pine County)
Section 31: S1/2SW1/4 (White Pine County)


Township 27 North, Range 63 East, M.D.B.&M. (Elko County)

Section 4: SW1/4SE1/4
Section 5: SE1/4NE1/4
Section 7: SW1/4SE1/4
Section 17: SW1/4NW1/4


Township 27 North, Range 67 East, M.D.B.&M.

Section 29: NW1/4SE1/4


Township 26 North, Range 66 East, M.D.B.&M.

Section 12: SW1/4SE1/4


PARCEL 2:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NE1/4SE1/4
Section 22: SE1/4NE1/4; NE1/4NW1/4; E1/2SE1/4
section 23: W1/2SW1/4


Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 22: S1/2NE1/4


Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.


PARCEL 3:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NW1/4SW1/4SE1/4; NE1/4SE1/4SW1/4; SE1/4NE1/4SW1/4


2 8



PARCEL 4;

Township 26 North, Range 62 East, M.D.B.&M.

Section 21: NW1/4; S1/2NE1/4; NE1/4NE1/4 (White Pine County)
Section 22: SW1/4NW1/4 (White Pine County)
Section 33: SW1/4; SE1/4NW1/4; SW1/4NE1/4; W1/2SE1/4; (White Pine County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 25 North, Range 62 East, M.D.B.&M.

Section 22: NE1/4NE1/4 (White Pine County)
Section 23: SW1/4SE1/4; NE1/4SE1/4; W1/2NW1/4; SE1/4NW1/4; E1/2SW1/4 (White Pine County)

Township 23 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 5: Lot 4 of NW1/4
Section 6: Lot 2 of NE1/4

Township 24 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 31: N1/2SW1/4

Township 26 North, Range 63 East, M.D.B.&M.

Section 34: W1/2SE1/4 (White Pine County)

PARCEL 5:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 15: SE1/4SW1/4; S1/2SE1/4
Section 22: NW1/4NE1/4

29

PARCEL 6:

Township 26 North, Range 62 East, M.D.B.&M.

Section 16: E1/2SW1/4; S1/2SE1/4; W1/2SW1/4 (Elko County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

PARCEL 7:

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 32: SE1/4NE1/4; E1/2SE1/4
Section 33: SW1/4NW1/4

PARCEL 8:

Township 24 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NE1/4

Township 25 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NW1/4

PARCEL 9:

The Southeast Quarter (SE1/4) of the Southeast Quarter (SE1/4) of Section 3, Township 3 South, Range 57 East, M.D.B.&M. in Lincoln County, Nevada.

# EXHIBIT 5

# EXHIBIT 5

**DOC #** 0128841

04/27/2007        03:57 PM

**Official  Record**

Recording requested By
FIRST AMERICAN TITLE

Lincoln County - NV
Leslie Boucher     - Recorder
Fee $70.00        Page 1   of 32
RPTT            Recorded By  LB
Book- 231  Page- 0038

0128841

APN_____

APN 010-220-02

APN_____

---

## Deed of Trust, Assignment of Rents And Security Agreement

### Title of Document

---

### Affirmation Statement

___X___ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does not contain** the social security number of any person or persons. (Per NRS 239B.030)

_____ I, the undersigned hereby affirm that the attached document, including any exhibits, hereby submitted for recording **does contain** the social security number of a person or persons as required by law: _____
    (State specific law)

Judy Vee Vertullo
Signature                Title
Administrative Assistant & Documentation Manager

_____

Signature

2-27-07

Date

**Grantees address and mail tax statement:**

Double U Livestock, LLC

27820 North Cherry Creek Road

Ely, NV   89301

RECORDING REQUESTED BY AND
WHEN RECORDED, MAIL TO:

Tri-State Livestock Credit Corporation
2880 Sunrise Blvd., Suite 224
Rancho Cordova, CA 95742

(SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE)

# DEED OF TRUST, ASSIGNMENT OF RENTS
# AND SECURITY AGREEMENT

THIS DEED OF TRUST, ASSIGNMENT OF RENTS AND SECURITY AGREEMENT is made as of February 26, 2007, by and among **Double U Livestock, LLC, an Oregon Limited Liability Company, as** ("Trustor"), whose place of business is HC 33, Box 33660, Ely, Nevada, 89301, **Tri-State Livestock Credit Corporation, a California Corporation as** ("Trustee"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742; and **Tri-State Livestock Credit Corporation, a California Corporation** ("Beneficiary"), whose place of business is 2880 Sunrise Blvd., Suite 224, Rancho Cordova, California 95742.

**1.** **Grant in Trust**. Trustor IRREVOCABLY GRANTS, CONVEYS AND ASSIGNS to said Trustee, in trust for the benefit of Beneficiary, with power of sale together with right of entry and possession, the property described below in Sections 1.1 through 1.7 inclusive (collectively, the "Property").

**1.1** The real property situated in the County(s) of **White Pine, Elko and Lincoln**, State of Nevada, which are particularly described in Exhibit "A" attached hereto and by this reference incorporated herein (the "Real Property").

**1.2** **Buildings, Fixtures, and Other Improvements**. All buildings, structures, equipment, fixtures (including, but not limited to, trees, vines and shrubs) and improvements of every kind and description now or hereafter constructed or placed on the Real Property; all standing timber and timber to be cut located on the Real Property; and all pumping plants, electrical generators, wind machines, and fencing and storage tanks, now or hereafter used in connection with the Property, all of which are hereby declared to be fixtures. Without limiting the generality of the foregoing, a description of some fixtures may also be included with the description of the Real Property set forth above or in an exhibit hereto.

**1.3** **Leases and Other Rights**. All existing and future leases, subleases, licenses, permits, agreements, permits and concessions relating to the use or enjoyment of the Real Property, including all grazing rights, leases, permits and licenses; all oil, gas, and mineral

1

0128841 Book 231 04/27/2007
Page 40 Page 3 of 13

leases, permits and rights used with the Real Property; and all tenements, hereditaments, easements, rights-of-way and appurtenances to the Real Property.

      **1.4**    **Water Assets**. All right, title, and interest at any time of Trustor (or any of its bailees, agents, or instrumentalities), whether now existing or hereafter arising or acquired, whether direct or indirect, whether owned legally, of record, equitably or beneficially, whether constituting real or personal property (or subject to any other characterizations), whether created or authorized under existing or future laws or regulations, and however arising in, including without limitation, the water, water rights and other assets and items described below in Sections 1.4(a) through 1.4(i) inclusive, which shall collectively be called "Water Assets". References to "water" and "water rights" are used herein in the broadest and most comprehensive sense of the term(s). The term "water" includes water rights and rights to water or whatever rights to money, proceeds, property or other benefits are exchanged or received for or on account of any Water Assets or any conservation or other nonuse of water, including whatever rights are achieved by depositing one's share of any Water Assets in any water bank or with any water authority, or any other water reallocation rights. Without limiting the generality of the foregoing, a description of some Water Assets may also be included with the description of the Property set forth above or in an exhibit hereto.  The Water Assets include, but are not limited to, the following:

      (a)    All water (including any water inventory in storage), water rights and entitlements, other rights to water and other rights to receive water or water rights of every kind or nature whatsoever including: (a) the groundwater on, under, pumped from or otherwise available to the Property, whether as the result of groundwater rights, contractual rights or otherwise; (b) Trustor's right to remove and extract any such groundwater including any permits, rights or licenses granted by any governmental authority or agency or any rights granted or created by any use, easement, covenant, agreement, or contract with any person or entity; (c) any rights to which the Property is entitled with respect to surface water, whether such right is appropriative, riparian, prescriptive, decreed or otherwise and whether or not pursuant to permit or other governmental authorization, or the right to store any such water; (d) any water, water right, water allocation, distribution right, delivery right, water storage right, or other water-related entitlement appurtenant or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any district, agency, or other governmental entity or within the boundaries of any private water company, mutual water company, or other non-governmental entity; (e) all water and existing and future water rights, however evidenced, to the use of water for irrigation, livestock and domestic purposes, including irrigation and watering equipment and systems, ditches, laterals, conduits, and rights-of-way used to convey such water or to drain the Property, all of which rights are or are hereby made appurtenant to the Property.

      (b)    All stock, interest or rights (including any water allocations, voting or decision rights) in any entity, together with any and all rights from any entity or other person to acquire, receive, exchange, sell, lease, or otherwise transfer any Water Assets, to store, deposit or otherwise create water credits in a water bank or similar or other arrangement for allocating water, to transport or deliver water, or otherwise to deal with any Water Asset.

      (c)    All licenses, permits, approvals, contracts, decrees, rights and interests to acquire or appropriate any Water Assets, water bank or other credits evidencing any right to Water Assets, to store, carry, transport or deliver Water Assets, to sell, lease, exchange,

2

**1.7   Additions and Proceeds**. All additions, accretions, substitutions and replacements of any of the Property; all proceeds of the Property, including all proceeds of present and future insurance policies; and all condemnation awards or payments now or later made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any misrepresentation, damage or injury to, or defect in the property.

**2.   Assignment of Rents**. TRUSTOR ABSOLUTELY AND UNCONDITIONALLY ASSIGNS, transfers, conveys and sets over to Beneficiary all the rents, royalties, issues, profits, revenue, income and other benefits of the Property arising from the use, non-use, enjoyment, sale, transfer or other disposition of all or any portion thereof, including those set forth in Section 1.4(i) above, or from any lease, mineral lease, or agreement pertaining to the Property (collectively the "Rents"); whether now existing or hereafter arising and whether now due, past due or to become due; SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Trustor by Section 18 hereof. This assignment of the Rents shall be perfected automatically without appointment of a receiver or Beneficiary becoming a mortgagee in possession.

**3.   Obligations Secured**. Trustor makes the grant, conveyance, and assignment of the Property as described above for purposes of securing the following indebtedness and other obligations (collectively, "Indebtedness") in any order of priority that Beneficiary may choose:

(a)   payment of the indebtedness and performance of the obligations of Trustor evidenced by the following promissory note(s) (collectively "Note") and/ or the following continuing guaranty(s) (collectively "Guaranty"), and any other documents executed by Trustor in conjunction with the Note or Guaranty:

(i)   a Revolving Line of Credit Promissory Note  dated as of January 18, 2007, in the stated principal amount of $850,000.00,

(b)   the payment of such additional loans or advances, including advances under a revolving line of credit, with interest thereon, as hereafter may be made to or guaranteed by Trustor, or Trustor's successors or assigns, evidenced by a promissory note, guaranty, loan agreement or otherwise; PROVIDED, HOWEVER, that such additional loans or advances will be secured by this Deed of Trust only if the promissory note, guaranty, loan agreement or other document evidencing the obligations of Trustor relative to such loans or advances recites that it is to be secured by this Deed of Trust;

(c)   the payment and performance of the obligations set forth in any document evidencing an extension, renewal, modification, replacement, reamortization, conversion, or restatement of any Indebtedness secured by this Deed of Trust, including without limitation renewal and/or substitute notes, guaranties, and loan agreements.

(d)   the performance of every obligation and agreement of Trustor whether contained or incorporated by reference in this Deed of Trust, or contained in any loan agreement, loan document or guaranty executed by Trustor in favor of Beneficiary, with respect to any loan or advance secured by this Deed of Trust; and

4

(e) the payment of all sums expended or advanced by Beneficiary under or pursuant to the terms of this Deed of Trust, together with interest thereon as herein provided.

The Notes referred to above are payable by Trustor and/or others to the Beneficiary at the times, in the manner and with interest as therein set forth. The Note and other documents evidencing the Indebtedness may contain variable or adjustable interest rate provisions and provisions evidencing revolving lines of credit.

The continuing validity and priority of this Deed of Trust as security for future loans or advances will not be impaired by the fact that at certain times hereafter there may be no outstanding loan or other indebtedness from Trustor to Beneficiary and/or no commitment to make loans or advances.

Notwithstanding the foregoing, this Deed of Trust does not secure any indebtedness or other obligation if the promissory note, guaranty, or any other document evidencing or pertaining to the indebtedness or obligation states that it is unsecured or not secured by real property.

**4.** **Personal Property Security Agreement**. To the extent that any of the Property, (including without limitation any Water Assets or fixtures), is deemed to constitute, is adjudicated to be, or declared to be personal property, this Deed of Trust shall also be deemed to be a security agreement. Trustor does hereby create and grant to Beneficiary a security interest in all such personal property described herein and this Deed of Trust shall constitute a security agreement pursuant to the Nevada Uniform Commercial Code with respect to all such personal property; and further, grants to Beneficiary all of the rights and remedies of a secured party under the Nevada Uniform Commercial Code and other applicable state law, which rights are cumulative. For the purposes of treating this Deed of Trust as a security agreement, Trustor shall be deemed to be the "Debtor" and Beneficiary the "Secured Party."

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES TO EACH OF THE FOLLOWING:**

**5.** **Use of Proceeds; Payment of Secured Obligations**. To use loan proceeds solely for the purposes set forth in the loan application(s) or as otherwise required by Beneficiary, and to pay when due the principal of, and the interest on, the Indebtedness evidenced by the Note and/or Guaranty, charges, fees, and all other sums as provided in any of the documents evidencing the Indebtedness secured hereby, together with any future advances secured by this Deed of Trust.

**6.** **Condition of Property**. To keep the Property in good condition, working order and repair; to care for the Property in accordance with standards of good husbandry and to keep all trees, vines and crops on said land properly cultivated, irrigated, fertilized, sprayed, and fumigated; not to sell, transfer, assign, encumber or convey any water or water right from the Property, or to enter into an agreement for the nonuse of water, without the prior written consent of Beneficiary; not to remove, destroy or suffer the removal or destruction of any building, fence, canal, well or other improvements or fixtures thereon; not to remove, replace or alter any horticultural or viticultural tree, vine or shrub planted thereon without the prior written consent of

5

Beneficiary, except in the ordinary course of business; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting the Property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violation of law; to do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general; to observe and perform all obligations of Truster under any lease of the Property.

