LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation
AMY N. TIRRE, ESQ. #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

Attorney for Tri-State Livestock Credit Corporation

E-Filed: November 18, 2011

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>DOUBLE U LIVESTOCK, LLC<br><br>Debtors. | Case No. BK-N-11-52345<br><br>Chapter 12<br><br>**SUPPLEMENTAL OBJECTION BY TRI-STATE LIVESTOCK CREDIT CORPORATION TO DEBTOR'S CHAPTER 12 PLAN#2 FILED ON NOVEMBER 14, 2011**<br><br>Hearing Date: November 21, 2011<br>Hearing Time: 10:30 a.m.<br>Est. Hearing: |

Secured Creditor Tri-State Livestock Credit Corporation, a California corporation ("Tri-State"), by and through its undersigned counsel, hereby files its Supplemental Objection to Debtor Double U Livestock, LLC's Chapter 12 Plan#2, Valuation Motion and Motion to Confirm filed on November 14, 2011 as Docket No. 96, which was filed after Tri-State's deadline to file its objection to Debtor's original plan thereby necessitating a supplemental objection:

    **A.    Debtor's Attempt to Classify a Pre-petition Unsecured Debt Owed to an Insider as a Cure Payment under an Executory Contract Defies 11 U.S.C. §1222(a)(3)**

    1.    On November 14, 2011, Debtor filed Amended Schedules as Docket No. 94. In its Amended Schedule G Continuation Sheet, Debtor asserts that there is an agreement between Debtor and its principals, James and Carleen West dba Sweetwater Ranch, for "mutual services." James and Carleen West are insiders of the debtor. 11 U.S.C. §101(31)(B)(iii). In its recently-

-1-

filed Chapter 12 Plan #2, Debtor seeks to assume this newly-identified executory contract. See Docket No.96 at 6:9. Although not listed on Amended Schedule F, Debtor explicitly recognizes that it owes $87,000 to its insiders for hay and use of the lambing sheds earlier this year. The $87,000 debt is nothing more than a pre-petition debt owed to insiders, yet Debtor is attempting to elevate it to the status of a "cure payment" under an alleged executory contract and according to Table B2011, Debtor expects to pay it in December 2011.

2.    Debtor's position is problematic for two reasons. First, Debtor's position is in complete contradiction of Wests' Chapter 12 Plan, which was confirmed by this Court and attached to the Order Granting Motion to Confirm Chapter 12 Plan and Valuation Motion as Docket No. 85 entered on July 13, 2011 in Case No. 10-54234. It provides in pertinent part as follows:

> Nothing in this First [Second] Amended Chapter 12 Plan, both the Summary Plan and Long Form Plan, shall be construed to impose any obligations upon the Double U Ranch or create any contract between Debtors and third-parties including the Double U Ranch.

See Docket No. 85 at 8:4-6). Thus, there is no agreement between the Wests and Debtor based upon Wests' Chapter 12 Plan. Now that Tri-State has raised the issue about the Wests' unscheduled $87,000 unsecured pre-petition debt, Debtor has belatedly attempted to characterize their pre-petition unsecured debt as a cure payment under an executory contract allegedly described in Wests' Chapter 12 plan, which defies the language of the Chapter 12 plan and is in contravention of a court order.

3.    The second reason that Debtor's position is troubling is that Debtor is attempting to pay its insiders $87,000 in December 2011 when they have nothing more than an unsecured claim while other unsecured claims will not receive anything under the plan until December 2016, presuming that it is feasible. *See* Table B2011 (Docket No. 96-1 at 12 of 26) (providing for payment to Sweetwater/Wests of $87,000 (+ $8,550 for post-petition services) in December 2011)

-2-

and Table C2 (Docket No. 96-1 at 24 of 26) (proposing payment of $53,017 to unsecured creditors in December 2016)). This treatment defies 11 U.S.C. §1222(a)(3) which requires the same treatment for each claim within a particular class. Debtor's attempt to classify this unsecured pre-petition debt owed to its insiders as a cure payment under an executory contract should not be endorsed by this court.

4.  Tri-State further points out that the $87,000 is made up of two claims in Debtor's Amended Schedule G: "$77,000 for 440 tons of Sweetwater's hay used during <u>last Spring's lambing season</u> [2800 head of sheep times 45 day lambing season times 7 pounds per day divided by 2000 (2000 lbs in a ton)) at a price of $175 per ton (market price ($200) minus $25)) and "$10,000 (lease of lambing sheds, Spring 2011)." *See* Docket No. 94 at 5 of 6. Thus, it is clear that $77,000 is for a hay purchase and not a lease. It is disinguous for Debtor to contend that there is a "mutual agreement" or executory contract to be assumed when its own description of the $77,000 debt is that it is based upon a sale of hay by Wests to Debtor. It is a purchase and sale transaction of a commodity, not a lease or executory contract. Debtor's plan should not be confirmed if it allows for this insider claim to be paid now to the detriment of other unsecured creditors. *See* 11 U.S.C, §1225(a)(3) (requiring that a plan be proposed in good faith and not by any means forbidden by law in order to be confirmed).