      **7.**     **Insurance**. To provide, maintain and deliver to Beneficiary, fire, extended coverage, flood, comprehensive public liability, and all other types of insurance, in terms and amounts as may be required by law or Beneficiary, with loss payable endorsements (including lender loss payable endorsements) solely in favor of Beneficiary. In the event of loss, the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to reduce the Indebtedness or restore or repair the property damaged. Failure to obtain, maintain or deliver to Beneficiary the insurance required shall constitute an event of default under this Deed of Trust.

      At least thirty (30) days prior to the expiration of any such policy of insurance, Truster will deliver a policy renewing or extending such expiring insurance and written evidence demonstrating payment of the premium for such insurance. If any such policy and evidence of payment (or copies of same, if originals cannot be delivered to Beneficiary) are not so delivered to Beneficiary, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, Beneficiary may (but is not obligated to), at Trustor's expense, obtain insurance in such types, on such terms and in such amounts as Beneficiary in its sole discretion shall decide, through or from any insurance agency or company acceptable to it. Any insurance obtained by Beneficiary shall be for its sole benefit and to protect the security of this Deed of Trust. The expense and cost of such insurance shall, at Beneficiary's sole option, be payable on demand or added to the Indebtedness as provided herein. Neither Trustee nor Beneficiary shall be chargeable with or responsible for the procurement or maintenance of any such insurance, the collection of any proceeds from such insurance, or the insolvency of any insurance company or underwriter.

      **8.**     **Defense of Title**. To appear in and litigate any action or proceeding purporting to affect the security hereof, the title to the Property, or the rights or powers of Beneficiary or Trustee. Beneficiary or Trustee may appear in and litigate any such action or proceedings, including any bankruptcy, partition or condemnation proceeding, affecting the Property, or Beneficiary's interest therein, in which event Trustor agrees to pay all costs and expenses thereof, including attorney's fees and costs of securing evidence of title.

      **9.**     **Taxes, Liens and Assessments**. To pay, at least ten (10) days prior to delinquency, all taxes and assessments affecting the Property, including all assessments upon water company stock, or other Water Assets, and all rents, assessments and charges for water appurtenant to or used in connection with the Property; to pay when due all encumbrances, charges, and liens on the Property, or any part thereof, which at any time create, may create or appear to create a lien upon the Property. If requested by Beneficiary, Trustor shall cause to be furnished to Beneficiary a tax reporting service covering the Property of the type, duration and with a company satisfactory to Beneficiary.

**10.** **Fees and Costs**. In the event that Beneficiary or Trustee uses the services of attorneys, accountants, appraisers, consultants, or other professional or outside assistance, including the services of in-house counsel or any other attorney or professional who is an employee of Lender, the reasonable amount of fees, costs and expenses ("Expenses") incurred by Beneficiary or Trustee to use such persons in connection with any of the following shall be payable by Trustor on demand. Beneficiary or Trustee may, at its option, add the amount of such Expenses to any portion of the Indebtedness plus an appropriate amount of Beneficiary's stock or participation certificates required in connection with the loan (as required by federal law or regulation or Beneficiary's bylaws), and charge interest on such amount at the interest rate applicable to such portion of the Indebtedness. The Expenses include, but are not limited to, the fees, costs, and expenses arising from the following:

(a) The preparation, modification or enforcement of this Deed of Trust, and any other agreement or document incident to the Indebtedness or to the Property;

(b) Any litigation, dispute, proceeding, or action (whether or not dismissed, reduced to judgment, or otherwise resolved), and whether instituted by Beneficiary, Trustee or Trustor or any other person, relating to the Indebtedness, the Property or Trustor's affairs;

(c) The furtherance of Beneficiary's or Trustee's interest in any bankruptcy, insolvency, or reorganization case or proceeding instituted by or against Trustor, including any steps to (1) modify or terminate the automatic stay, (ii) prohibit or condition Trustor's use of cash collateral, (iii) object to any disclosure statement or plan, (iv) propose or confirm a plan, and (v) prosecute or defend adversary proceedings or contested matters, and take or defend examinations or discovery, whether or not related to any adversary proceeding or contested matter and whether or not dismissed, reduced to judgment, or otherwise resolved;

(d) The inspection, verification, protection, collection, processing, sale, liquidation, or disposition of the Property; and

(e) Any of the type of Expenses referred to in (a) through (e) above incurred by Beneficiary or Trustee in connection with any guaranty of the Indebtedness.

The Expenses described herein and elsewhere in this Deed of Trust shall be in addition to those set forth in any Security Instrument or any other written agreement between Beneficiary and Trustor.

**11.** **Beneficiary May Act for Trustor**. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Truster and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the Property, Beneficiary or Trustee being authorized to enter upon the Property for such purposes; commence, appear in and litigate any action or proceeding purporting to affect the Property or the rights or powers of Beneficiary or Trustee, including any bankruptcy proceeding affecting the Property; pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; pay such fees, charges, rents or other payments accruing under the grazing permits

7

described in Section 14 below; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefore, including attorney's, accountant's, and appraisal fees, environmental fees and costs of securing evidence of title, and all amounts so expended shall be obligations of Truster secured by this Deed of Trust. Nothing contained herein shall prohibit Beneficiary from entering the Property, at a reasonable time and upon reasonable notice to Trustee, without incurring or assuming any obligations or liabilities whatsoever, for the sole purpose of inspecting the Property.

## 12.  **Environmental Compliance Matters**.

**12.1  Definitions**.  For the purposes of this Section 12, the following terms shall be defined as follows:

(a)  "Hazardous Material" means any radioactive, hazardous, or toxic substance, material, waste or similar term, the presence of which on the Property, or the discharge or emission of which from the Property, is prohibited by Governmental Requirements (hereafter defined) or which require special handling in collection, storage, treatment, or disposal by any Governmental Requirements.  The term "Hazardous Material" includes, but is not limited to, any material, substance, waste or similar term which is:

(i)  Defined as a hazardous material under the laws of the State of Nevada, as amended from time to time;

(ii)  Defined as a hazardous substance under Section 311 of the Federal Water Pollution Control Act (33 U.S.C. Section 1317) as amended from time to time;

(iii)  Defined as a hazardous waste under Section 1004 of the Federal Resource Conservation and Recovery Act (42 U.S.C. Section 6901 et seq.), as amended from time to time;

(iv)  Defined as a hazardous waste substance under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. Section 9601 et seq.), as amended from time to time;

(v)  Defined as a radioactive, hazardous, or toxic substance, waste, material or similar term in any rules and regulations, as amended from time to time, which are adopted by any administrative agency; including, but not limited to the Environmental Protection Agency, the Occupational Safety and Health Administration, and any such similar state or local agency having jurisdiction over the Property, whether or not such rules and regulations have the force of law;

(vi)  Determined to contain asbestos or polychlorinated biphenyls;

(vii)  Defined as a radioactive, hazardous, or toxic waste, substance, material or similar term in any other statute, regulation, rule or law presently in effect, or enacted or adopted at any time after the date of this Deed of Trust, by local authorities, the State of Nevada, and/or the federal government; or

(viii)  Subject to regulation under the Toxic Substances Control Act (TSCA) 15 U.S.C., Section 2061 et seq.

(b)  "Governmental Requirements" shall mean all laws, ordinances, statutes, codes, rules, regulations, orders, and decrees of the United States, the State of Nevada, and all local or governmental or regulatory authorities exercising jurisdiction over Trustor or the Property.

(c)  The "Termination Date" shall be the date on which the Indebtedness secured by this Deed of Trust shall be paid and satisfied in full; except that if the Indebtedness secured by this Deed of Trust shall be paid and satisfied by foreclosure, sale under the power of sale herein contained, deed in lieu of foreclosure or sale by power of sale, or by any other means by which title to the Property, or any part thereof, becomes vested in the Beneficiary under this Deed of Trust, Beneficiary, or any transferee, assignee, subsidiary, or other successor in interest to Beneficiary, then the Termination Date shall be the later of (i) the date on which this Deed of Trust is paid and satisfied in full, or (ii) the date on which Trustor and Trustor's employees, agents, and officers have fully and finally relinquished, surrendered, and delivered up the ownership, use, occupancy, and possession of all portions of the Property.

(d)  "Hazardous Material Contamination" shall mean the contamination (whether presently existing or hereafter occurring) of the Property, or the contamination of the buildings, facilities, soil, ground water, air or other elements on, or of, any other property as a result of Hazardous Material at any time (whether before or after the date of this Deed of Trust) emanating from the Property.

**12.2  No Hazardous Material**. To the best of Trustor's knowledge, Trustor warrants and represents that, as of the date hereof, there is no Hazardous Material on or in the Property, or being released or discharged therefrom (the term "Property" expressly including for the purposes of this Section 12.2, all buildings and other improvements located thereon, all Personal Property, the soil and the ground water thereof, including the streams crossing or abutting the Property and the aquifer underlying the Property), whether such Hazardous Material be located or placed on or within the Property by spill, release, discharge, disposal, storage, or otherwise.

To the best of Trustor's knowledge after due and diligent inquiry that except for Hazardous Materials used in the normal and ordinary operation of the Property and consistent with all applicable local, state and federal statutes and regulations: (i) no part of the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material, nor is any part of the Property affected by any Hazardous Material Contamination; (ii) no property adjoining the Property has ever been used as a manufacturing, storage, or dump site for Hazardous Material; and (iii) no property adjoining the Property is affected by Hazardous Material Contamination.

Trustor covenants and agrees that from the date hereof through the Termination Date, Trustor and Trustor's agents, contractors, authorized representatives and employees (collectively "Trustor's Agents") shall not engage in any of the following prohibited activities, and

9

Trustor shall use its best and diligent efforts to see that Trustor's invitees and tenants, and such tenants' employees, agents, and invitees shall not:

(a)    Cause or permit any releases or discharges of Hazardous Material from the Property; or

(b)    Cause or permit any manufacturing, holding, handling, retaining, transporting, spilling, leaking, or dumping of Hazardous Material in or on any portion of the Property; or,

(c)    Otherwise place, keep, or maintain, or allow to be placed, kept, or maintained, any Hazardous Material on any portion of the Property.

**12.3    Compliance With Law**. From the date hereof through the Termination Date, Trustor shall comply, and cause Trustor's Agents and the Property to comply, with all laws, ordinances, rules, and regulations of all authorities having jurisdiction over the Trustor, Trustor's Agents, the Property, or the use of the Property, and pertaining to any Hazardous Material (herein called "Hazardous Material Laws").

**12.4    Removal of Hazardous Material and Freedom From Liens**. If Hazardous Material is discovered on the Property, Trustor shall pay immediately when due the cost of removal of any Hazardous Material from the Property in compliance with all Governmental Requirements, and keep the entire Property free of any lien imposed pursuant to any laws, regulations, or orders of any governmental or regulatory authority having to do with the removal of Hazardous Material

Within thirty (30) days after demand by Beneficiary, Trustor shall obtain and deliver to Beneficiary a bond, letter of credit, or similar financial assurance for the benefit of Beneficiary evidencing, to Beneficiary's satisfaction, that the necessary funds are available to pay the cost of removing, treating, and disposing of all Hazardous Material or Hazardous Material Contamination on the Property and discharging any assessments or liens which may be established on the Property as a result thereof.

**12.5    Hazardous Material Reports**. To the best of Trustor's knowledge, no report, analysis, study, or other document asserting that Hazardous Material Contamination exists on the Property or identifying any Hazardous Material as being located upon or released or discharged from the Property has been issued. Trustor shall:

(a)    Give notice to Beneficiary immediately upon Trustor's acquiring knowledge of the presence of any Hazardous Material on the Property or of any Hazardous Material Contamination thereon, with a full description thereof;

(b)    Immediately advise Beneficiary in writing of any notice received by Trustor or Trustor's Agents alleging that the Property contains Hazardous Material or Hazardous Material Contamination or that a violation or potential violation of any Hazardous Material Laws by Trustor, Trustor's Agents, or the Property exists (whether such notices are received from the Environmental Protection Agency, the Occupational Safety and Health Agency, or any other federal, state or local governmental agency or regional office thereof);

(c)     Immediately advise Beneficiary in writing of any and all enforcement, cleanup, removal or other governmental or regulatory actions instituted, completed or threatened with respect to the Property or any property adjoining the Property pursuant to any Hazardous Material Laws;

(d)     Immediately advise Beneficiary in writing of all claims made or threatened by any third party against Trustor, Trustor's Agents, or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from any Hazardous Material or Hazardous Material Contamination pertaining to the Property; and

(e)     Immediately advise Beneficiary in writing upon Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property which does, or could, cause the Property, or any part thereof, to contain Hazardous Material or Hazardous Material Contamination or otherwise be in violation of any Hazardous Material Laws, or cause the Property to be subject to any restrictions on the ownership, occupancy, transferability or use thereof under any Hazardous Material Laws.

**12.6     Other Property of Trustor**.  Trustor covenants, warrants, and represents that there is no property owned or used by Trustor which contains Hazardous Material or Hazardous Material Contamination, emits or discharges Hazardous Material, or otherwise violates any Hazardous Material laws, such that a charge or lien as a result thereof could be placed upon the Property, or any liability therefor could be imposed upon Trustor.

**12.7     Remedial Action, Beneficiary's Consent**.  Without Beneficiary's prior written consent, which shall not be unreasonably withheld, Trustor shall not take any remedial action in response to the presence of any Hazardous Material or Hazardous Material Contamination upon or about the Property, nor enter into any settlement agreement, consent decree, or other compromise in respect to any violation or alleged violation of any Hazardous Material Laws, which remedial action, settlement, consent or compromise might, in Beneficiary's judgment, impair the value of Beneficiary's security hereunder; provided, however, that Beneficiary's prior consent shall not be necessary in the event that the presence of Hazardous Material or Hazardous Material Contamination on or about the Property either poses an immediate threat to the health, safety or welfare of any individual or is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Beneficiary's consent before taking such action.  In such event, Trustor shall notify Beneficiary as soon as practicable of any action so taken.  Beneficiary shall not withhold its consent, where such consent is required hereunder, if either (i) a particular remedial action is ordered by a court of competent jurisdiction, or (ii) Trustor establishes to the reasonable satisfaction of Beneficiary that there is no reasonable alternative to such remedial action which would result in less impairment of Beneficiary's security hereunder.