5.  Moreover, this $87,000 constitutes Tri-State's cash collateral and should be turned over to Tri-State. On October 6, 2011, Debtor deposited $228,684.99 into its checking account with Nevada Bank & Trust. It is undersigned counsel's understanding that these funds came from the sale of some lambs, which occurs on an annual basis. Tri-State has a perfect security interest in Debtor's livestock so this money is Tri-State's cash collateral. Yet, Tri-State is not slated to receive a penny of this money. It seems improper and inequitable that Debtor can pay an unsecured pre-petition insider claim with Tri-State's cash collateral while Tri-State, as a perfected

LAW OFFICES OF AMY N. TIRRE
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

secured creditor, receives nothing until 2014 under Debtor's Chapter 12 Plan.

**B.     Debtor's Plan Now Provides for an 8-year Term Instead of a 30-Year Term for Payment of Tri-State's Claim Which is Still Unreasonable Because of the Negative Amortization of Tri-State's Claim**

6.     Tri-State objected to Debtor's originally proposed treatment of Tri-State's claim by restructuring it over a 30-year period. Under Chapter 12 Plan#2, Debtor now proposes to extend the repayment of Tri-State's claim over 8 years instead of 30 years. See Docket No. 96 at 4:6-7. This treatment still extends the repayment of Tri-State's fully-matured claim beyond the five-year term of the plan. Based upon Debtor's own projections sets forth in Table C4 (Docket No. 96-1 at 25), Tri-State's current debt in the amount of $1,960,169 will increase to the amount of $2,555,029 as of 2019 when the term ends and Debtor is required to repay Tri-State in full. Debtor's proposed treatment still relies upon negative amortization, which is unfair and inequitable to Tri-State. *Great Western Savings Bank v. Sierra Wood Group (In re Sierra Woods Group)*, 953 F.2d 1174, 1177-78 (9th Cir. 1992).

**C.     Debtor's Own Projections Show that its Plan is Not Feasible**

7.     Debtor's Table C2 (Docket No. 68-2) shows that Debtor does not have sufficient cash flow in order to make the payments due in March each year to the Class 1(a) secured creditor, the Peter and Rama Family Trust. In 2012, Debtor will be short $2,628, in 2013, Debtor will be short $26,256 and in 2014, Debtor will be short $29,884. These shortfalls are set forth in the table assuming $102,001 of net farm income. This court should not confirm this plan because it is not feasible based upon Debtor's own projections. *See* 11 U.S.C. §1225(a)(6) (requiring that debtor will be able to make all payments under the plan and to comply with the plan).

/ / /

/ / /

-4-

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

8. Based upon the foregoing and the objections raised by Tri-State in its Objection filed on November 8, 2011 as Docket No. 81, Debtor's Chapter 12 Plan#2 should not be confirmed.

DATED this November 18, 2011.

                        LAW OFFICES OF AMY N. TIRRE, APC

                        By: /s/ Amy N. Tirre_____
                        AMY N. TIRRE, ESQ.

                        Attorney for Tri-State Livestock Credit Corporation

**LAW OFFICES OF AMY N. TIRRE**
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

-5-

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Amy N. Tirre, that I am over the age of 18 and not a party to the above-referenced case, and that on November 18, 2011 I filed and served the **SUPPLEMENTAL OBJECTION BY TRI-STATE LIVESTOCK CREDIT CORPORATION TO DEBTOR'S CHAPTER 12 PLAN#2 FILED ON NOVEMBER 14, 2011** as indicated:

__x__    **BY NOTICE OF ELECTRONIC FILING**: through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

- M NELSON ENMARK    nenmark.trustee@gmail.com
- MICHAEL LEHNERS    michaellehners@yahoo.com
- KAARAN E. THOMAS    kthomas@mcdonaldcarano.com, mmorton@mcdonaldcarano.com
- JOHN WHITE    bankruptcy@whitelawchartered.com, john@whitelawchartered.com;jen@whitelawchartered.com
- CHRISTOPHER D JAIME    cjaime@mclreno.com, kbernhardt@mclrenolaw.com

_____    **BY HAND DELIVERY VIA COURIER**: by causing hand delivery of the Document listed above via Reno Carson Messenger Service to the persons at the addresses set forth below.

_____    **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on 18 November 2011, with postage thereon fully prepaid in the ordinary course of business.

DATED this November 18, 2011.

/s/ Andrea Black
An Employee of Law Offices of Amy N. Tirre

-6-