**12.8     Beneficiary's Corrective Action**.  In addition to the other remedies provided to Beneficiary elsewhere in the Loan Documents, Beneficiary shall have the right, but not the obligation to cause all Hazardous Material or Hazardous Material Contamination found on or in the Property to be removed therefrom, and in such event, the cost of the removal, including all expenses, charges, and fees incurred by Beneficiary in connection therewith, including attorneys, engineers, and consultants fees, shall be secured by this Deed of Trust,

11

shall be payable by Trustor on demand and shall bear interest at the Default Rate provided in the Note from the date advanced until paid. Trustor shall give to Beneficiary and its agents and employees access to the Property for such purposes; and Trustor hereby grants to Beneficiary, its agents and employees, full right and authority to remove any such Hazardous Material or Hazardous Material Contamination from the Property.

**12.9    Environmental Audit**. Beneficiary, at any time and from time to time during the term of the Loan, if it has reasonable cause to suspect that any provision of this Section 12 is not being complied with, may notify Trustor in writing that it desires a site assessment or environmental audit (such assessment or audit being herein called the "Audit") of the Property to be made, and at any time thereafter cause such site assessment or environmental audit to be made of the Property at Trustor's sole expense. Such Audit(s) shall be performed in a manner reasonably calculated to confirm and verify compliance with the provisions of this Section 12. Such results shall be kept confidential by both Trustor and Beneficiary unless either party is legally compelled or required to disclose such results, or disclosure is reasonably required in order to pursue rights or remedies provided herein or at law.

If Trustor fails to pay for the Audit as provided for herein within fifteen (15) days of receipt of billing therefor, Beneficiary may, at its election, declare a default hereunder, and, with or without declaring such default, add the cost thereof to the indebtedness secured by this Deed of Trust, in which case interest shall accrue at the Default Rate on such amount from the 16th day after billing until paid by Trustor.

Trustor covenants to reasonably cooperate with the persons conducting the Audit (the "Auditors") to allow entry and reasonable access to all portions of the Property for the purpose of the Audit, to supply the Auditors with all available historical and operational information regarding the Property as may reasonably be requested by the Auditors, and to make available for meetings with the Auditors appropriate personnel having knowledge of matters relevant to the Audit. Trustor covenants to comply, at its sole cost and expense, with all recommendation for additional testing and studies to detect the presence of Hazardous Material or Hazardous Material Contamination, or to otherwise confirm and verify Trustor's compliance with the provisions of this Section 12 to the extent required by Beneficiary.

**12.10    Indemnity and Hold Harmless**. Trustor shall be solely responsible for, and hereby agrees to indemnify and hold Beneficiary (including the respective successors, assigns, employees, agents, officers and directors of Beneficiary) harmless from, any and all actions, loss, liability, damage, cost or expense occasioned by, resulting from, or consequent to any Hazardous Material or Hazardous Material Contamination on the Property; any releases or discharges of Hazardous Material from the Property; any manufacturing, maintaining, holding, handling, transporting, spilling, leaking or dumping of Hazardous Material on or at the Property, any other violation of Hazardous Material Laws; any claim or assertion that any such Hazardous Material or Hazardous Material Contamination is so located on the Property or that any such activities or violations have been, or are being, engaged in on the Property; or any other failure or alleged failure of Trustor, Trustor's Agents, or the Property to comply with the provisions of this Section 12, notwithstanding any and all attempts by Trustor to exercise due diligence in ascertaining whether or not any of the events outlined above effect the Property. Such loss, liability, damage, cost, or expense hereby indemnified against shall include, without limitation:

(a)     All foreseeable consequential damages;

(b)     The costs of any required or necessary repair, cleanup or detoxification of the Property, including the soil and ground water thereof, and the preparation and implementation of any closure, remedial or other required plans;

(c)     Damage to any natural resources; and,

(d)     All reasonable costs and expenses incurred by Beneficiary in connection with clauses (a), (b) and (c), including but not limited to reasonable attorneys' and consultants' fees.

All costs and expenses incurred by Beneficiary for which Trustor is responsible, or for which Trustor has indemnified Beneficiary shall be paid by Trustor to Beneficiary within fifteen (15) days of demand therefore. Upon Trustor's failure to make such payment within said fifteen (15) day period, the full amount thereof shall be added to the indebtedness secured by this Deed of Trust and shall accrue interest from the sixteenth (16th) day after demand until paid at the Default Rate; and, at Beneficiary's election, such failure shall constitute a default hereunder.

Beneficiary shall have the right, but not the obligation, to join and participate in (as parties if they so elect), any legal or administrative proceeding or actions initiated in connection with any allegation that Trustor, Trustor's Agents, or the Property violate, or have violated, any provision of this Section 12, and to have their reasonable attorneys' and consultants' fees in connection therewith paid by Trustor upon demand.

The aforesaid indemnification and hold harmless agreement shall benefit Beneficiary from the date hereof and shall not be terminated on the Termination Date, but shall continue thereafter notwithstanding payment, release or discharge of this Deed of Trust or the indebtedness secured hereby; and, without limiting the generality of the foregoing such obligations shall continue for the benefit of Beneficiary, and their successors and assigns, during and following any possession of the Property thereby or any ownership of the Property by Beneficiary or their successors and assigns, whether arising by foreclosure or sale under the power of sale contained herein, transfer by deed in lieu of any such sale, or otherwise; such indemnification and hold harmless agreement to continue forever. In the event that this Deed of Trust or any other Loan Document contains a provision pursuant to which Trustor is relieved of personal liability for such indebtedness, such release of personal liability shall not include a release from Trustor's liabilities and obligations under this Section 12.

**12.11   Trustor's Failure to Comply**.  In addition to any other right or remedy contained in this Deed of Trust, or in any other Loan Document, if Trustor shall fail to comply with any term, provision, or requirement of this Section 12, and if such failure to comply shall not be corrected within the lesser of the following time periods (the "Correction Period"):

(a)     Fifteen (15) days after notice thereof from Beneficiary; or

(b)     The time period specified by any governmental or regulatory body for corrective action with respect to such failure to comply; then such failure to comply shall, at Beneficiary's election and without further notice, constitute a default under this Deed of Trust.

Provided, however, if Trustor's failure to comply shall be of such nature that it cannot reasonably be corrected within the Correction Period, and if Trustor shall, within said Correction Period, commence during such failure to comply, and thereafter diligently prosecute such corrective action to completion, and provided the governmental or regulatory body having jurisdiction with respect to such failure shall not object, then Trustor shall have a reasonable additional period beyond said Correction Period in which to cure such failure to comply.

**12.12 Survival**. NOTWITHSTANDING ANY OTHER PROVISION OF THIS DEED OF TRUST, THE NOTE OR ANY LOAN DOCUMENTS, TRUSTOR'S REPRESENTATIONS, WARRANTIES, COVENANTS AND INDEMNITIES CONTAINED IN THIS SECTION 12 SHALL SURVIVE THE OCCURRENCE OF ANY EVENT WHATSOEVER, INCLUDING WITHOUT LIMITATION THE PAYOFF OF THE PROMISSORY NOTE SECURED HEREBY, THE RECONVEYANCE OR FORECLOSURE OF THIS DEED OF TRUST, THE ACCEPTANCE BY TRUSTEE OF A DEED IN LIEU OF FORECLOSURE, OR ANY TRANSFER OR ABANDONMENT OF THE PROPERTY.

**13. Grazing Rights**. If any portion of the Property described in this Deed of Trust is used by Trustor as the basis for obtaining grazing permits or other grazing rights issued by any governmental agency, including without limitation the Forest Service, U.S. Department of Agriculture or the Bureau of Land Management, U.S. Department of Interior, Trustor covenants and agrees as follows:

(a)     Said grazing permits or other rights are in good standing and have not been modified, reduced or limited in any other respect, except as fully disclosed in writing to Beneficiary;

(b)     Trustor will perform all obligations imposed as a requirement of exercise of said grazing permits or other rights and will comply with all laws, rules and regulations applicable thereto;

(c)     Trustor will take such timely action as may be required to cause the renewal or reissuance of said grazing permits or other rights from time to time as they expire during the term thereof. Trustor agrees and acknowledges that the failure to renew or cause the reissuance of any said permits for any reason, whether the result of an act or omission of Truster or for reasons beyond Trustor's control, is an event of default hereunder and Beneficiary shall have the right to exercise the rights set forth in this Deed of Trust; and

(d)     Trustor agrees to pay all fees, charges, rents or other payments accruing under said permits or any renewals thereof prior to delinquency. In the event Trustor fails to pay any such payment, the amount unpaid shall become a part of the Indebtedness and shall be immediately due and payable.

**14. Water Transfers**. Trustor represents that Trustor is not in the business of transferring water and, therefore, any sale or transfer of any water or water rights is not a transfer of goods in the ordinary course of business. Trustor further agrees that in no event will any water or water rights be goods identified to a contract. Truster hereby acknowledges that the availability of the water and the other Water Assets to the Property was a significant factor in Beneficiary's decision to extend credit to Trustor and any other persons obligated on the

14

Indebtedness, and that any severance of water or water rights or any other Water Asset from the Property would materially harm the Property.

**15. Financial Information**. At Beneficiary's request, Trustor shall provide to Beneficiary financial Information in a form acceptable to Beneficiary, including, when so required, a current balance sheet and profit and loss statement. In the case of multiple Trustors, financial information must be provided for each Trustor or otherwise as requested by Beneficiary. Financial information shall be provided at such times during the term of this Deed of Trust as Beneficiary may request.

**16. Condemnation Awards**. Any award of damages in connection with any taking or condemnation or injury to the Property by reason of public use, or for damages resulting from private trespass or injury to the Property, is absolutely and unconditionally assigned and shall be paid to Beneficiary, under the terms and conditions of this Deed of Trust pertaining to Rents. Upon receipt of such money, Beneficiary may apply the same on the Indebtedness. Trustor agrees to execute such further documents as may be required to effect the assignments herein made as Beneficiary or Trustee may require.

**17. Trustee Actions**. At any time, without affecting the liability of any person for the payment of the Indebtedness, and without otherwise affecting the security hereof, Trustee may: (a) consent to or join in the making of any map or plat of the Property; (b) grant any easement or create any restriction thereof; (c) subordinate this Deed of Trust; (d) extend or modify the term of the loan or loans secured hereby; and (e) reconvey without warranty, all or any part of the Property. Trustor agrees to pay reasonable Trustee's fees for any of the foregoing services.

**18. Collection of Rents**. Prior to any default by Trustor in the payment, observance, performance and discharge of any condition, obligation, covenant, or agreement of Trustor contained herein, Trustor may, as the agent and fiduciary representative of Beneficiary for collection and distribution purposes only, collect and receive the Rents as they come due and payable; the Rents are to be applied by Trustor to the payment of the principal and interest and all other sums due or payable on any promissory note or guaranty secured by this Deed of Trust and to the payment of all other amounts payable under this Deed of Trust and, thereafter, so long as aforesaid has occurred, the balance shall be distributed to the account of Trustor. However, Beneficiary shall have the right before or after the occurrence of any default to notify any account debtor to pay all amounts owing with respect to Rents directly to Beneficiary. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the Indebtedness, enter upon and take possession of the Property or any part thereof, in its own name, sue for or otherwise collect such Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any Indebtedness, and in such order as Beneficiary may determine; also perform such acts of repair, cultivation, irrigation or protection, as may be necessary or proper to conserve the value of the Property; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate: also prepare for harvest, remove, and sell any crops that may be growing upon the Property, and apply the proceeds thereof upon the Indebtedness.

15

**19.** **Trustee's Exercise of Remedies is No Cure of Default**. The entering upon and taking possession of the Property, the collection of such Rents, or the proceeds of fire and other insurance policies, or compensation or awards for any taking of or damage to the Property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

**20.** **Remedies Upon Default**.

**20.1** **Events of Default**. Any of the following events shall be deemed a "default," an "event of default," or "Event of Default" hereunder, as those terms are used herein and in the other documents evidencing this loan:

(a) Default shall be made in the payment of any installment of principal or interest or any other sum secured hereby when due, and such failure continues for more than five (5) days from the date payment is due; or

(b) Trustor shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent, or shall file any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors; or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, or shall make any general assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due; or

(c) A court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Trustor seeking any reorganization, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, and such order, judgment or decree shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive) from the first date of entry thereof; or any trustee, receiver or liquidator of Trustor or of all or any part of the Property, or of any or all of the royalties, revenues, rents, issues or profits thereof, shall be appointed without the consent or acquiescence of Trustor and such appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days (whether or not consecutive); or

(d) A writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in the Property, or any judgment involving monetary damages shall be entered against Trustor which shall become a lien on the Property or any portion thereof or interest therein and such execution, attachment or similar process or judgment is not released, bonded, satisfied, vacated or stayed within sixty (60) days after entry or levy; or

(e) There has occurred a breach of or default under any term, covenant, agreement, condition, provision, representation or warranty contained in any of the Loan Instruments or any part thereof, not referred to in this Section 20.1.

16

(f)     There has occurred a violation of any condition, covenant or restriction recorded against or affecting the Property.

(g)     There has occurred a sale or transfer of the Property or any other interest in violation of the terms set forth in Section 24 of this Deed of Trust.

(h)     The dissolution of Trustor or any of its partners.

(i)     Any Hazardous Materials become present in or on the Property other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(j)     If at any time there is a discharge, deposit, injection, dumping, spilling, leaking, incineration or placing of any Hazardous Materials into or on the Property, other than those for which Beneficiary has given prior written approval and which are licensed and approved in accordance with all applicable laws and regulations.

(k)     If at any time, the use, generation, treatment, storage or disposal of any Hazardous Materials into or on the Property is in violation of the Superfund and Hazardous Waste Laws.

(l)     If at any time, Trustor or any Guarantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement in favor of Beneficiary or any other creditor or person that may materially affect any of Trustor's property or Trustor's or Guarantor's ability to repay the Note or perform their respective obligations under the Note or any of the loan documents.

**20.2    Acceleration Upon Default, Additional Remedies**.   In the event of default or an event of default under this Deed of Trust, Beneficiary may declare all indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any presentment, demand, protest or notice of any kind.  Thereafter Beneficiary may:

(a)     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or part thereof or interest therein, increase the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the rents, issues and profits thereof, including those past due and unpaid, and applying the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of rents, issues or profits, Trustee or Beneficiary shall be entitled to exercise every right provided for in any of the Loan

17

Instruments or by law upon occurrence of any event of default; including the right to exercise the power of sale;

(b)    Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants hereof;

(c)    Exercise any or all of the remedies available to a secured party under the Nevada Uniform Commercial Code, including, but not limited to:

(i)    Either personally or by means of a court appointed receiver, take possession of all or any of the Personal Property and exclude therefrom Trustor and all others claiming under Trustor, and thereafter hold, store, use, operate, manage, maintain and control, make repairs, replacements, alterations, additions and improvements to and exercise all rights and powers of Trustor in respect to the Personal Property in the exercise of any rights under any of the documents evidencing this loan, Trustor promises and agrees to promptly turn over and deliver complete possession thereof to Beneficiary.

(ii)    Without notice to or demand upon Trustor, make such payments and do such acts as Beneficiary may deem necessary to protect its security interest in the Personal Property, including without limitation, paying, purchasing, contesting or compromising any encumbrance, charge or lien which is prior to or superior to the security interest granted hereunder, and in exercising any such powers or authority to pay all expenses incurred in connection therewith;

(iii)    Require Trustor to assemble the Personal Property or any portion thereof, at a place designated by Beneficiary and reasonably convenient to both parties, and promptly to deliver such Personal Property to Beneficiary, or an agent or representative designated by it. Beneficiary, and its agents and representatives shall have the right to enter upon any of all of Trustor's premises and property to exercise Beneficiary's rights hereunder;

(iv)    Sell, lease or otherwise dispose of the Personal Property at public sale, with or without having the Personal Property at the place of sale, and upon such terms and in such manner as Beneficiary may determine. Beneficiary may be a purchaser at any such sale.

Unless the Personal Property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale of the Personal Property or other intended disposition thereof. Such notice may be mailed to Trustor at the address set forth at the beginning of this Deed of Trust.

(d)    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

**20.3    Foreclosure By Power of Sale**.  If Beneficiary elects to exercise the power of sale granted to Trustee hereunder, Beneficiary shall cause to be given, upon such

18

election, such notice of default and election to sell as may then be required by law. Thereafter, upon the expiration of such time and the giving of such notice of sale as may then be required by law, at the time and place specified in the notice of sale, Trustee shall sell such Property, or any portion thereof specified by Beneficiary, at public auction to the highest bidder for cash in lawful money of the United States. Trustee may, and upon request of Beneficiary shall, from time to time, postpone the sale by public announcement thereof at the time and place noticed therefor. If the Property consists of several lots, parcels or interests, Beneficiary may designate the order in which the same shall be offered for sale or sold. Should Beneficiary desire that more than one such sale or other disposition be conducted, Beneficiary may, at is option, cause the same to be conducted simultaneously, or successively on the same day, or at such different days or times and in such order as Beneficiary may deem to be in its best interest. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. Upon any sale, Trustee shall execute and deliver to the purchaser or purchasers a deed or deeds conveying the Property so sold, but without any covenants or warranty whatsoever, express or implied, whereupon such purchaser or purchasers shall be let into immediate possession.

Except as otherwise required by law, Beneficiary may apply the proceeds of any foreclosure hereunder to payment of the following: (i) the expense of such foreclosure, (ii) the cost of any search or other evidence of title procured in connection therewith, including the premium for any Trustee's Sale Guaranty, and the real property transfer tax on any deed or conveyance, (iii) all sums expended under the terms hereof, not then repaid, with accrued interest at the lesser rate of the maximum interest rate permissible under Nevada law or eighteen percent (18%) per annum, (iv) all other sums secured hereby and (v) the remainder, if any, to the person or persons legally entitled.

Upon any sale or sales made under or by virtue of this section, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Property or any part thereof. In lieu of paying cash for the Property, Beneficiary may make settlement for the purchase price by crediting the Secured Obligations, or any portion thereof, against the sales price of the Property.

Trustor agrees to pay any deficiency arising from any cause after application of the proceeds of the sale held in accordance with applicable law and the provisions hereof.

Covenants 1, 3, 4 (interest at the Note Rate), 5, 6, 7 (reasonable counsel fees), 8 and 9 of NRS 107.030 are hereby adopted by reference and made a part hereof to the extent not inconsistent with any other provisions contained herein.

In accordance with Section 40.512 of the Nevada Revised Statutes **("NRS")**, Beneficiary may waive its lien against the Property or any portion thereof, together with fixtures or personal property thereon, to the extent such property is found to be environmentally impaired, and may exercise any and all rights and remedies of an unsecured creditor against Trustor and all of Trustor's assets and property for the recovery of deficiency, including, without limitation, seeking an attachment order under NRS Chapter 31. No such waiver shall be final or binding on Beneficiary unless and until a final money judgment is obtained against Trustor. As between Beneficiary and Trustor, for purpose of NRS 40.505, Trustor shall have the burden or proving that the release or threatened release was not knowingly or negligently caused or contributed to, or knowingly or willfully permitted or acquiesced to by Trustor or any related party (or any

19

affiliate or agent of Trustor or any related party) and that Trustor made written disclosure of the release to Beneficiary or that Beneficiary otherwise obtained actual knowledge thereof Trustor's obligations hereunder shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Property or this Deed of Trust. For the purposes of any action brought under this Section, Trustor hereby waives the defense of laches and any applicable statute of limitations.

**20.4    Appointment of Receiver**. If a default or an event of default described in Section 20.1 of this Deed of Trust shall have occurred and be continuing, Beneficiary as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property or the interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in Section 20.2(a) and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

**20.5    Remedies Not Exclusive**. Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Instrument or other agreement or any laws now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's right to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by any of the Loan Instruments to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary and either of them may pursue inconsistent remedies.

**20.6    Request for Notice**. Trustor hereby requests a copy of any notice of default and that any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

**21.    Non-Waiver**. The failure on the part of the Beneficiary to promptly enforce any right hereunder shall not operate as a waiver of such right, and the waiver by Beneficiary of any default shall not constitute a waiver of any other or subsequent defaults. Subsequent acceptance of any payment by the holder hereof shall not be deemed a waiver of any default by Trustor, or of Beneficiary's rights hereunder as the result of any sale, agreement to sell,

0128841 Book 231 04/27/2007 Page 99 Page ...

conveyance, or alienation, regardless of holder's knowledge of such default, sale, agreement to sell, conveyance, or alienation at the time of acceptance of such payment.

**22.** **Successors and Assigns**. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the holder and owner of any note secured hereby; or, if the note has been pledged, the pledgee thereof. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**23.** **Substitute Trustee**. Beneficiary may, from time to time or at any time, substitute a Trustee or Trustees to execute the trust hereby created, and when any such substitution has been filed for record in the office of the Recorder of the county in which the Property herein described is situated, it shall be conclusive evidence of the appointment of such Trustee ,or Trustees, and such new Trustee or Trustees shall succeed to all of the powers and duties of the Trustee or Trustees named herein.

**24.** **Due on Sale or Transfer**.

**24.1** In the event the herein-described Property, (including, but not limited to, any existing or subsequently acquired or created Water Asset), or any part thereof, or any interest therein, is transferred or agreed to be transferred, without Beneficiary's prior written consent, all Indebtedness, irrespective of the maturity dates, at the option of the holder hereof, and without demand or notice, shall immediately become due and payable. As used herein, "transferred" means sold, conveyed, alienated, exchanged, transferred by gift, further encumbered, pledged, hypothecated, made subject to an option to purchase, or otherwise disposed of, directly or indirectly, or in trust, voluntarily or involuntarily, by Truster or by operation of law or otherwise. Failure to exercise such option shall not constitute a waiver of the right to exercise this option in the event of subsequent transfer or subsequent agreement to transfer.

**24.2** If Trustor is an entity other than a natural person (such as a corporation or other organization), then all Indebtedness, irrespective of the maturity date, at the option of Beneficiary, and without demand or notice, shall become immediately due and payable if: (a) a beneficial interest in Truster is transferred; (b) there is a withdrawal or removal of a general partner of a partnership or a manager of a limited liability company; (c) these is a transfer in the aggregate of more than 25% of the voting stock of Trustor if Trustor is a corporation, or there is a transfer in the aggregate of more than 25% of the partnership interests or membership interests if Truster is a partnership, limited liability company or similar entity; or (d) Trustor is dissolved or its existence as a legal entity is terminated.

**25.** **Severability**. In the event any one or more of the provisions contained in this Deed of Trust or in any promissory note, guaranty, or other document secured hereby shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Deed of Trust or said promissory note or guaranty, but this Deed of Trust and said promissory notes or guaranties shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein or therein.

21

0128841  Book 259    04/27/2007
         Page   of    Page 25 of 25

**26.** **Notices to Trustor**. The undersigned Trustor agrees that he/she is entitled only to those notices required by applicable law and requests that a copy of any notice of default and of any notice of sale hereunder be mailed to Trustor at the address set forth in the initial paragraph of this Deed of Trust.

**27.** **Exhibits**. All exhibits to this Deed of Trust are considered to be incorporated into and made a part of this Deed of Trust.

**28.** **Joint and Several Liability and Legal Entity Warranty and Certification**. If Trustor consists of more than one person, each will be jointly and severally liable for the faithful performance of all of Trustor's obligations under this Deed of Trust. If Trustor is a legal entity, Truster (and any person signing this Deed of Trust in a representative capacity on behalf of Trustor) represents, warrants and certifies that Trustor is duly constituted under applicable laws and in good standing; that Trustor has the power, authority, and appropriate authorization to execute this Deed of Trust and enter into the transactions described herein and that, when executed, this Deed of Trust, and any document executed by Trustor in connection herewith, shall be valid and legally binding on Trustor. If Trustor is a trust, each trustee executing this Deed of Trust on behalf of the trust also represents, warrants and certifies that this Deed of Trust and any document executed in connection herewith is being executed by all the currently acting trustees of the trust and that the trust has not been revoked, modified, or amended in any manner which would cause any of the foregoing to be incorrect.

**29.** **Non-Merger**. No merger will occur as a result of Beneficiary acquiring any other estate in or any other lien on the Property, unless Beneficiary consents to a merger in writing.

**30.** **Miscellaneous**.

**30.1** **Captions**. As used herein, the word "including" means "including without limitation" and/or "including but not limited to". The captions used in this Deed of Trust are for convenience only and do not define or limit any terms or provisions. No listing of any specific collateral, items, instances or other matters in any way limits the scope or generality of any language of this Deed of Trust.

**30.2** **Acceptance by Trustee**. Trustee accepts this Trust when the Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**30.3** **Captions**. The captions or headings at the beginning of each Section hereof are for the convenience of the parties and are not a part of this Deed of Trust.

**30.4** **Invalidity of Certain Provisions**. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the debt, or if the lien is invalid or unenforceable as to any part of the Trust Estate, the unsecured or partial secured portion of the debt shall be completely paid prior to the payment of the remaining and secured or partially secured portion of the debt, and all payments made on the debt, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of the debt which is not secured or fully secured by the lien of this Deed of Trust. If any provision of the Loan Instruments shall be deemed void or

22

unenforceable, it shall not affect the validity of the remaining provisions thereof which shall be considered.

**30.5    Subrogation**.  To the extent that proceeds of the Note or advances under this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Trust Estate, such proceeds or advances have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether said liens, charges or encumbrances are released.

**30.6    No Merger**.  If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Trust Estate shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates.  In addition, upon the foreclosure of the lien created by this Deed of Trust on the Trust Estate pursuant to the provisions hereof, any leases or subleases then existing and created by Trustor shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice thereof to such tenant or subtenant.

**30.7    Waiver**.  The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided.  The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay said entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid, and Beneficiary or Trustee shall be at all times thereafter and until the entire sum then due shall have been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, entitled to exercise all rights in this instrument conferred upon them, or either of them, upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice.  Consent by Beneficiary to any transaction or action or Trustor which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiver of the rights to require such consent or approval to future or successive transactions or actions.

**30.8    Modifications in Writing**.  This Deed of Trust may not be changed, terminated, or modified orally or in any other manner than by an instrument in writing signed by the party against whom enforcement is sought.

**30.9    Beneficiary's Right to Enter, Inspect and Cure**.  Beneficiary is authorized, by itself, its contractors, agents, employees or workmen, to enter at any reasonable time upon any part of the Property for the purpose of inspecting the same, and for the purpose of performing any of the acts it is authorized to perform under the terms of this Deed of Trust.

**30.10  Counterparts**.  This Deed of Trust may be executed in counterparts, all of which executed counterparts shall together constitute a single document.  Signature pages may be detached from the counterparts and attached to a single copy of this document to physically form one document.

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first above written.

TRUSTOR:

Double U Livestock, LLC
an Oregon Limited Liability Company

By: _____
James A. West, member

By: _____
Carleen J. West, member

By: _____
Clayton J. West, member

By: _____
Mary West, member

By: _____
Wade S. West, member

By: _____
Molly West, member

24

STATE OF NEVADA )
)ss.
COUNTY OF WHITE PINE )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by _JAMES A. WEST_, as _MEMBER_ of _DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF WHITE PINE )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by _CARLEEN J. WEST_, as _MEMBER_ of _DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF WHITE PINE )

This instrument was acknowledged before me on _22 APRIL_, 20_07_ by _CLAYTON J. WEST_, as _MEMBER_ of _DOUBLE U LIVESTOCK_, a _LLC_.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

25

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *MARY S WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No. 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE*)

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *WADE S WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No. 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

STATE OF NEVADA )
)ss.
COUNTY OF *WHITE PINE* )

This instrument was acknowledged before me on *22 APRIL*, 20*07* by *MOLLY WEST*, as *MEMBER* of *DOUBLE U LIVESTOCK*, a *LLC*.

JON L. MULLER
Notary Public - State of Nevada
Appointment Recorded in White Pine County
No. 05-108810-17 Expires September 25, 2010

Notary Public
My Commission Expires: _____

25 B

|||||||||||||||||||||||||||||| 0128841 Book 231    04/27/2007
                                Page   06    Page  26 of 52

# EXHIBIT "A"

## Legal Description

PARCEL 1:

Township 21 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: SE1/4NE1/4
Section 2: S1/2NE1/4; Lot 2
Section 11: NW1/4NW1/4
Section 12: SE1/4SW1/4
Section 13: E1/2NW1/4; W1/2SW1/4
Section 14: N1/2NW1/4; NE1/4SW1/4
Section 21: SW1/4SW1/4
Section 22: NW1/4NW1/4
Section 23: SE1/4SE1/4
Section 26: SW1/4SE1/4
Section 29: SE1/4NE1/4
Section 32: NW1/4SE1/4


Township 22 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 13: SE1/4NW1/4; NW1/4SE1/4
Section 14: W1/2NE1/4; E1/2SE1/4; NW1/4SE1/4
Section 23: E1/2NE1/4
Section 24: SW1/4NW1/4; W1/2SW1/4
Section 25: SE1/4SW1/4; W1/2W1/2
Section 26: NE1/4SE1/4; SW1/4NE1/4
Section 36: E1/2NW1/4; NE1/4SW1/4; SW1/4SW1/4; SW1/4NE1/4; SE1/4


Township 2S North, Range 62 East, M.D.B.&M. (White Pine County)

Section 1: Lot 3
Section 2: Lots 1, 2, 3, 5, 6, and 12; SE1/4SE1/4
Section 3: Lot 9; NW1/4SE1/4
Section 5: Lot 6
Section 7: SE1/4SW1/4; S1/2SE1/4
Section 8: SW1/4SW1/4
Section 11: S1/2NE1/4
Section 12: SW1/4NW1/4; N1/2SW1/4
Section 13: SW1/4SW1/4
Section 14: NW1/4NE1/4; SE1/4NE1/4; E1/2SE1/4
Section 17: W1/2NW1/4
Section 18: NE1/4; E1/2NW1/4
Section 24: SE1/4NE1/4
Section 25: W1/2NW1/4
Section 26: N1/2NE1/4

26

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 21: NW1/4NE1/4
Section 22: N1/2NW1/4; SE1/4NW1/4; NW1/4NE1/4
Section 24 SW1/4SE1/4
Section 25: NW1/4NE1/4
Section 29: SE1/4NE1/4; N1/2SE1/4; SW1/4SE1/4; E1/2SW1/4
Section 32: NE1/4NW1/4; NW1/4NE1/4
Section 36: S1/2SE1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.


Township 26 North, Range 62 East, M.D.B.&M. (Elko County)

Section 15: S1/2SW1/4; SW1/4SE1/4
Section 16: SW1/4NW1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 26, 1943 in Book 137, Page 203 of Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.


Township 27 North, Range 62 East, M.D.B.&M. (Elko County)

Section 1: SW1/4SE1/4; S1/2SW1/4
Section 2: S1/2SE1/4; S1/2SW1/4; NE1/4SW1/4
Section 12: NE1/4NW1/4
Section 28: W1/2SE1/4
Section 33: SE1/4SW1/4


Township 28 North, Range 62 East, M.D.B.&M. (Elko County)

Section 3: S1/2SW1/4
Section 10: NW1/4NW1/4


Township 26 North, Range 63 East, M.D.B.&M.

Section 5: SE1/4SE1/4 (Elko County
Section 28: NE1/4NW1/4 (White Pine County)
Section 31: S1/2SW1/4 (White Pine County)

27

Township 27 North, Range 63 East, M.D.B.&M. (Elko County)

Section 4: SW1/4SE1/4
Section 5: SE1/4NE1/4
Section 7: SW1/4SE1/4
Section 17: SW1/4NW1/4

Township 27 North, Range 67 East, M.D.B.&M.

Section 29: NW1/4SE1/4

Township 26 North, Range 66 East, M.D.B.&M.

Section 12: SW1/4SE1/4

PARCEL 2:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NE1/4SE1/4
Section 22: SE1/4NE1/4; NE1/4NW1/4; E1/2SE1/4
section 23: W1/2SW1/4

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 22: S1/2NE1/4

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion
of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma
Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records,
White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko
County, Nevada.

PARCEL 3:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 3: NW1/4SW1/4SE1/4; NE1/4SE1/4SW1/4; SE1/4NE1/4SW1/4

28

PARCEL 4;

Township 26 North, Range 62 East, M.D.B.&M.

Section 21: NW1/4; S1/2NE1/4; NE1/4NE1/4 (White Pine County)
Section 22: SW1/4NW1/4 (White Pine County)
Section 33: SW1/4; SE1/4NW1/4; SW1/4NE1/4; W1/2SE1/4; (White Pine County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

Township 25 North, Range 62 East, M.D.B.&M.

Section 22: NE1/4NE1/4 (White Pine County)
Section 23: SW1/4SE1/4; NE1/4SE1/4; W1/2NW1/4; SE1/4NW1/4; E1/2SW1/4 (White Pine County)

Township 23 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 5: Lot 4 of NW1/4
Section 6: Lot 2 of NE1/4

Township 24 North, Range 63 East, M.D.B.&M. (White Pine County)

Section 31: N1/2SW1/4

Township 26 North, Range 63 East, M.D.B.&M.

Section 34: W1/2SE1/4 (White Pine County)

PARCEL 5:

Township 25 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 15: SE1/4SW1/4; S1/2SE1/4
Section 22: NW1/4NE1/4

29

PARCEL 6:

Township 26 North, Range 62 East, M.D.B.&M.

Section 16: E1/2SW1/4; S1/2SE1/4; W1/2SW1/4 (Elko County)

Excepting therefrom that certain cemetery known as the Stratton Cemetery Tract over a portion of Township 26 North, Range 62 East, M.D.B.&M., location not disclosed, reserved by Emma Stratton, et al, in deed recorded June 16, 1943 in Book 137, Page 203, Real Estate Records, White Pine County, Nevada, and September 21, 1984 in Book 472, Page 35, Official Records, Elko County, Nevada.

PARCEL 7:

Township 26 North, Range 62 East, M.D.B.&M. (White Pine County)

Section 32: SE1/4NE1/4; E1/2SE1/4
Section 33: SW1/4NW1/4

PARCEL 8:

Township 24 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NE1/4

Township 25 North, Range 60 East, M.D.B.&M. (White Pine County)

Section 2: SE1/4NW1/4

PARCEL 9:

The Southeast Quarter (SE1/4) of the Southeast Quarter (SE1/4) of Section 3, Township 3 South, Range 57 East, M.D.B.&M. in Lincoln County, Nevada.

# EXHIBIT 6

# EXHIBIT 6

# SECURITY AGREEMENT

**THIS AGREEMENT** is made between __Double U Livestock, LLC, an Oregon Limited Liability Company; James A. West and Carleen J. West, husband and wife; Clayton J. West and Mary West, husband and wife; and Wade S. West and Molly West, husband and wife, (All As Individuals)__ ("Debtor") and **TRI-STATE LIVESTOCK CREDIT CORPORATION**, a California corporation of Rancho Cordova, California, ("Secured Party").

**WHEREAS**, Debtor is or will be indebted to Secured Party and hereafter expects to seek additional loans and advances from the Secured Party and desires to give security for all such indebtedness and future advances,

**NOW, THEREFORE**, Debtor grants to Secured Party a security interest in the property described on the reverse side of this agreement ("Collateral"). The Collateral is security for (1) payment of any loan made concurrently with this agreement, (2) payment of all existing and future indebtedness of Debtor to Secured Party, (3) payment of all notes evidencing the indebtedness, and (4) performance of Debtor's obligations under this agreement and any Loan Agreement between Debtor and Secured Party.

Debtor warrants, covenants and agrees with Secured Party that:

1. **WARRANTIES** - (A) All statements contained in the Debtor's loan application(s) are true and correct; (B) Proceeds of all loans will be used for the purposes agreed upon; (C) Debtor is the owner of the Collateral free and clear of any lien, encumbrance or security interest except as stated on the Debtor's loan application(s); and (D) Debtor will defend the Collateral against any claim or demand adverse to Secured Party's interest.

2. **PAYMENT** - Debtor will pay when due all indebtedness secured by the agreement, together with interest, and all rent, taxes, levies, assessments or other claims which are or may become liens against the Collateral.

3. **INSURANCE** - Debtor will insure the Collateral in such amounts and in such manner as may be required by the Secured Party and will pay all insurance premiums when due.

4. **CARE OF COLLATERAL** - Debtor will care for the Collateral in a good and husbandlike manner, will keep in good standing all brands and rights to water, range land, grazing privileges and leases held by Debtor and used in connection with the Collateral, and will not further encumber, sell, remove or otherwise dispose of the collateral or said rights without the written consent of the Secured Party.

5. **INSPECTION** - Secured Party shall have the right to inspect the Collateral at any time, and to that end Debtor agrees to gather the Collateral at a place to be designated by Secured Party which is reasonably convenient to both parties.

6. **PRESERVATION OF COLLATERAL** - If the Debtor fails to attend to and care for the Collateral as agreed, the Secured Party at its option may enter upon Debtor's premises, exercise all Debtor's rights to use brands, water, range land, grazing privileges, and leased land, and perform all things which may be necessary to preserve or market the Collateral at Debtor's expense or if Debtor fails to pay, when due, any rent, taxes, levies, assessments, insurance premiums or other claims as agreed, the Secured Party at its option may pay the same or any part thereof without waiving its right to enforce this agreement for default, and all such expenses incurred and amounts paid by Secured Party, including reasonable attorney's fees and legal expenses, shall be added to the indebtedness hereby secured and bear interest at the Secured Party's then current loan rate from the date of payment.

7. **DUE DATE** - Upon the death of Debtor or upon the filing by or against Debtor of a petition for relief under the Federal Bankruptcy Act or under the insolvency laws of any state or upon the making by Debtor of an assignment for the benefit of creditors or upon the levy by a creditor upon any of the Collateral, or in case Secured Party deems itself unsecured at any time, the entire indebtedness secured hereby shall, at the option of Secured Party, become immediately due and payable.

8. **DEFAULT** - Upon default by the Debtor in the performance of any of the covenants hereof or upon the breech of any warranties herein contained, the entire indebtedness hereby secured shall, at the option of Secured Party, become immediately due and payable and the Secured Party may proceed to enforce its security interest by any means provided herein or under the Uniform Commercial Code - Secured Transactions, or otherwise allowed by law. Upon demand, Debtor shall assemble the Collateral and make it available to Secured Party on the premises of the Debtor, or at any other place designated by Secured Party which is reasonably convenient to both parties. All reasonable expenses, including legal expenses and attorney's fees, incurred by the Secured Party in the exercise of its right to take procession and dispose of the Collateral must be paid in order to redeem the Collateral, or in the event of sales, shall be paid from the proceeds thereof.

9. **OPTIONAL ADVANCES** - Nothing herein shall be construed to obligate the Secured Party to make any loans or advances to the Debtor.

10. **SETOFF** - Secured Party may at any time exercise the right of setoff with respect to any money held for the account of Debtor or with respect to any of Debtor's stock or stock rights in the Secured Party.

11. **PAYMENT OF PROCEEDS** - At any time the Secured Party may notify an account debtor or holder of any proceeds from sale of Collateral that it has a security interest in said account or proceeds and thereafter receive direct payment from said party.

12. **RELEASES** - Secured Party may release all the Collateral or any portion thereof with or without requiring a reduction of the debt hereby secured and said release shall not affect Debtor's liability to pay the remaining indebtedness.

All rights of Secured Party hereunder shall inure to the benefit of its successors and assigns; and all obligations of the Debtor shall bind its heirs, executors, administrators, successors and assigns. If there be more than one Debtor their obligations hereunder shall be joint and several.

# DESCRIPTION OF COLLATERAL

**CROPS:**

All crops now standing or planted, and all crops planted or grown or that may be planted or grown on the land described below within the maximum period allowed by the Uniform Commercial Code of the state in which said crops are grown, or in the absence of a maximum period provided therein, within five years from the date hereof and thereafter until payment in full of all indebtedness secured by this agreement. If no crops are to be included as collateral, write "None" here:

**LIVESTOCK** (Including Debtor's brand registration number(s):

| Number | Kind or Class | Age | Breed or Description | Brand | Location of Brand | Tattoo or Earmark Right | Left |
|--------|---------------|-----|----------------------|-------|-------------------|-------------------------|------|
| 7,466 | Ewes, Lambs, Bucks & Cattle. | All Ages. | Various breeds, mixed breeds, and crossbreeds. | | Withers #850950 Oregon | | |
| | | | | | Withers #14513 Nevada | | |
| | | | | | **Right Hip** #14512 Nevada | | |
| **ALL LIVESTOCK NOW OWNED OR HEREAFTER ACQUIRED** | | | | All livestock bear one or more of these brands or marks | | | |

**EQUIPMENT AND OTHER COLLATERAL:**

All farm products, equipment, inventory, accounts, documents, chattel paper, instruments, contracts, and general intangibles now owned or hereafter acquired, including but not limited to all livestock, interest in livestock or its born or unborn progeny, leasehold interests in livestock, and all livestock feed.

All property of the type herein described now owned or hereafter acquired by the Debtor, including but not limited to additions, replacements and increases; and all equipment, feed, hay, grain, fodder, ensilage, chemicals, fertilizers, medicines and supplies used in Debtor's farming or livestock operations now located or hereafter to be located on properties owned or leased by the Debtor.

All products of the above Collateral and all proceeds from sale of said collateral or products.

**Unless otherwise stated all Collateral is or will be located on the land situated in White Pine, Elko, Nye and Lincoln County(ies), State of Nevada, and described or commonly known as follows:**

**Double U Livestock located approximately 67 miles NW of Ely, NV in Butte Valley.**

All other locations (owned, leased, rented) as determined in the normal course of business.

Dated: **February 19, 2008**

### For signatures, see Attachment "A", attached hereto and made a part hereof.

*(Borrowers, Please Initial Lines Below)*



**Attachment "A"**
**to Security Agreement**
**dated February 19, 2008 for Double U Livestock, LLC**

Double U Livestock, LLC
an Oregon Limited Liability Company

By: _James A. West_          X _James A. West_
    James A. West, member          James A. West

By: X _Carleen J. West_          X _Carleen J. West_
    Carleen J. West, member          Carleen J. West

By: X _Clayton J. West_          X _Clayton J. West_
    Clayton J. West, member          Clayton J. West

By: X _Mary S. West_          X _Mary S. West_
    Mary West, member          Mary West

By: X _Wade West_          X _Wade West_
    Wade S. West, member          Wade S. West

By: X _Molly West_          X _Molly West_
    Molly West, member          Molly West
              (All As Individuals)

# EXHIBIT 7

# EXHIBIT 7

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Judy Vertullo (916) 971-3800

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

PP Acct. #750182
Tri-State Livestock Credit Corporation
P.O. Box 15890
Sacramento, CA 95852

Uniform Commercial Code    Initial Financing Statement

2003002936-3          Pgs: 1
DOUBLE U LIVESTOCK LLC
Filed: 01-29-2003 02:02 PM

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME
Double U Livestock, LLC

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS 61778 Rhea Creek Road | CITY Ione | STATE OR | POSTAL CODE 97843 | COUNTRY USA |
|---|---|---|---|---|

| 1d. TAX ID #: SSN OR EIN 93-1267259 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLC | 1f. JURISDICTION OF ORGANIZATION Oregon | 1g. ORGANIZATIONAL ID #, if any 93-1267259 □ NONE |
|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

2a. ORGANIZATION'S NAME

| 2b. INDIVIDUAL'S LAST NAME West | FIRST NAME James | MIDDLE NAME A. | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS 61778 Rhea Creek Road | CITY Ione | STATE OR | POSTAL CODE 97843 | COUNTRY USA |
|---|---|---|---|---|

| 2d. TAX ID #: SSN OR EIN 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 | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any □ NONE |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME
Tri-State Livestock Credit Corporation

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 3c. MAILING ADDRESS P.O. Box 15890 | CITY Sacramento | STATE CA | POSTAL CODE 95852 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

All farm products, equipment, inventory, accounts, documents, chattel paper, instruments, contracts, and general intangibles now owned or hereafter acquired, including but not limited to all livestock, interests in livestock or its born or unborn progeny, leasehold interests in livestock, all livestock feed, and all inventory.

TRACK

11/07

5. ALTERNATIVE DESIGNATION [if applicable]: LESSEE/LESSOR  CONSIGNEE/CONSIGNOR  BAILEE/BAILOR  SELLER/BUYER  AG. LIEN  NON-UCC FILING

6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional]  All Debtors  Debtor 1  Debtor 2

8. OPTIONAL FILER REFERENCE DATA
S/S NV  1-15-03

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

ACKNOWLEDGEMENT COPY

# EXHIBIT 8

**EXHIBIT 8**

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Judy Vertullo                                            916-570-1388

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Judy Vertullo
Tri-State Livestock Credit Corp.
2880 SUNRISE BLVD., #224
RANCHO CORDOVA, CA 95742

Filed in the office of

Ross Miller
Secretary of State
State of Nevada

Document Number
**2007036260-8**

Filing Date and Time
**11/02/2007 9:35 AM**

(This document was filed electronically.)
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is |
|---|---|
| 2003002935-3 | to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. ☐ **TERMINATION**: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☑ **CONTINUATION**: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor _or_ ☐ Secured Party of record. Check only _one_ of these two boxes.
Also check _one_ of the following three boxes _and_ provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. ☐ DELETE name: Give record name to be deleted in item 6a or 6b. ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only _one_ box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | TRI-STATE LIVESTOCK CREDIT CORPORATION | | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
S/S NV 11-2-07 DOUBLE U LIVESTOCK

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Judy Vertullo                                    916-570-1388

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Judy Vertullo
Tri-State Livestock Credit Corp.
2880 SUNRISE BLVD., #224
RANCHO CORDOVA, CA 95742

| Filed in the office of | Document Number |
|---|---|
| *Ross Miller* (signature) | 2007037061-7 |
| Ross Miller | Filing Date and Time |
| Secretary of State | 11/08/2007 8:48 AM |
| State of Nevada | |

(This document was filed electronically.)
**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE #
2003029336-3

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial). Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☑ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6. CURRENT RECORD INFORMATION:

6a. ORGANIZATION'S NAME
TRI-STATE LIVESTOCK CREDIT CORPORATION

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

7a. ORGANIZATION'S NAME
TRI-STATE LIVESTOCK CREDIT CORPORATION

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2880 SUNRISE BLVD., #224 | RANCHO CORDOVA | CA | 95742 | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only **one** box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of **DEBTOR** authorizing this Amendment.

9a. ORGANIZATION'S NAME
TRI-STATE LIVESTOCK CREDIT CORPORATION

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
S/S NV  11-8-07  DOUBLE U

TRACK

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# EXHIBIT 9

# EXHIBIT 9

# Double U Historical Tax-Based Cash Flow Review

| A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Calendar Year | Reported Taxable Income | Taxes Paid | Depreciation | Gross Cash Flow (B-C+D) | Total Interest Paid Per Tax Return | Cash Available to service principal and interest (E+F) | Actual Interest Paid Tri-State | Estimated Interest Paid Paris | Remaining Interest Went Where? | Estimated Paris Principal | Cash Available for Debt Service after Paris was Paid (G-I-K) |
| 2005 | ($390,471) | $0 | $93,980 | ($296,491) | $201,157 | ($95,334) | $22,986 | $72,000 | $106,171 | $33,000 | ($200,334) |
| 2006 | ($622,310) | $0 | $99,535 | ($522,775) | $205,643 | ($317,132) | $47,848 | $69,000 | $88,795 | $36,000 | ($422,132) |
| 2007 | ($417,088) | $0 | $105,256 | ($311,832) | $174,283 | ($137,549) | $79,957 | $66,000 | $28,326 | $39,000 | ($242,549) |
| 2008 | ($63) | $0 | $111,378 | $111,315 | $88,605 | $199,920 | $9,087 | $63,000 | $16,518 | $42,000 | $94,920 |
| 2009 | ($8,168) | $0 | $109,092 | $100,924 | $72,998 | $173,922 | $0 | $60,000 | $12,998 | $45,000 | $68,922 |
| 2010 | ($25,955) | $0 | $102,560 | $76,605 | $188,466 | **$265,071** | $0 | $67,000 | **$121,466** | $50,000 | **$148,071** |

# EXHIBIT 10

# EXHIBIT 10

**Amy Tirre**

**From:** Steve Hilsabeck [mailto:Steve.Hilsabeck@farmcreditbank.com]
**Sent:** Wednesday, November 02, 2011 12:09 PM
**To:** Robert Bergsten
**Cc:** Carolyn Owen
**Subject:** Loan eligibility and spreads

Bob,
You asked for comments on the eligibility of 30-year loan amortizations and what is an appropriate spread on a high risk loan.

The following is the bank's lending authority as it relates to the Farm Credit Act and FCA Regulations regarding loans to OFI's and loan terms that are eligible for Farm Credit funding:

----------------------------------
Under section 1.7(b)(1)(B) of the Farm Credit Act of 1971, as amended (the "Act"), Farm Credit Banks are authorized to fund OFIs as follows:

http://www.fca.gov/handbook.nsf/24123e431e73ccdb8525643c007e3fec/abdbc898ef4dc4e58525643c007e05df?Open Document
        The Farm Credit Banks are authorized to make loans and extend other similar financial assistance to and to discount for or purchase from-
      . . .
      (B) any national bank, State bank, trust company, agricultural credit corporation, incorporated livestock loan company, savings institution, credit union, or any association of agricultural producers engaged in the making of loans to producers or harvesters of aquatic products, any note, draft, or other obligation with the institution's endorsement or guarantee, the proceeds of which note, draft, or other obligations have been advanced to persons and for purposes eligible for financing by production credit associations as authorized by this Act.

Section 1.10(b) of the Farm Credit Act of 1971, as amended, provides as follows:

http://www.fca.gov/handbook.nsf/24123e431e73ccdb8525643c007e3fec/14f03e6b95fb3d228525643c007e05e2?Open Document
        Intermediate Credit. Loans, other than real estate loans, and discounts made under the provisions of this title shall be repayable in not more than 7 years (15 years if made to producers or harvesters of aquatic products) from the time that such are made or discounted by the Farm Credit Bank, except that the Board of Directors, under regulations of the Farm Credit Administration, may approve policies permitting loans, advances, or discounts (other than those made to producers or harvesters of aquatic products) to be repayable in not more than 10 years from the time that such are made or discounted by such bank.

FCA regulation section 614.4560(b) provides with respect to the terms of OFI funding that,

        http://www.fca.gov/handbook.nsf/327ac6bc1652f1c18525646b006af78b/dff1c073d5295edb8525646b006b3270?OpenDocument
        (b) A Farm Credit Bank or agricultural credit bank shall extend funding, discount and other similar financial assistance to an OFI only for purposes and terms authorized under sections 1.10(b) and 2.4(a) and (b) of the Act.

Section 614.4040(a) of FCA's regulations further provides with respect to funding of production credit associations, which also applies to <u>OFI funding</u>,


<u>http://www.fca.gov/handbook.nsf/327ac6bc1652f1c18525646b006af78b/ab2cda284095450a8525646b006b3218?OpenDocument</u>

§ 614.4040 Production credit associations.
(a) Loan terms.
(1) Production credit associations are authorized to make or guarantee loans and other similar financial assistance for the following terms:
(i) Not more than 7 years;
(ii) More than 7 years, but not more than 10 years, subject to authorization in policies approved by the funding bank;
(iii) Not more than 15 years to producers or harvesters of aquatic products for major capital expenditures, including but not limited to the purchase of vessels, construction or purchase of shore facilities, and similar purposes directly related to the producing or harvesting operation;
(2) Subject to policies approved by the funding bank, production credit associations may amortize loans over a period greater than the loan terms authorized under paragraph (a)(1) of this section, provided that:
(i) The loan is amortized over a period not to exceed 15 years;
(ii) The loan may be refinanced only if the lender determines, at the time of refinancing, that the loan meets its loan policy and underwriting criteria;
(iii) Any refinancing may not extend repayment beyond 15 years from the date of the original loan; and
(iv) The loan is not being made solely for the purpose of acquiring unimproved real estate; and
(3) Short- and intermediate-term loans shall be made with maturities that are appropriate for the purpose and underlying collateral of the loan and that comply with an institution's loan underwriting standards adopted pursuant to § 614.4150 and the general requirements of § 614.4200 of this part.

---------------------------------

Accordingly, any loan that has a term greater than 10 years and/or a an amortization period greater than 15 years would not fall within the normal lending authorities of production credit associations or OFI under the Act and FCA regulations, and therefore, Farm Credit Bank of Texas funding would not ordinarily be available for such a loan.

As it relates to a spread to compensate a bank for risk in a loan, the following is generally expected in this market:
    -a loan spread to a well-heeled, high desirable customer would be in the 1.50% to 2.00% range
    -a loan spread on an average customer would be in the 2.50% to 3.50% range
    -a loan spread on a high risk borrower that exhibits many stressful characteristics would be in the 5.00% to 7.50% range
It's always tough to pinpoint a spread on a loan, but it's fair to say the spread should be what the market will bear. You are deploying your stockholders' capital in a market full of unknowns. A stockholder should hold you and your board accountable for receiving a return commensurate with the risk inherit in a loan, anything short of that is unsafe and unsound.

Feel free to use as needed and let me know if you need anything else.

Thanks….Steve

*****************************************************************
<u>Steve Hilsabeck</u> Vice President-Relationship Manager
Farm Credit Bank of Texas          <u>www.findfarmcredit.com</u>
4801 Plaza on The Lake Drive | Austin, TX 78746
☎ (W) 512.483.9253 (C) 512.406.1713 | 🖷 512.483.9223
✉ <u>steve.hilsabeck@farmcreditbank.com</u>
*****************************************************************

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified

that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

# EXHIBIT "11"

# EXHIBIT "11"

**Amy Tirre**

| | |
|---|---|
| **From:** | Dennis L. Barnett, CPA [dennis@barnettandmoro.com] |
| **Sent:** | Tuesday, November 01, 2011 4:15 PM |
| **To:** | Amy Tirre |
| **Subject:** | Jim West Interest |

Hi Amy:

Jim West ask that I provide you with the amounts and payees of interest on the 2006-2010 tax returns.

Here it is by year.

**2006**

| | |
|---|---|
| Bank of Eastern Oregon operating line | $80,644.50 |
| Paris Family Contract | 70,042.32 |
| Tri-state Livestock | 47,848.18 |
| First National | 1,886.37 |
| MBNA | 184.00 |
| AA Financial | 4,743.00 |
| Bank of America | 1.18 |
| Other | 294.00 |
| | 205,643.55 |

**2007**

| | |
|---|---|
| Bank of Eastern Oregon | 8,844.93 |
| Paris Family Contract | 67,967.18 |
| Tri-state Livestock | 75,242.04 |
| Clay's op-line interest | 17,425.90 |
| Other | 4,803.23 |
| | 174,283.28 |

**2008**

| | |
|---|---|
| Paris Family Contract | $65,874.00 |
| Community Bank | 10,026.94 |
| Bank of Eastern Oregon | 19,131.00 |
| Great Basin Bank | 68,612.40 |
| Op line—per Clay | 10,639.00 |
| | 174,283.34 |

**2009**

| | |
|---|---|
| Paris Family Contract | $60,225.80 |
| Tri-State Livestock(fees) | 3,415.00 |
| Clay op line | 9,357.00 |
| | 72,997.80 |

**2010**

| | |
|---|---|
| Tri-state Livestock | 128,747.55 |
| Paris Family Contract | 59,718.51 |
| | 188,466.06 |

This is per information gathered to prepare their tax returns.

Thanks,
Dennis Barnett

Barnett and Moro, PC

# EXHIBIT "12"

# EXHIBIT "12"

TRI-STATE LIVESTOCK CREDIT CORP
2880 SUNRISE BLVD #224
RANCHO CORDOVA, CA 95742

Run Date: 1/05/2010

2009

For Period: 1/01/2009
Thru: 12/31/2009

DOUBLE U LIVESTOCK LLC
HC 33 BOX 33660
ELY              NV 89301

Maturity Date: 1/06/2009

Year End Statment of Interest Paid:

Loan #: 5563-05

For period  1/01/09 to 12/31/09      Interest Paid:

.00

**CUSTOMERS PLEASE NOTE THE FOLLOWING**

If your loan renewed in the current year, you should have two statements
enclosed.  One statement is for the loan up until renewal date and the
second statement is for the loan after the renewal date.  To obtain your total
interest for the entire year, please add the numbers from the two statements.
If you have a question on this, please do not hesitate to call us
at 800-778-8734.

**CUSTOMERS TAX PREPARERS PLEASE NOTE THE FOLLOWING**

Our loan(s) with this customer requires that a copy of the tax
return(s) (of all liable parties) to be provided to Tri-State
Livestock as soon as available.  It would be greatly appreciated if
you could send or email a copy of the federal return only to Tri-State
directly.  Email to: taxreturns@tslcc.com or mail to: 2880 Sunrise Blvd.,
#224, Rancho Cordova, CA 95742.

Thank You

Tri-State Livestock Credit Corporation Management



SCHEDULE F
(Form 1040)

Department of the Treasury
Internal Revenue Service (99)

OMB No. 1545-0074

**Profit or Loss From Farming**

► Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
► See Instructions for Schedule F (Form 1040).

**2009**

Attachment
Sequence No. 14

| Name of proprietor | Social security number (SSN) |
|---|---|
| DOUBLE U LIVESTOCK, L.L.C. | |

**A** Principal product. Describe in one or two words your principal crop or activity for the current tax year.

SHEEP AND CATTLE

**B** Enter code from Part IV
► 112400

**C** Accounting method: (1) [X] Cash (2) [ ] Accrual

**D** Employer ID number (EIN), if any
93-1267259

**E** Did you 'materially participate' in the operation of this business during 2009? If 'No,' see instructions for limit on passive losses ................ [X] Yes [ ] No

## Part I — Farm Income — Cash Method. Complete Parts I and II (Accrual method. Complete Parts II & III, & Part I, line 11.)
Do not include sales of livestock held for draft, breeding, sport, or dairy purposes. Report these sales on Form 4797.

| | | | |
|---|---|---|---|
| 1 | Sales of livestock and other items you bought for resale............ | 1 | |
| 2 | Cost or other basis of livestock and other items reported on line 1............. | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | |
| 4 | Sales of livestock, produce, grains, and other products you raised................ | 4 | 262,043. |
| 5a | Cooperative distributions (Form(s) 1099-PATR).... 5a | 5b Taxable amount...... 5b | |
| 6a | Agricultural program payments (see instructions).. 6a 93,822. | 6b Taxable amount...... 6b | 93,822. |
| 7 | Commodity Credit Corporation (CCC) loans (see instructions): | | |
| a | CCC loans reported under election ....................................... | 7a | |
| b | CCC loans forfeited ............................ 7b | 7c Taxable amount...... 7c | |
| 8 | Crop insurance proceeds and federal crop disaster payments (see instructions): | | |
| a | Amount received in 2009.......................... 8a | 8b Taxable amount...... 8b | |
| c | If election to defer to 2010 is attached, check here.... ► [ ] | 8d Amount deferred from 2008.... 8d | |
| 9 | Custom hire (machine work) income.......................................... | 9 | |
| 10 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions)............................................ | 10 | 105,018. |
| 11 | **Gross income.** Add amounts in the right column for lines 3 through 10. If you use the accrual method to figure your income, enter the amount from Part III, line 51........................ ► | 11 | 460,883. |

## Part II — Farm Expenses — Cash and Accrual Method.
Do not include personal or living expenses such as taxes, insurance, or repairs on your home.

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 | Car and truck expenses (see instructions). Also attach Form 4562................. | 12 | | 25 Pension and profit-sharing plans....... | 25 | |
| 13 | Chemicals..................... | 13 | | 26 Rent or lease (see instructions): | | |
| 14 | Conservation expenses (see instructions) ............... | 14 | | a Vehicles, machinery, and equipment.............. | 26a | 5,492. |
| 15 | Custom hire (machine work)..... | 15 | 22,960. | b Other (land, animals, etc)............. | 26b | |
| 16 | Depreciation and section 179 expense deduction not claimed elsewhere (see instructions)...... | 16 | 109,092. | 27 Repairs and maintenance............. | 27 | 11,212. |
| | | | | 28 Seeds and plants................... | 28 | |
| | | | | 29 Storage and warehousing............. | 29 | 12,241. |
| 17 | Employee benefit programs other than on line 25........... | 17 | | 30 Supplies........................ | 30 | |
| 18 | Feed............................ | 18 | 25,639. | 31 Taxes........................... | 31 | 4,754. |
| 19 | Fertilizers and lime............. | 19 | | 32 Utilities .......................... | 32 | 3,837. |
| 20 | Freight and trucking............. | 20 | 10,551. | 33 Veterinary, breeding, and medicine..... | 33 | 4,191. |
| 21 | Gasoline, fuel, and oil........... | 21 | 30,211. | 34 Other expenses (specify): | | |
| 22 | Insurance (other than health).... | 22 | 2,351. | a See Statement 2 | 34a | 66,378. |
| 23 | Interest: | | | b _____ | 34b | |
| a | Mortgage (paid to banks, etc).... | 23a | | c _____ | 34c | |
| b | Other........................... | 23b | 72,998. | d _____ | 34d | |
| 24 | Labor hired (less employment credits) ... | 24 | 85,344. | e _____ | 34e | |
| | | | | f _____ | 34f | |
| 35 | **Total expenses.** Add lines 12 through 34f. If line 34f is negative, see instructions ........................ ► | 35 | | | | 467,251. |
| 36 | **Net farm profit or (loss).** Subtract line 35 from line 11. Partnerships, see instructions. | | | | 36 | -6,368. |

• If a profit, enter the profit on both **Form 1040, line 18,** and **Schedule SE, line 1a;** on **Form 1040NR, line 19;** or on **Form 1041, line 6.**
• If a loss, you **must** go on to line 37.

37  If you have a loss, you **must** check the box that describes your investment in this activity (see instructions).
• If you checked 37a, enter the loss on both **Form 1040, line 18,** and **Schedule SE, line 1a;** on **Form 1040NR, line 19;** or on **Form 1041, line 6.**
• If you checked 37b, you **must** attach Form 6198. Your loss may be limited.

37a [ ] All investment is at risk.
37b [ ] Some investment is not at risk.

BAA For Paperwork Reduction Act Notice, see instructions.    FDIZ0212L  06/09/09    Schedule F (Form 1040) 2009

6

# EXHIBIT "13"

# EXHIBIT "13"

TRI-STATE LIVESTOCK CREDIT CORP
2880 SUNRISE BLVD #224
RANCHO CORDOVA, CA 95742

2010

Run Date: 1/04/2011

For Period: 1/01/2010
Thru: 12/31/2010

DOUBLE U LIVESTOCK LLC
2880 SUNRISE BLVD, STE 224
RANCHO CORDOVA CA 95742
Sent to correct address

Maturity Date: 1/06/2009

Year End Statment of Interest Paid:

Loan #: 5563-05

For period  1/01/10 to 12/31/10        Interest Paid: Nonaccrual .00

OK'd + sent by Rob

**CUSTOMERS PLEASE NOTE THE FOLLOWING**
_____

If your loan renewed in the current year, you should have two statements
enclosed.  One statement is for the loan up until renewal date and the
second statement is for the loan after the renewal date.  To obtain your total
interest for the entire year, please add the numbers from the two statements.
If you have a question on this, please do not hesitate to call us
at 800-778-8734.

**CUSTOMERS TAX PREPARERS PLEASE NOTE THE FOLLOWING**
_____

Our loan(s) with this customer requires that a copy of the tax
return(s) (of all liable parties) to be provided to Tri-State
Livestock as soon as available.  It would be greatly appreciated if
you could send or email a copy of the federal return only to Tri-State
directly.  Email to: taxreturns@tslcc.com or mail to: 2880 Sunrise Blvd.,
#224, Rancho Cordova, CA 95742.

Thank You

Tri-State Livestock Credit Corporation Management

SCHEDULE F
(Form 1040)

Department of the Treasury
Internal Revenue Service (99)

OMB No. 1545-0074

**2010**

Attachment
Sequence No. **14**

# Profit or Loss From Farming

► Attach to Form 1040, Form 1040NR, Form 1041, Form 1065, or Form 1065-B.
► See Instructions for Schedule F (Form 1040).

Name of proprietor: **DOUBLE U LIVESTOCK, L.L.C.**

Social security number (SSN)

**A** Principal product. Describe in one or two words your principal crop or activity for the current tax year.
**SHEEP AND CATTLE**

**B** Enter code from Part IV
► **112400**

**D** Employer ID number (EIN), if any
**93-1267259**

**C** Accounting method: (1) [X] Cash (2) [ ] Accrual

**E** Did you 'materially participate' in the operation of this business during 2010? If 'No,' see instructions for limit on passive losses .................. [X] Yes [ ] No

## Part I — Farm Income — Cash Method. Complete Parts I and II (Accrual method. Complete Parts II & III, & Part I, line 11.)
Do not include sales of livestock held for draft, breeding, sport, or dairy purposes. Report these sales on Form 4797.

| | | | |
|---|---|---:|---:|
| 1 | Sales of livestock and other items you bought for resale. | 1 | |
| 2 | Cost or other basis of livestock and other items reported on line 1 ............. | 2 | |
| 3 | Subtract line 2 from line 1. | 3 | |
| 4 | Sales of livestock, produce, grains, and other products you raised ................ | 4 | |
| 5a | Cooperative distributions (Form(s) 1099-PATR).... 5a | | |
| 5b | Taxable amount ..... | 5b | |
| 6a | Agricultural program payments (see instructions) ... 6a | | |
| 6b | Taxable amount ..... | 6b | |
| 7 | Commodity Credit Corporation (CCC) loans (see instructions): | | |
| a | CCC loans reported under election. .............. | 7a | |
| b | CCC loans forfeited........................ 7b | | |
| 7c | Taxable amount ..... | 7c | |
| 8 | Crop insurance proceeds and federal crop disaster payments (see instructions): | | |
| a | Amount received in 2010....................... 8a | | |
| 8b | Taxable amount ..... | 8b | |
| c | If election to defer to 2011 is attached, check here.... ► [ ] | 8d Amount deferred from 2009.... | 8d | |
| 9 | Custom hire (machine work) income ................ | 9 | |
| 10 | Other income, including federal and state gasoline or fuel tax credit or refund (see instructions) ................ | 10 | 526,551. |
| 11 | **Gross income.** Add amounts in the right column for lines 3 through 10. If you use the accrual method to figure your income, enter the amount from Part III, line 51. ........ ► | 11 | 526,551. |

## Part II — Farm Expenses — Cash and Accrual Method.
Do not include personal or living expenses such as taxes, insurance, or repairs on your home.

| | | | | | | | |
|---|---|---:|---:|---|---|---:|---:|
| 12 | Car and truck expenses (see instructions). Also attach Form 4562. | 12 | | 25 | Pension and profit-sharing plans ...... | 25 | |
| 13 | Chemicals..................... | 13 | | 26 | Rent or lease (see instructions): | | |
| 14 | Conservation expenses (see instructions) ............. | 14 | | a | Vehicles, machinery, and equipment....................... | 26a | |
| 15 | Custom hire (machine work)..... | 15 | 63,307. | b | Other (land, animals, etc)........... | 26b | 1,465. |
| 16 | Depreciation and section 179 expense deduction not claimed elsewhere (see instructions). | 16 | 102,560. | 27 | Repairs and maintenance........... | 27 | 8,828. |
| | | | | 28 | Seeds and plants.................. | 28 | |
| | | | | 29 | Storage and warehousing.......... | 29 | |
| 17 | Employee benefit programs other than on line 25.......... | 17 | | 30 | Supplies........................ | 30 | 3,448. |
| 18 | Feed......................... | 18 | 30,070. | 31 | Taxes.......................... | 31 | 60. |
| 19 | Fertilizers and lime ............. | 19 | | 32 | Utilities........................ | 32 | 1,745. |
| 20 | Freight and trucking........... | 20 | 7,000. | 33 | Veterinary, breeding, and medicine.... | 33 | 2,847. |
| 21 | Gasoline, fuel, and oil........... | 21 | 33,761. | 34 | Other expenses (specify): | | |
| 22 | Insurance (other than health).... | 22 | 10,547. | a | SEE STATEMENT 2 | 34a | 30,692. |
| 23 | Interest: | | | b | _____ | 34b | |
| a | Mortgage (paid to banks, etc).... | 23a | | c | _____ | 34c | |
| b | Other......................... | 23b | 188,466. | d | _____ | 34d | |
| 24 | Labor hired (less employment credits) ... | 24 | 60,510. | e | _____ | 34e | |
| | | | | f | _____ | 34f | |
| 35 | **Total expenses.** Add lines 12 through 34f. If line 34f is negative, see instructions ...................... ► | | | | | 35 | 545,306. |
| 36 | **Net farm profit or (loss).** Subtract line 35 from line 11. Partnerships, see instructions. | | | | | 36 | -18,755. |

• If a profit, enter the profit on both **Form 1040, line 18,** and **Schedule SE, line 1a;** on **Form 1040NR, line 19;** or on **Form 1041, line 6.**

• If a loss, you **must** go on to line 37.

37 If you have a loss, you **must** check the box that describes your investment in this activity and whether you
received any applicable subsidy (see instructions).
• If you checked 37a, enter the loss on both **Form 1040, line 18,** and **Schedule SE, line 1a;**
on **Form 1040NR, line 19;** or on **Form 1041, line 6.**
• If you checked 37b, your loss may be limited. See instructions.

37a [ ] All investment is at risk and you did not receive a subsidy.
37b [ ] Some investment is not at risk or you received a subsidy.

# EXHIBIT 14

# EXHIBIT 14

# Tri-State Livestock Credit Corporation

Financial Statement of:
Double U Livestock, LLC

Loan Designation:
**DOUBLE U LIVESTOCK, LLC**

Date:
10/5/07

## ASSETS

### Current Assets

| | |
|---|---|
| Cash (Sch. A) | 2,500 |
| Current Receivables (Sch. B) | 2,700 |
| Feed On Hand (Sch. C) | 45,500 |
| Pre-Paid Feed / Pasture (Sch. C) | 0 |
| Crops on hand to be sold (Sch. C) | 0 |
| Investment In Growing Crops (Sch. D) | 13,000 |
| Stocks And Bonds (Sch. E) | 0 |
| Livestock Held For Sale (Sch. F) | 225,983 |
| Life Insurance Cash Value | 0 |
| Supplies (Sch. G) | 9,000 |
| **Total Current Assets** | **$298,683** |

### Intermediate Term Assets

| | |
|---|---|
| Receivables over 12 Month (Sch. B) | 0 |
| Breeding Stock (Sch. H) | 609,950 |
| Horses | |
| Equipment/Vehicles (Sch. I) | 300,000 |
| **Total Intermediate Assets** | **$909,950** |

### Fixed Assets

| | |
|---|---|
| Agricultural Real Estate (Sch. J) | 2,285,000 |
| Non-Farm Real Estate (Sch. K) | 0 |
| Personal Property | 0 |
| Other Assets/Investments/Partnerships (Sch L) | 0 |
| **Total Fixed Assets** | **$2,285,000** |
| **Total Assets** | **$3,493,633** |

## LIABILITIES

### Current Liabilities

| | |
|---|---|
| Accounts Payable (Sch. M) | 0 |
| Income Taxes Payable | 0 |
| Real Estate Taxes Payable | 0 |
| Accrued Interest | 48,284 |
| Current Portion Term Debt | 61,216 |
| Non-Breeding Stock Debt | 158,188 |
| **Total Current Liabilities** | **$267,689** |

### Intermediate Term Liabilities

| | |
|---|---|
| Breeding Stock Debt | 823,577 |
| Notes Payable (Sch. N) | 16,747 |
| **Total Intermediate Liabilities** | **$840,325** |

### Long Term Liabilities

| | |
|---|---|
| Agricultural Real Estate Liens (Sch. O) | 1,156,746 |
| Non-Farm Real Estate Liens (Sch. P) | 0 |
| **Total Long Term Liabilities** | **$1,156,746** |
| **Total Liabilities** | **$2,264,759** |
| **Net Worth** | **$1,228,874** |
| **Total Liabilities & Net Worth** | **$3,493,633** |

| | | |
|---|---|---|
| Contingent Liabilities? | None | Explain _____ |
| Notes Endorsed for Others? | None | Explain _____ |
| Judgements, Suits, or Claims Pending? | None | Explain _____ |
| Assets Held In Trust? | None | Explain _____ |
| Insurance: | | |
| Motor Vehicles: | Yes | General Farm Liability: $1,000,000 Umbrella |
| Farm Buildings: | Yes | Improvements: _____ |
| Equipment: | | Feed: _____ |
| Life: | (Per Individual Members) | Insured / Beneficiary: _____ |
| Disability / Health: | Yes-Heath | Other: _____ |
| Date of Last IRS Audit: | | Status: _____ |

The undersigned (borrower(s) delivers the foregoing (and attached, if any) financial statements certifying that they fully , truly, and correctly represent the borrower's financial condition as of the effective date indicated and furnishes them to Tri-State Livestock Credit Corporation in order to induce Tri-State to establish and/or continue financing for the benefit of the borrower.

Dated: 10/5/07          NAME OF ENTITY: DOOUBLE U LIVESTOCK, LLC

By: _____
JAMES A. WEST, as Member and Individual

By: _____
CLAYTON J. WEST, as Member and Individual

By: _____
WADE S. WEST, as Member and Individual

By: _____
CARLEEN J. WEST, as Member and Individual

By: _____
MARY WEST, as Member and Individual

By: _____
MOLLY WEST, as Member and Individual

Financial Statement of:
Double U Livestock, LLC

Loan Designation:
**DOUBLE U LIVESTOCK, LLC**

Date:
10/5/07

### Schedule A1    Cash

| Name Of Institution | Branch | Address | Account Number | Balance |
|---|---|---|---|---|
| Nevada Bank & Trust | Ely | Ely, NV | Ranch Checking | $2,500 |
| | | | | |
| | | | | |
| Per Schedule A2 | | | | 0 |
| | | | Total | **$2,500** |

### Schedule B1 Accounts Receivable

| Payor | Address | Product | Units | Quantity | Price | Total |
|---|---|---|---|---|---|---|
| D. Newton | Eureka, NV | Pasture | | 1 | $2,700 | $2,700 |
| | | | | | | 0 |
| | | | | | | 0 |
| Per Schedule B2 | | | | | | 0 |
| | | | | | Total | **$2,700** |

### Schedule B1 Notes Receivable

| Payor | Security | Opening Date | Maturity Date | Interest Rate | Payment | Current Portion | Accrued Interest | Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| Per Schedule B2 | | | | | 0 | 0 | 0 | 0 |
| | | | Total | | $0 | $0 | $0 | $0 |

### Schedule C1 -Feed On Hand (h) /Pre-Paid Feed (p) /Feed to Sell (s)

| Commodity | Location | Units | Use (h, p or s) | Quantity | Price | Total On-Hand | Total Pre-Paid | Total Held for Sale |
|---|---|---|---|---|---|---|---|---|
| Alfalfa Hay | Ranch | tons | h | 325.0 | $140.00 | $45,500 | $0 | $0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| | | | | | | 0 | 0 | 0 |
| Per Schedule C2 | | | | | | 0 | 0 | 0 |
| | | | | | Total | $45,500 | $0 | $0 |

### Schedule E1 - Stocks And Bonds

| Company | # of Shares | Price / Share | Total |
|---|---|---|---|
| | | | $0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| Per Schedule E2 | | | 0 |
| | Total | | $0 |

### Schedule G1 - Supplies

| Supply | Quantity | Price | Total |
|---|---|---|---|
| Used Pipe | Various Sizes | | $9,000 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| Per Schedule G2 | | | 0 |
| | | Total | **$9,000** |

### Schedule F1 - Livestock Held For Sale

| Class | Quantity | Weight | Price | Total |
|---|---|---|---|---|
| Wool | | | | $0 |
| | | | | 0 |
| Ewe Lambs | 1,448 | 60 | 1.18 | 102,518 |
| Wether Lambs | 1,390 | 60 | 1.15 | 95,910 |
| Cull Ewes | 325 | 1 | 33.00 | 10,725 |
| | | | | 0 |
| Weaners | 33 | 425 | 1.20 | 16,830 |
| | | | | 0 |
| | | | | 0 |
| Per Sch. F2 | 0 | | | 0 |
| Total Head | **3,196** | Total | | **$225,983** |

### Schedule D1 - Cash In Growing Crops

| Crop | Acreage | Investment/Acre | Total |
|---|---|---|---|
| Alf.-New Seed | 130 | $100 | $13,000 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| | | | 0 |
| Per Schedule D2 | | | 0 |
| | | Total | **$13,000** |

### Schedule H1 - Breeding Stock

| Class | Quantity | Weight | Price | Total |
|---|---|---|---|---|
| Yrlg. Ewes | 725 | 1 | $170.00 | $123,250 |
| Ewes | 2,825 | 1 | 140.00 | 395,500 |
| Ewes | 600 | 1 | 50.00 | 30,000 |
| Bucks | 70 | 1 | 300.00 | 21,000 |
| | | | | 0 |
| Cows | 49 | 1 | 800.00 | 39,200 |
| Bull | 1 | 1 | 1,000.00 | 1,000 |
| | | | | 0 |
| | | | | 0 |
| Per Sch. H2 | | | | 0 |
| Total Head | **4,270** | Total | | **$609,950** |

### Schedule I1 -Equipment/Vehicles

| Description  (Year, Make, Model) | Value |
|---|---|
| Miscellaneous Equipment For Sheep | $75,000 |
| Miscellaneous Equipment For Cattle | 75,000 |
| Miscellaneous Equipment For Horses | 50,000 |
| Miscellaneous Equipment For Farming | 100,000 |
| | |
| | |
| | |
| | |
| Per Schedule I2 | 0 |
| | Total | **$300,000** |

### Schedule J1 - Agricultural Real Estate

| Parcel | Location | State | Year Acquired | Total Cost | Present Use | Acres/Capacity | Value/Unit | Total |
|---|---|---|---|---|---|---|---|---|
| A1 | Ely, NV | | 2004 | 1,700,000 | Ranch | 7,300 | 232.88 | $1,700,000 |
| | (B. Paris & Sons Ranch-7,300 deeded acres; 17,000 AUMS, facilities; Capacity: 4,700 ewes, 600 cows) | | | | | | | |
| A2 | Elgin, OR | | | | Grazing/Timber | 160 | 1,562.50 | 250,000 |
| | (Oregon Sheep permit HQ-160 acres timbered land; appraised 2002) | | | | | | | |
| | | | | | | | | 0 |
| Per Schedule J2 | | | | | | | | 335,000 |
| | | | | | | | Total | **$2,285,000** |

Financial Statement of:
Double U Livestock, LLC

Loan Designation:
**DOUBLE U LIVESTOCK, LLC**

Date:
10/5/07

### Schedule K1 - Non-Farm Real Estate

| Parcel | Location | State | Year Acquired | Total Cost | Present Use | Bldg./Improve. | Land | Total |
|---|---|---|---|---|---|---|---|---|
| N1 | | | | | | | | $0 |
| | | | | | | | | 0 |
| | | | | | | | | 0 |
| | | | | | | | | 0 |
| | | | | | | | | 0 |
| | | | | | | | | 0 |
| | | | | | | | | 0 |
| Per Schedule K2 | | | | | | | | 0 |
| | | | | | | | Total | **$0** |

### Schedule L1 - Other Assets

| Description | | Location | State | Cost | Method of Valuation | | Current Value |
|---|---|---|---|---|---|---|---|
| | | | | | | | $0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| Per Schedule L2 | | | | | | | 0 |
| | | | | | | Total | **$0** |

### Schedule M1 - Accounts Payable

| Supplier / Vendor | Supply Or Product | Terms | Open Date | Due Date | Current | Past Due |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Per Schedule M2 | | | | | 0 | 0 |
| | | | | Total | **$0** | **$0** |

### Schedule N1 - Notes Payable

| Lender | Security | Open Date | Maturity Date | Interest Rate | Payment | Current Portion | Accr. Interest | Balance |
|---|---|---|---|---|---|---|---|---|
| Tri-State | Sheep, Cattle, R/E | 1/03 | 11/06/2007 | 10.50% | | | $3,252 | $978,513 |
| | | | | | | | | |
| | | | | | | | | |
| Total Tri-State | | | | | | | $3,252 | $978,513 |
| Chrysler Credit | 2005 Dodge P/U | 7/05 | 7/09 | 5.00% | $7,682 | $6,968 | | $14,284 |
| Chrysler Credit | 2005 Dodge P/U | 7/05 | 7/09 | 5.00% | 7,500 | 6,694 | Paid Monthly | 16,125 |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| Per Schedule N2 | | | | | 0 | 0 | 0 | 0 |
| | | | | Total | **$15,182** | **$13,662** | **$298** | **$30,409** |

### Schedule O1 - Agricultural Real Estate Liens

| Parcel | Lender | Open Date | Maturity Date | Interest Rate | Payment | Current Portion | Accr. Interest | Balance |
|---|---|---|---|---|---|---|---|---|
| A1 | Wendy Paris | 2004 | 2/2024 | 6.00% | 105,000 | $39,304 | $41,060 | $1,094,941 |
| A2 | Bank of Estern Oregon | 2002 | 2022 | 8.00% | 17,000 | 8,251 | $6,926 | 109,360 |
| A3 | Clear | | | | | 0 | | 0 |
| A4 | Clear | | | | | 0 | | 0 |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| Per Schedule O2 | | | | | 0 | 0 | 0 | 0 |
| | | | | Total | **$122,000** | **$47,555** | **$47,986** | **$1,204,301** |

### Schedule P1 - Non-Farm Real Estate Liens

| Parcel | Lender | Open Date | Maturity Date | Interest Rate | Payment | Current Portion | Accr. Interest | Balance |
|---|---|---|---|---|---|---|---|---|
| | | | | | | $0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| | | | | | | 0 | | |
| Per Schedule P2 | | | | | 0 | 0 | 0 | 0 |
| | | | | Total | **$0** | **$0** | **$0** | **$0** |

Financial Statement of:
Double U Livestock, LLC

Loan Designation:
**DOUBLE U LIVESTOCK, LLC**

Date:
10/5/07

Schedule J2 - Agricultural Real Estate

| Parcel | Location State | Year Acquired | Total Cost | Present Use | Acres/Capacity | Value/Unit | Total |
|---|---|---|---|---|---|---|---|
| A3 | Tollgate, OR | | | Grazing | 3,200 | 100.00 | $320,000 |
| | (USFS Grazing Permit-3556 Ewes for 4.5 months [3.200 AUMs]; Umatilla Natl. Forest) | | | | | | 0 |
| A4 | Butte Valey, NV | 2006 | 15,000 | BLM Grazing | 180 | 83.33 | 15,000 |
| | (BLM Permit - 180 AUM's; contiguous to other permits) | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | Total | **$335,000** |

Schedule K2 - Non-Farm Real Estate

| Parcel | Location State | Year Acquired | Total Cost | Present Use | Bldg./Improve. | Land | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | $0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | | 0 |
| | | | | | | Total | **$0** |

Schedule L2 - Other Assets

| Description | Location State | Cost | Method of Valuation | Current Value |
|---|---|---|---|---|
| | | | | $0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | | 0 |
| | | | Total | **$0** |